IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID KUBIAK; JASON CROWLING and
JOSEPH KEATING, Individually, and on Behalf
of All Other Similarly Situated Employees;

    Plaintiffs,

vs.            Case No.: 3:12-cv-1306-J-34JRK

S.W. COWBOY, INC., A Florida
Corporation d/b/a Saltwater Cowboys;
CREEKSIDE DINERY INC., a Florida
Corporation, PETER LAWLOR; SCOTT
SINGLETON, WILLIAM WHITE, TERRY
RICHARDSON, ROCHELL DROVILLARD,
and JUDY WEGNER, INDIVIDUALLY;

   Defendants,

_____/

## THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, David Kubiak; Jason Crowling and Joseph Keating Individually, and on behalf of All Other Similarly Situated Employees ("Plaintiffs"), hereby file this Complaint against Defendants, S.W. Cowboy Inc., A Florida Corporation d/b/a Saltwater Cowboys ("SWC"), Creekside Dinery Inc. ("Creekside"), a Florida Corporation, Peter Lawlor, individually ("Lawlor"); Scott Singleton, individually ("Singleton"), William White, individually ("White"), Terry Richardson, individually ("Richardson"), Rochell Drovillard, individually ("Drovillard"), and Judy Wegner, individually ("Wegner" or together with all other individual Defendants (the "Owners") or together with all other individual and corporate defendants, the "Defendants"), and alleges as follows:

## INTRODUCTION

1. The Fair Labor Standards Act ("FLSA") is designed to eliminate "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. §202(a).

2.  Similarly, Art. X §24 Fla. Const. was enacted in 2004 to provide  "All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer."

3.  To achieve its goals, the FLSA and the Florida Constitution set minimum wage requirements which employers must pay to their employees.

4.  For employees who earn wages and receive tips directly from the customer, the FLSA and Florida Constitution allow employers to take a "tip credit" to satisfy the minimum wage requirements.

5.  The Florida Constitution incorporates by reference the FLSA's provisions regarding the tip credit as well as the terms Employer, Employee and Wage.  *See* Art. X §24(b) & (c) Fla. Const.

6.  The FLSA allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C §203(t). In doing so, employers may take a "tip credit," 29 U.S.C. §203(m) which allows employers to include in their calculation of tipped employees' wages the amount that an employee receives in tips. *Id.*  In order to apply a tip credits towards an employee's customarily and regularly receive tips. *Id.*

7.  In order to be eligible to take a tip credit, an employer must satisfy two conditions: (i) The employer must inform the employee that it will take a tip credit; and (ii) tipped employees must retain all the tips they receive, except those tips properly included in a valid tipping pool among employees who requirements for covered employers *See* 29 C.F.R. §531.54.

8.  However, "[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the

employer is not permitted to take a 'tip credit.'" *Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) citing *Wajcman v. Investment Corp. of Palm Beach,* 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009); (citing 29 U.S.C. § 203 (m)).

9.    Saltwater Cowboys and Creekside Dinery together with Lawlor, Singleton, White, Richardson, Drovillard and Wegner, collectively and individually violated the FLSA by requiring servers to participate in an invalid tip pool: (i) whereby servers must contribute a portion of their tips to employees who do not regularly and customarily receive tips; (ii) whereby back-of-house managers participate in the tip pool; and (iii) whereby Defendants converted and misappropriated the tip pool funds and directed the funds to be used as incentive payments for the back of house staff.

10.    Defendants violated the FLSA by requiring its servers to participate in an invalid tip pool, whereby servers must contribute a portion of their tips to kitchen staff, including but not limited to chefs, cooks and expediters and who do not customarily and regularly receive tips.

11.    Defendants violated the FLSA by requiring its servers to participate in an invalid tip pool which includes managers.

12.    The "practice of forced sharing of tips with management is ... an illegal practice, regardless [of] whether or not the members of management were engaged in restaurant services that could be the subject of tipping." Chung v. New Silver Palace Restaurant, Inc., 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept.13, 2002) (noting that tip sharing with management "violates the statutory Condition that 'all tips' received by the [employees] be 'retained' by the [employees]").

13.    Defendants violated the FLSA by operating an invalid tip pool wherein Defendants collected, controlled and misappropriated tip pool money and directed the funds to be used as incentive payments to back of the house staff.

14.    "The FLSA expressly prohibits employers from participating in employee tip pools.

"Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Place Rest., Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002); *Wajcman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, *3 (S.D.Fla. March 20, 2008) ("The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves"). "Where employers participate in a tip pool, the pool is invalid." *See Strange v. Wade,* WL 3522410 (S.D.Ohio 2010)

15.     Accordingly, Plaintiffs and Opt-In Plaintiffs[1] bring this class action pursuant to §216(b) of the FLSA and  Art. X §24(e) Fla. Const. on behalf of all similarly situated employees who have been paid less than the minimum wage and have been forced to participate in Defendants' unlawful tip pool, and seek damages, restitution, liquidated damages, interest, attorneys fees and costs resulting from Defendants' unlawful practice of requiring Servers to share tips with employees who do not customarily and regularly receive tips (ie. Kitchen Staff and Expeditors); Defendants' unlawful practice of including Back of House Managers in the Server tip pool; and Defendants' unlawful practice of exercising dominion and control over the tip pool funds and misappropriating the funds for Defendants' benefit.

## **JURISDICTION AND VENUE**

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically under the FLSA, 29 U.S.C. §201, et seq.

17.     This Court has supplemental jurisdiction over the State of Florida's Constitutional Claims pursuant to 28 U.S.C. § 1367.

---

[1] Along with this complaint, Plaintiffs have submitted the opt-in consent from six (6) other servers who worked at Saltwater Cowboys and CREEKSIDE DINERY, INC during the applicable time period; Steve Patterson (Dkt. 3), Matt

18.    Plaintiffs' claims arise under §§ 29 U.S.C. 203(m), 206, and 216(b) of the FLSA, and corresponding claims pursuant to Art. X §24 Fla. Const. and Fla. Stat. §448.110.

19.    This Court has personal jurisdiction over this action because the Defendants were and are engaged in a business enterprise conducting business within the State of Florida

20.    Venue is proper in the Middle District of Florida pursuant to 28U.S.C. 139(b) because the acts complained of herein took place in this District and Plaintiffs worked in the State of Florida for the Defendants within the territory of the Middle District of Florida

21.    Plaintiff has satisfied any and all conditions precedent to filing of this action as contemplated by §448.110, Florida Statutes.  On March 15, 2013, Plaintiffs' Counsel via certified mail, advised Defense Counsel of the Florida Minimum Wage violations.[2]

## **THE PARTIES**

### **The Representative Plaintiffs**

22.    **Plaintiff, David Kubiak ("Kubiak")**, is a resident of St. Johns County, Florida. At all times relevant to this action, Kubiak worked as a server at the Defendants' Saltwater Cowboy and Creekside Dinery restaurants located in St. Augustine, Florida from March 2008 through the April 2012.

23.    Kubiak received biweekly paychecks which indicate compensation at an hourly rate less than the minimum wage.[3]

24.    Pursuant to policy and plan, while working as a server, Kubiak was required to

---

[2] *See Throw v. Republic Enterp.Sys., 2006 U.S. Dist. LEXIS 46215, 2006 WL 1823783, at *2 (M.D. Fla. Jun. 30, 2006)* wherein the Court found that the pre-suit notice provision of §448.110 Fla. Stat. was unconstitutional.  Further, Plaintiffs anticipate that the Court will not rule on the Plaintiffs' Motion to Amend the Complaint until after the fifteen (15) day waiting period has lapsed.

[3] The Applicable minimum wage in the State of Florida was $7.21/hr (January 1, 2009 through July 23, 2009); $7.25/hr (July 24, 2009 through May 31, 2011); $731/hr (June 1, 2001 Through December 31, 2011); $7.67 (January 1, 2012 through December 31, 2012; and $7.79 (January 1, 2013 to present)

participate in Defendants' tip pool with employees who do not customarily receive tips, such as the kitchen staff, including cooks, dishwashers and food preparers ("Kitchen Staff")[4] as well as expeditors ("Expeditors").[5]

25.     Pursuant to policy and plan, while working as a server, Kubiak was required to participate in Defendants' tip pool which required him to pay a portion of his tips to the back of house managers ("BOH Managers")[6].

26.     Pursuant to policy and plan, while working as a server, Kubiak was required to participate in Defendants' tip pool wherein Defendants participated in the tip pool by collecting, aggregating and misappropriating tip pool funds for their own benefit. Without Servers' knowledge or consent, Defendants exercised control and dominion over the tip pool funds and directed the tip pool funds to be used as incentive payments (and to be withheld as disciplinary measures) to the Kitchen Staff.

27.     At all times relevant to this action, Kubiak, and all other similarly situated opt-in servers were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

28.     **Plaintiff Joseph Keating ("Keating")** is a resident of St. Johns County, Florida.  At all times relevant to this action, Keating worked as a server at the Defendants' Saltwater Cowboy and Creekside Dinery restaurants located in St. Augustine, Florida from February 2011 through January 2013.

29.     Keating received biweekly paychecks which indicate compensation at an hourly rate less than the minimum wage.

30.     Pursuant to policy and plan, while working as a server, Keating was required to participate in Defendants' tip pool with employees who do not customarily receive

---

[4] For the purposes of this pleading, "Kitchen Staff" includes employees performing the job duties or functional equivalent of chefs, line cooks, sous chef, food preparers dishwasher or other similar job duties as may be defined pursuant to discovery.

[5] For the purposes of this pleading, Expediters are employees who were paid less than minimum wage performing the job of plate inspection and garnishment before the entrees are taken out to customers.  Expediters generally also work server shifts.  Expediters are not required to wear server uniforms and do not run food out to customers.

[6] BOH Managers were functionally an "employer" pursuant to 29 U.S.C. 203. *See Also* Art. X Section 24(b), as they had the authority to hire and fire employees, determine employees' rate of pay, set employees schedule

tips, such as Kitchen Staff and Expeditors.

31.     Pursuant to policy and plan, while working as a server, Keating was required to participate in Defendants' tip pool which required him to pay a portion of his tips to the BOH Managers.

32.     Pursuant to policy and plan, while working as a server, Keating was required to participate in Defendants' tip pool wherein Defendants participated in the tip pool by collecting, aggregating and misappropriating tip pool funds for their own benefit. Without Servers' knowledge or consent, Defendants exercised control and dominion over the tip pool funds and directed the tip pool funds to be used as incentive payments (and to be withheld as disciplinary measures) to the Kitchen Staff.

33.     Keating joined this litigation as an Opt-in Plaintiff on December 4, 2012.

34.     On January 17, 2013, the Owners called a meeting of staff members to, berate participants of the lawsuit and threaten employees who have or may choose to join the lawsuit. *See* Exhibit A – Declaration of Joseph Keating.

35.     After the staff meeting, Keating was given a pretextual disciplinary action for allegedly hanging out at the hostess stand.

36.     At all times relevant to this action, Keating, and all other similarly situated opt-in servers were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

37.     **Plaintiff Jason Crowling ("Crowling")** is a resident of St. Johns County, Florida.  At all times relevant to this action, Crowling worked as a server at the Defendants' Saltwater Cowboy and Creekside Dinery restaurants located in St. Augustine, Florida from April 2008 through January 17, 2013.

38.     Crowling received biweekly paychecks which indicate compensation at an hourly rate less than the minimum wage.

39.     Pursuant to policy and plan, while working as a server, Crowling was required to participate in Defendants' tip pool with employees who do not customarily receive tips such as the Kitchen Staff and Expeditors.

40.   Pursuant to policy and plan, while working as a server, Kubiak was required to participate in Defendants' tip pool which required him to pay a portion of his tips to the BOH Managers.

41.   Pursuant to policy and plan, while working as a server, Crowling was required to participate in Defendants' tip pool wherein Defendants participated in the tip pool by collecting, aggregating and misappropriating tip pool funds for their own benefit. Without Servers' knowledge or consent, Defendants exercised control and dominion over the tip pool funds and directed the tip pool funds to be used as incentive payments (and to be withheld as disciplinary measures) to the Kitchen Staff.

42.   At all times relevant to this action, Crowling, and all other similarly situated opt-in servers were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

43.   Crowling joined this litigation as an Opt-in Plaintiff on December 4, 2012.

44.   On January 17, 2013, the Owners called a meeting of staff members to, berate participants of the lawsuit and threaten employees who have or may choose to join the lawsuit.  *See* Exhibit B – Declaration of Jason Crowling.

45.   After the staff meeting, Crowling was given a pretextual disciplinary action for allegedly leaving the restaurant to move his car, and another disciplinary action for failure to inform customers of the 18% service charge that was included in their bill. Crowling was threatened with federal criminal prosecution for credit card fraud and immediately terminated.

**Defendants**

46.   **Defendant S.W. COWBOY, INC. ("Saltwater Cowboys")** is a for profit corporation organized and existing under the laws of Florida, with its principle place of business located at 299 Dondaville Road, St. Augustine FL 32080.

47.   S.W. Cowboys, Inc., operates under the trade name Saltwater Cowboys.

48.   Pursuant to the exercise of common control and ownership of S.W. COWBOY, INC. is

8

an "employer" of Plaintiff and similarly situated employees within the meaning of the FLSA, 29 U.S.C. § 203(d).

49.     Pursuant to the exercise of common control and ownership of Saltwater Cowboys is an "employer" of Plaintiff and similarly situated employees within the meaning of the FLSA, 29 U.S.C. § 203(d).

50.     **Defendant CREEKSIDE DINERY INC., ("Creekside Dinery")** is a for profit corporation organized and existing under the laws of Florida, with its principle place of business located at 160 Nix Boatyard Road, St. Augustine FL 32084.

51.     Pursuant to the exercise of common control and ownership of Creekside Dinery is an "employer" of Plaintiff and similarly situated employees within the meaning of the FLSA, 29 U.S.C. § 203.

52.     **Defendant PETER LAWLOR ("Lawlor")** is an owner of Saltwater Cowboys and Creekside Dinery Lawlor resides in St. Johns County, Florida.

53.     As part of his duties, Lawlor supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of the Plaintiff and similarly situated current and former employee.

54.     Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, Lawlor in his individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

55.     **Defendant SCOTT SINGLETON ("Singleton")** is an owner of Saltwater Cowboys and Creekside Dinery. Singleton resides in St. Johns County, Florida.

56.     As part of his duties, Singleton supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of the Plaintiffs and similarly situated current and former employee.

57.  Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, Singleton in his individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

58.  **Defendant WILLIAM WHITE ("White")** is an owner of Saltwater Cowboys and Creekside Dinery. White resides in St. Johns County, Florida.

59.  As part of his duties, White supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of the Plaintiffs and similarly situated current and former employee.

60.  Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, White in his individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

61.  **Defendant TERRY RICHARDSON ("Richardson")** is an owner of Saltwater Cowboys and Creekside Dinery. Richardson resides in St. Johns County, Florida.

62.  As part of his duties, Richardson supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of the Plaintiffs and similarly situated current and former employee.

63.  Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, Richardson in his individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

64.  **Defendant ROCHELL DROVILLARD ("Drovillard")** is an owner of Saltwater Cowboys and Creekside Dinery. Drovillard resides in St. Johns County, Florida.

65.  As part of her duties, Drovillard supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of

the Plaintiffs and similarly situated current and former employee.

66.    Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, Drovillard in her individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

67.    **Defendant JUDY WEGNER ("Wegner")** is an owner of Saltwater Cowboys and Creekside Dinery. Wegner resides in St. Johns County, Florida.

68.    As part of her duties, Wegner supervised the servers, and all similarly situated employees and exercised control over the wages, hours and working conditions of the Plaintiffs and similarly situated current and former employee.

69.    Through the exercise of dominion and control over all employee related matters at Saltwater Cowboys and Creekside Dinery, Wegner in her individual capacity, was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

70.    Defendants, by way of common ownership, unified operation and common employment practices, operate a common enterprise consisting mainly of Saltwater Cowboys and Creekside Dinery.  Defendants considered all servers at one location to be employees at the other location in that servers were regularly and routinely used to work shifts in either restaurant under the same compensation practices contained herein.

## GENERAL ALLEGATIONS

71.    Plaintiffs, and similarly situated servers receive biweekly paychecks, which indicate an hourly rate less than the minimum wage.

72.    At all times relevant hereto, and for a five (5) year period immediately preceding the filing of this suit, Defendants took advantage of FLSA's tipped employees tip credit,

paying Plaintiffs and similarly situated class members a wage that is less than the required Minimum Wage pursuant to the FLSA and Art. X §24 Fla. Const.

73. At all times relevant hereto, and for the five (5) year period immediately preceding the filing of this suit, Defendants instituted an unlawful tip pool policy.

74. The tip pool policy required that all Servers turn over (a.k.a. 'tip-out') a portion of their tips to the Kitchen Staff, and Expeditors.

75. The tip pool required that Servers tip-out a portion of their tips to BOH Managers.

76. Defendants participated in the tip pool by collecting and aggregating the tip pool funds then exercising dominion and control over the tip pool money by directing the distribution of money to the kitchen staff as an incentive (and disciplinary) payment without Server consent or knowledge.

77. Pursuant to Defendants' guidelines and training, Plaintiffs and similarly situated servers were required to complete tip-out forms (a.k.a. Tip Allocation Sheets) pursuant to formulas indicating the amount of tips they were required to share with Kitchen Staff and Expeditors.

78. On a nightly basis, Defendants' front of house managers checked and corrected the Tip Allocation Sheets and collected the tip pool money allocated to the Kitchen Staff.

79. On a weekly or bi-weekly basis, Defendants distributed the tip pool money to Kitchen Staff pursuant to Defendants' direction without the knowledge or consent of the Servers who contributed to the tip pool.

80. Defendants distributed the tip pool funds as an incentive payment to the Kitchen Staff, and withheld payment from Kitchen Staff employees as a disciplinary measure.

81. BOH Managers participated in the tip pool.

82.   BOH Managers were responsible for hiring and firing employees, determining employees' pay rates, scheduling employees and maintained employee documentation and were functionally the "employer" pursuant to 29 U.S.C. 203.

83.   Aside from their paystubs, Plaintiffs and other similarly situated employees have never received documentation or a proper explanation regarding the tip pool and tip credit disbursement. Simply stated, they have not been provided the proper notice as required by law to allow the Defendants to lawfully claim a tip credit under the FLSA.

84.   The Kitchen Staff and Expeditors received compensation from the tip pool pursuant to Defendant's tip pool policy.

85.   Defendants do not claim a tip credit for Kitchen Staff.

86.   The Department of Labor's Field Operations Handbook expressly forbids chefs, cooks and dishwashers (i.e. Kitchen Staff) from participating in tip pooling arrangements.

87.   Expediters at Saltwater Cowboys and Creekside Dinery, are paid a reduced minimum wage, but perform(ed) no customer service interaction.

88.   Expediters worked exclusively in the back of the house on the food preparation line monitoring food tickets, cooking times, performing quality control, preparing food presentation, garnishing entrees and placing food on trays.

89.   Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed all tips he or she contributed to the pool in addition to repayment of the applicable minimum wage.

90.   Because the Plaintiffs, and other similarly situated employees, have not been permitted to retain all of their tips and have been forced to participate in an invalid tip pool arrangement, the Defendants have not been eligible to claim the "tip credit" against the minimum wage and thus is obligated to pay all employees the full minimum wage.

91.   In addition, the Defendants have not complied with its obligations to inform or properly notice employees of the tip credit.

### CLASS ACTION ALLEGATIONS

92.   Plaintiffs bring this action as a collective action pursuant to the Fair Labor Standards Act § 216(b) and Art. X §24(e) on behalf of themselves and a class of persons consisting of "All persons who have worked as a server at any Saltwater Cowboys and/or Creekside Dinery, locations between November 20, 2007 and the date of final judgment in this matter."

93.   The claims of the Representative Plaintiffs are typical of the claims of the class members.

94.   The number of proposed Class is so numerous that a joinder of all members is impractical though the precise number of class individuals is presently in the sole possession of the Defendants.

95.   Plaintiffs and Opt-in Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class members. Plaintiffs have retained counsel competent and experienced in complex class and collective actions along with employment litigation. There is no conflict between the Plaintiffs and the Class members.

96.   Common questions of law and fact exist as to the proposed Class that predominate over any questions only affecting them individually and include, but are not limited

to, the following:

a.    whether Defendants' policy required servers to share tips with employees who do not customarily and regularly receive tips;

b.    whether Defendants participated in the tip pool by collecting and controlling the tip pool money and directing the distribution of the tip pool money for its own benefit;

c.    whether Defendants participated in the tip pool by requiring servers to tip-out BOH Managers;

d.    whether Defendants' policy of failing to pay workers has been instituted willfully or with reckless disregard of the law; and

e.    the nature and extent of class-wide injury and the measure of damages for those injuries.

97.    Class and Collective representation is superior to other available methods for the fair and efficient adjudication of the controversy  for a number of reasons including but not limited to the following:  the case challenges the policy of the employer, and many employees   may be reluctant to bring claims individually for fear of retaliation; some class members may have only worked for the Defendant for a short period of time and their individual damages would not be substantial enough to be worth the cost and effort of bringing individual claims; many class members will not have the resources to bring their claims individually; and it would be highly inefficient to require each employee affected by the practices challenged herein to bring his or her own individual claim.

**COUNT I**
**Failure to Pay Minimum Wage in Violation of the FLSA**
**(Inclusion of Kitchen Staff and Expeditors in Tip Pool)**

98.    Plaintiffs re-alleges and incorporates paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

99.  The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates the FLSA, 29 U.S.C. § 201, *et seq.* and particularly § 206 and §216.

100.  The Defendants violate the law by allowing non-tipped employees (chefs, cooks, dishwashers and expeditors) to keep tips from the tip pool,

101.  Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

102.  This claim is brought on behalf of a class of similarly situated individuals, pursuant to 29 U.S.C. § 216(b).

### COUNT II
### Failure to Pay Minimum Wage in Violation of the FLSA
### (Inclusion of BOH Managers in the Tip Pool)

103.  Plaintiffs re-alleges and incorporates paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

104.  The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates the FLSA, 29 U.S.C. § 201, *et seq.* and particularly § 206 and §216.

105.  The Defendants have wrongfully retained tips by the inclusion of the BOH Managers in the tip pool.

106.  Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

107.  This claim is brought on behalf of a class of similarly situated individuals, pursuant

to 29 U.S.C. § 216(b).

## COUNT III
## Failure to Pay Minimum Wage in Violation of the FLSA
### (Defendants Improperly Exercised Control Over Tip Pool)

108.   Plaintiffs re-alleges and incorporates paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

109.   The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates the FLSA, 29 U.S.C. § 201, *et seq.* and particularly § 206 and §216.

110.   The Defendants have wrongfully retained tips by exercising dominion and control over the tip pool and directing the distribution of the tip pool funds in accord with its own incentive and disciplinary policies.

111.   Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

112.   This claim is brought on behalf of a class of similarly situated individuals, pursuant to 29 U.S.C. § 216(b).

## COUNT IV
## Failure to Pay Florida Minimum Wage -  Article X § 24, Florida Constitution
### (Inclusion of Kitchen Staff and Expeditors in Tip Pool)

113.   Plaintiffs re-allege and incorporate paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

114.   The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates Article X, Section 24(c), Florida Constitution and FLSA, 29 U.S.C. § 201, et

seq. and particularly § 206 and §216 as incorporated pursuant to Art. X § 24(b).

115. The Defendants violate the law by allowing non-tipped employees (chefs, cooks, dishwashers and expeditors) to keep tips from the tip pool,

116. Further, Defendants have not complied with its obligation to inform its employees that it was taking a tip credit against them and give them proper notice regarding the same.

117. Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

118. This claim is brought on behalf of a class of similarly situated individuals, pursuant to Fla. R. Civ. P. Rule 1.220.

## COUNT V
### Failure to Pay Florida Minimum Wage -  Article X § 24, Florida Constitution
### (Inclusion of BOH Managers in Tip Pool)

119. Plaintiffs re-allege and incorporate paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

120. The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates Article X, Section 24(c), Florida Constitution and FLSA, 29 U.S.C. § 201, et seq. and particularly § 206 and §216 as incorporated pursuant to Art. X § 24(b).

121. The Defendants have wrongfully retained tips by the inclusion of the BOH Managers in the tip pool.

122. Further, Defendants have not complied with its obligation to inform its employees that it was taking a tip credit against them and give them proper notice

regarding the same.

123. Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

124. This claim is brought on behalf of a class of similarly situated individuals, pursuant to Fla. R. Civ. P. Rule 1.220.

<div align="center">

**COUNT VI**
**Failure to Pay Florida Minimum Wage -  Article X § 24, Florida Constitution**
**(Defendants Improperly Exercised Control Over Tip Pool)**

</div>

125. Plaintiffs re-allege and incorporate paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

126. The Defendants' conduct in failing to pay all of its employees the appropriate minimum wage and inappropriate claiming of the "tip credit," as set forth above, violates Article X, Section 24(c), Florida Constitution and FLSA, 29 U.S.C. § 201, et seq. and particularly § 206 and §216 as incorporated pursuant to Art. X § 24(b).

127. The Defendants have wrongfully retained tips by exercising dominion and control over the tip pool and directing the distribution of the tip pool funds in accord with its own incentive and disciplinary policies.

128. Further, Defendants have not complied with its obligation to inform its employees that it was taking a tip credit against them and give them proper notice regarding the same.

129. Because of the Defendants' failure to comply with the law on tip credits it has lost its ability to claim a tip credit and the Class is entitled to the full cash minimum wage plus those unlawfully retained and/or distributed tips.

130.  This claim is brought on behalf of a class of similarly situated individuals, pursuant to Fla. R. Civ. P. Rule 1.220.

**COUNT VII**
**Violation of Florida Private Whistleblower Protection Act (§448.102)**
**(On Behalf of Keating and Crowling against Saltwater Cowboys and Creekside Dinery)**

131.  Plaintiffs Keating and Crowling readopt and re-allege paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

132.  Plaintiffs Keating and Crowling were employed by Defendants as servers in Saltwater Cowboys and Creekside Dinery.

133.  On December 4, 2012, Keating and Crowling engaged in protected speech by joining this litigation through the opt-in consent pleadings filed with this court. (Dkt. 3, Exhibits B and C)

134.  On January 17, Keating and Crowling were singled out in a staff meeting threatening retaliation against employees who joined or threatened to join this litigation.

135.  Thereafter, Crowling was immediately given two pretextual disciplinary actions, threatened with criminal prosecution and terminated.

136.  Keating was given a pretextual disciplinary action after the meeting, and has been subjected to harassment during each subsequent shift.

137.  Keating and Crowling were subjected to retaliatory personnel action because of and in retaliation for their protected speech (participating in the instant action) and objecting to Defendants' violation of the FLSA.

138.  Defendants' unlawful conduct has caused and continues to cause, and will cause

Keating and Crowling to suffer substantial damages and is in violation of Fla. Stat. 448.102(2) and(3).

WHEREFORE, Plaintiffs, Keating and Crowling demand judgment against Defendants Saltwater Cowboys and Creekside Dinery for economic damages including but not limited to back pay, front pay, loss of employment benefits from the date of the retaliatory activity plus interest as allowed by law until paid in full.  Keating and Crowling also seek compensatory damages in an amount to be determined at trial in this matter as allowable under Fla. Stat. 448.103; including but not limited to payment of reasonable attorneys' fees, including litigation expenses and costs; and any other relief as the Court deems just and proper.

### COUNT VIII
### Violation of FLSA's Anti-Retaliation Prosivion (§215(a)(3))
### (On Behalf of Keating and Crowling against all Defendants)

139.  Plaintiffs Keating and Crowling readopt and re-allege paragraphs one (1) through ninety-seven (97) *supra,* as if fully set out herein.

140.  Plaintiffs Keating and Crowling were employed by Defendants as servers in Saltwater Cowboys and Creekside Dinery.

141.  On December 4, 2012, Keating and Crowling engaged in protected speech by joining this litigation through the opt-in consent pleadings filed with this court. (Dkt. 3, Exhibits B and C)

142.  On January 17, Keating and Crowling were singled out in a staff meeting threatening retaliation against employees who joined or threatened to join this litigation.

143.  Thereafter, Crowling was immediately given two pretextual disciplinary actions,

threatened with criminal prosecution and terminated.

144.   Keating was given a pretextual disciplinary action after the meeting, and has been subjected to harassment during each subsequent shift.

145.   Keating and Crowling were subjected to prohibited discriminatory personnel action because of and in retaliation for their protected speech (participating in the instant action) and objecting to Defendants' violation of the FLSA.

146.   Defendants' unlawful conduct has caused and continues to cause, and will cause Keating and Crowling to suffer substantial damages and is in violation of 29 U.S.C. 215(a)(3).

WHEREFORE, Plaintiffs, Keating and Crowling demand judgment against all Defendants for economic damages including but not limited to back pay, liquidated damages loss of employment benefits from the date of the retaliatory activity plus interest as allowed by law until paid in full.  Keating and Crowling also seek payment of reasonable attorneys' fees, including litigation expenses and costs pursuant to 29 USC 216(b) and any other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully requests that the Court enter an order:

a.   Certifying this case as a class action in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims set forth in Counts IV through VI;

b.   Conditionally certifying this case as a collective action in accord with 29 U.S.C. 216(b) with respect to claims set forth in Counts I through III;

c.   Declaring that Defendants violated the minimum wage laws as set forth in

Count I through VI;

d.      Declaring that Saltwater Cowboys and Creekside Dinery violated Florida's Private Whistleblower Act pursuant to Fla. Stat. §448.102 as set forth in Count VII;

e.      Declare that Defendants violated the Anti-Retaliation Provisions of the FLSA as set forth in Count VIII;

f.      Grant judgment in favor of Plaintiffs and other members of the collective action, and against Defendants on Plaintiffs' FLSA claims as set forth in Counts I through III, and awarding each of them the amount of their unpaid minimum wages; the amount of tips unlawfully withheld from Plaintiffs and an equal amount as liquidated damages;

g.      Grant judgment in favor of the Plaintiffs and other members of the class, and against Defendants on Plaintiffs' claims under the minimum wage provisions of the Florida Constitution as set forth in Counts IV through VI and awarding Plaintiffs and each other member of the class the amount of their unpaid minimum wages, along with an equal amount as liquidated damages;

h.      Grant judgment in favor of Plaintiffs Keating and Cowling damages set forth in Count VII, and awarding them back wages, front pay, compensatory damages, prejudgment interest, and other relief pursuant to Fla. Stat. §448.103;

i.      Grant judgment in favor of Plaintiffs Keating and Cowling damages set forth

in Count VIII, and awarding them back wages, liquidated damages prejudgment interest, and other relief pursuant to 29 U.S.C. 215 *et. seq.*

j.    Awarding Plaintiffs a reasonable attorneys' fee pursuant to 29 U.,S.C. §216(b) and Fla. Stat. §448.104;

k.    Awarding Plaintiffs the costs of this action AND

l.    Granting such further relief as this Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury on all questions of fact raised by this Complaint.

Dated this _____ day of November, 2013

/s/ Benjamin L. Williams
BENJAMIN L. WILLIAMS, ESQ.
Florida Bar No. 0030657
FELDMAN, MORGADO PA
10151 Deerwood Park Blvd,
Bldg 200, Suite 250
Jacksonville, FL 32256
904-240-4300 Phone
904-800-1188 Fax
Email: bwilliams@ffmlawgroup.com

Trial Counsel and Attorneys for the
Representative Plaintiffs., and the Putative
Classes

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the Plaintiff's Amended Complaint has been served this __ day of November, 2013, with the Clerk of the court by using the CM/ECF system, which will send a Notice of Electric Filing to all counsel of record.

/s/Benjamin L. Williams

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

<div style="border:1px solid">EXHIBIT
A</div>

DAVID KUBIAK, individually and on behalf
of all others similarly situated who consent
to their inclusion in a collective action,

     Plaintiff,

v.

S.W. COWBOY, INC., d/b/a
SALTWATER COWBOYS; ROCHELLE
DROUILLARD, individually; PETER
LAWLOR, individually; SCOTT SINGLETON,
Individually; JUDITH WEGNER, individually;
BILL WHITE, individually; and TERRY
WHITE, individually;

     Defendant.

_____/

## DECLARATION OF JOSEPH KEATING

Pursuant to 28 U.S.C. § 1746, I, **JOSEPH KEATING**, declare the following:

1. I am over the age of 18, am competent to testify to the following from my personal experience and knowledge, and declare as follows:

2. I am currently employed at Saltwater Cowboys.

3. Rochelle Drouillard, Peter Lawlor, Scott Singleton, Judith Wegner, Bill White and Terry White (together the "Owners") were, and are owners of Saltwater Cowboys.

4. The Owners set and implemented restaurant policy, including but not limited to policy concerning pay rates, tip pooling, tip sharing, server performance guidelines and scheduling policy.

5. The Owners had the authority to hire and fire me and other employees.

6. I worked as a Server and occasionally as an Expediter.

7. During my employment, I was paid less than the standard minimum wage.

1

8. As a Server, I regularly received tips while working for Saltwater Cowboys.

9. I was required to share tips with employees who do not customarily receive tips, including but not limited to the chef, cooks, sous chefs, dishwashers, Expediters and other staff.

10. This tip pool was not voluntary, it was mandatory and managers would enforce the tip splitting procedure.

11. Accordingly, when I was made aware of the current litigation I chose to become part of it, because I felt that the tip sharing policy at Saltwater Cowboys was unfair.

12. I filed my notice of consent to be part of the current litigation on December 4, 2012.

13. On Thursday, January 17, 2013 all six of the Owners were in the restaurant. This had never happed before.

14. The Owners called a meeting with all servers, managers and kitchen staff. At all other meetings that I've attended – they did not include kitchen staff or managers.

15. The Owners then gave a threatening speech about how they stared the restaurant and worked all of the positions.  They stated at that time, in the 80's, they got together and agreed to share tips with kitchen staff because running the restaurant was a group effort.

16. The Owners then informed all of us of the pending litigation.

17. They did not give us the name of the plaintiffs or lawyers involved.  They did not inform the people at the meeting that they might have a right to participate in the litigation.

18. The Owners screamed about the fact that several disgruntled Servers filed a tip pooling lawsuit against them.

19. The Owners called these servers cowards – and promised that they will not settle and the servers will never get anything.

20. The Owners called the current litigation a frivolous shakedown of restaurants.

21. The Owner, Pete Lawlor made physically threatening gestures while screaming "bring it on!" while pumping his fists.

2

22. The Owners threatened employees with a further reduction in tips if they joined the lawsuit.

23. The Owners threatened criminal, felony charges against the participants of this lawsuit.  They stated that during their investigation, they uncovered evidence of credit card fraud of accepting tips in addition to the included 18% service charges.  The Owners stated that they intended to pursue separate, felony charges against the participants in the current litigation for accepting tips on top of service charges.

24. This statement freaked me out and all of my fellow co-workers.  The Owners threatened criminal charges just to scare employees from participating in the current litigation.

25. The Owners attempted to coerce and influence witness statements by "explaining" that the tip pooling policy was initially determined back in the 80's. Wherein the staff (at that time) voluntarily agreed to share tips with kitchen staff and Expediters.

26. The Owners then explained that during the time since that agreement, the term 'voluntary' was inadvertently removed from the tip-out sheets.

27. For the first time in my employment, the Owners told us that the tip pool was voluntary.

28. I was extremely intimidated by the Owners, and I know that other employees were too.

29. After this meeting, an employee who was contemplating joining the lawsuit told me that he was too intimidated to join now.

30. Everyone was so intimidated that you could hear a pin drop in the restaurant during the rest of the closing (normally a very noisy activity).

31. I was then called into the back office by manager Jen.

32. I was given a formal write-up for hanging out at the hostess stand.

33. She told me that on many occasions she has told me not to hang out at the hostess stand.

34. She stated that earlier that night I was hanging out at the hostess stand – and that I was getting written up for it.

35. I was being singled out because they knew that I was part of the current litigation.

36. They made me sign the write-ups.

37. Saltwater Cowboys singled me out and wrote me up in retaliation for participating in the current litigation.

38. I was retaliated for being a server who exercised his federally protected rights pursuant to the Fair Labor Standards Act.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22 day of ___January___ , 2012.

Joseph Keating

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

<div style="border:1px solid">

**EXHIBIT**

**B**

</div>

DAVID KUBIAK, individually and on behalf
of all others similarly situated who consent
to their inclusion in a collective action,

     Plaintiff,

v.

S.W. COWBOY, INC., d/b/a
SALTWATER COWBOYS; ROCHELLE
DROUILLARD, individually; PETER
LAWLOR, individually; SCOTT SINGLETON,
Individually; JUDITH WEGNER, individually;
BILL WHITE, individually; and TERRY
WHITE, individually;

     Defendant.

_____/

## DECLARATION OF JASON CROWLING

Pursuant to 28 U.S.C. § 1746, I, **JASON CROWLING**, declare the following:

1. I am over the age of 18, am competent to testify to the following from my personal experience and knowledge, and declare as follows:

2. I was employed at Saltwater Cowboys from 2008 until January 17, 2012.

3. Rochelle Drouillard, Peter Lawlor, Scott Singleton, Judith Wegner, Bill White and Terry White (together the "Owners") were, and are owners of Saltwater Cowboys.

4. The Owners set and implemented restaurant policy, including but not limited to policy concerning pay rates, tip pooling, tip sharing, server performance guidelines and scheduling policy.

5. The Owners had the authority to hire and fire me and other employees.

6. I worked as a Server and occasionally as an Expediter.

7. During my employment, I was paid less than the standard minimum wage.

1

8. As a Server, I regularly received tips while working for Saltwater Cowboys.

9. I was required to share tips with employees who do not customarily receive tips, including but not limited to the chef, cooks, sous chefs, dishwashers, Expediters and other staff.

10. This tip pool was not voluntary, it was mandatory and managers would enforce the tip splitting procedure.

11. Accordingly, when I was made aware of the current litigation I chose to become part of it, because I felt that the tip sharing policy at Saltwater Cowboys was unfair.

12. I filed my notice of consent to be part of the current litigation on December 4, 2012.

13. On Thursday, January 17, 2013 all six of the Owners were in the restaurant. I thought that this was odd, because as long as I've been working there, they have never all been at the restaurant at the same time.

14. After closing that night, the Owners called a meeting with all servers, managers and kitchen staff. (This too has never happened in the four years that I've been working.)

15. The Owners then gave a threatening speech about the pending litigation, and intimidated other Servers and staff from exercising their right to participate in the litigation.

16. The Owners screamed about the fact that several disgruntled Servers filed a tip pooling lawsuit against them.

17. The Owners called 'us' cowards – and promised that they will not settle and the servers will never get anything.

18. The Owners called the current litigation a frivolous shakedown of restaurants.

19. The Owner, Peter Lawlor made physically threatening gestures while screaming "bring it on!" while pumping his fists.

20. The Owners threatened criminal, felony charges against the participants of this lawsuit. They stated that during their investigation, they uncovered evidence of credit card fraud of accepting tips in addition to the included 18% service charges. The Owners stated that they intended to pursue separate, felony

charges against the participants in the current litigation for accepting tips on top of service charges.

21. This statement freaked me out and all of my fellow co-workers. The Owners threatened criminal charges just to scare employees from participating in the current litigation.

22. I have never been so intimidated or threatened in my entire life.

23. The Owners threatened employees with a statement indicating that they were legally entitled to reduce the amount of tips even more than they do – not so subtly implying that they will reduce the tips of employees who decide to join this suit.

24. The Owners attempted to coerce and influence witness statements by "explaining" that the tip pooling policy was initially determined back in the 80's. Wherein the staff (at that time) voluntarily agreed to share tips with kitchen staff and Expediters.

25. The Owners then explained that during the time since that agreement, the term 'voluntary' was inadvertently removed from the tip-out sheets.

26. After they were done screaming at all of us, they singled me out, specifically asking me if I had any questions. They accused me of running my mouth recently.

27. Given the circumstances, I was humiliated and scared.

28. When I didn't respond, the Owners adjourned the meeting.

29. Everyone was so intimidated that you could hear a pin drop in the restaurant during the rest of the closing (normally a very noisy activity).

30. I was then called into the back office by manager Jen and Owner Peter.

31. They shoved a couple of write-ups at me and accused me of credit card fraud. They indicated that they have proof that I committed credit card fraud and that I was going to be arrested.

32. They claimed that I over-charged at least one customer, by failing to inform them that an automatic service charge was already included on the bill (for a large party).

3

33. They alleged that by failing to tell the customer about the service charge[1] – the customer was 'duped' into including an additional gratuity on the check.

34. I vehemently denied the allegation.  I always tell my customers if there is a service charge that has been added to the bill.

35. They refused to let me see their "evidence" and did not tell me who the guest was.

36. They asked that I sign the written statement admitting to the credit card fraud.

37. I refused.

38. I was fired on the spot.

39. Saltwater Cowboys' allegations are false.

40. These were trumped up allegations that they used to fire me.

41. I was retaliated for being a server who exercised his federally protected rights pursuant to the Fair Labor Standards Act.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22 day of ___JANUARY___, 2012.


_____
Jason Crowling

---

[1] The service charge for large parties is clearly written on the menu and was clearly marked on all checks where it is included.  Further, it is Saltwater Cowboys' policy that all servers tell their patrons about the included gratuity.  I always informed all of my guests of the policy.