**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DAVID KUBIAK, et al.,**

     **Plaintiffs,**

**vs.**                                 **CASE NO.: 3:12-cv-1306-J-34JRK**

**S.W. COWBOY, INC., et al.,**

     **Defendants.**

_____/

<u>**RESPONSE TO PLAINTIFFS' AMENDED AND RESTATED MOTION**</u>

     Defendants, S.W. COWBOYS, INC., et. al., oppose Plaintiffs' Amended and Restated Motion for Declaration of a Class Action as to Minimum Wage Claims Pursuant to Rule 23(b)(3); Motion to Conditionally Certify a Collective Action Pursuant to 29 U.S.C. § 216(b) and Motion for Equitable Tolling of the Statute of Limitations [Dkt. 98] (hereinafter "New Motion for Certification") for the reasons set forth in the accompanying Memorandum of Law.

<u>**MEMORANDUM OF LAW**</u>

     Plaintiffs' New Motion for Certification is a classic attempt at misdirection. Rather than confront two inescapable truths underlying their New Motion for Certification, Plaintiffs attempt to cloud the matter with conclusions, misleading descriptions of record evidence, and argument about subsidiary issues. Despite this sleight-of-hand, Plaintiffs' New Motion for Certification should be denied because it fails to address two fatal flaws. There is no evidence in the record – and certainly no evidence that applies to every member of a potential class – that Defendants required servers to contribute to the kitchen tip pool. And there is no evidence that any member of the putative class other than Plaintiffs or opt-in Plaintiffs have any interest in participating in this litigation. Thus, Plaintiffs' New Motion for Certification should be denied.

## I.     The voluntary nature of the contributions is the threshold legal issue.

The sharing of tips with non-tipped employees like managers or kitchen employees only violates the FLSA if that sharing is mandatory.[1]   Plaintiffs' New Motion for Certification attempts to focus the Court's attention away from the nature of servers' contribution to the tip pool by identifying three "legal theories common to the putative class" based on the distribution of tips.  [Dkt. 98, p. 24].[2]

Plaintiffs shrewdly offer these three "class" issues because they recognize that the distribution of the kitchen tips is the most uniform practice at issue.   But, the answers to questions about distribution of the kitchen tip pool only have legal significance if Plaintiffs can show the contributions to the kitchen pool were mandatory.   Therefore, the nature of the server contributions to the kitchen pool is the threshold issue upon which this entire matter hinges.

### a.   The FLSA allows servers to create voluntary tip pools.

Plaintiffs rely on Chhab v. Darden Restaurants, Inc., No. 11-Civ-8345, 2013 WL 5308004, at *13 n. 10 (S.D.N.Y. Sept. 20, 2013) and Rubio v. Fuji Sushi & Teppani, Inc., No. 6:11-cv-1753, 2013 WL 230216, at *1 (M.D. Fla. Jan. 22, 2013) in arguing "regardless of whether or not Servers voluntarily contributed tips to the kitchen staff as part of the tip pool, the mere fact that non-tipped kitchen staff participated in the Server tip pool necessarily invalidates the Defendants' application of the tip credit in the instant case." [Dkt 98, p. 9].  This assertion, however convenient for Plaintiffs, is in stark contradiction to well-established law.

As a preliminary matter, the Rubio court did not analyze whether the tip pool at issue in

---

[1] Because the Florida Minimum Wage Act is identical to the FLSA in this regard, Defendants focus their analysis on the FLSA.  See Perez v. Palermo Seafood, Inc., 548 F. Supp. 2d 1340, 1347-1348 (S.D. Fla. 2008) (stating "[t]he Florida law on "tip credit" is the same as that of the FLSA. Fla.")

[2] For clarity, Defendants will cite to the page numbers assigned by the docketing system, which differ from the page numbers used by Plaintiffs as their first three pages are numbered i, ii, and iii.

that case was voluntary and therefore cannot stand for the proposition asserted by Plaintiffs.  See Rubio, 2013 WL 230216, at *2-3.  Likewise, the voluntary nature of the tip pool at issue in Chhab was not related to the issue before the court so, the court's statement on the legality of voluntary tip pools in footnote 10 of its opinion is nothing but dicta.  See Chhab, 2013 WL 5308004, at *13.  Furthermore, the conclusion reached by the Chhab court was in error.

The cases Judge Buchwald relied upon in footnote 10 for the proposition that voluntary tip pools benefiting non-tipped kitchen staff are prohibited by the FLSA do not involve voluntary tip pools and offer no analysis – even in dicta – about voluntary tip pools.  Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 220, 229 (S.D.N.Y. 2002); Garcia v. La Revise Assoc., LLC, 2011 WL 135009, at *3 (S.D.N.Y. Jan. 13, 2011).  Finally, the dicta opinion in footnote 10 of Chhab is directly rejected by well-established legal precedent that voluntary tip pools are permissible under the FLSA and that FLSA tip pool restrictions limiting distribution to other tipped employees apply only to mandatory tip pools.  See, e.g., 29 CFR 531.54; Turner v. Millennium Park Joint Venture, 767 F.Supp. 2d 951, 954 (N.D. Ill. 2011); see also Torres v. Cache Cache, Ltd., No. 12-cv-00150, 2013 WL 1685784, *3-4 (D. Colo. Apr. 18, 2013); DOL Opinion Letter, 1976 WL 41732; DOL Field Operations Handbook § 30d01 (a), § 30d04(c).

**b. Defendants did not create or mandate contribution to the kitchen tip pool.**

Plaintiffs offer two alternate theories to meet their burden that the kitchen tip pool was mandatory for a class of servers.  The first, arguing that Defendants established the kitchen tip pool and its terms, is unsupported by any evidence and should be disregarded.  On page 11 of their New Motion for Certification, Plaintiffs claim that Defendants admit that they "instituted and implemented the kitchen tip pool."  [Dkt. 98, p. 11].  This admission is purportedly found in paragraph 6 of Defendant William White's affidavit that says, "[w]e agreed with the servers'

decision to create a tip pool for the kitchen but we informed the staff that contribution to this tip pool had to be on a voluntary basis." [Composite Ex. B, ¶ 6].  Plaintiffs do not explain how White's "agreement" with the "servers' decision" constitutes an act by Defendants.   Further, Defendants have produced the actual ballots used to create the tip pool at both Fiddler's Green and Saltwater Cowboys and provided affidavits confirming the validity of that vote.  [Composite Ex. C; Ex. A-5; Ex. A-16; Ex. A-17].   In their depositions Plaintiffs admit that they have no personal knowledge about the creation of the kitchen pool. See e.g., [Ex. J, at 110-111; Ex. D, at 77-82; Ex. I, at 88-90].   Thus, they cannot dispute Defendants' evidence that the kitchen pool was created by the original group of servers at the restaurant through a vote.

Plaintiffs claim that Defendants were so involved in the tip pool that it should be deemed mandatory should also be disregarded.   After accusing Defendants of implementing and administering the pool, Plaintiffs' New Motion for Certification turns about and faults Defendants for not ensuring the voluntariness of pool through more active involvement.  [Dkt. 98, p. 11].  Plaintiffs cannot have it both ways.  As a matter of logic, both participation and non-participation by an employer cannot violate the FLSA.   Because the underlying question is whether Defendants directed the creation of the kitchen pool, Plaintiffs' argument that Defendants did not do enough to manage the pool amounts to a concession there is no evidence that Defendants took any affirmative act to mandate participation in the kitchen tip pool.

Thus, Plaintiffs have not pointed to any *affirmative* act by Defendants requiring servers to contribute to the kitchen pool and are forced to rely on some purported passive coercion by Defendants to show that server contributions to the kitchen pool were voluntary.

### c.  The only issue is whether servers were passively coerced to contribute.

After peeling back the layers of onion Plaintiffs wrapped around the only dispute, it is

clear that the Court has been asked to determine whether servers were passively coerced into contributing to the kitchen pool.  Coercion, of course, could have the legal effect of changing the kitchen pool from a voluntary tip pool into a mandatory tip pool, which could then require servers to share tips with non-tipped employees in violation of the FLSA.  Plaintiffs allege the kitchen pool was passively coercive in three ways.  Plaintiffs claim that Defendants "suggested" the amount to be contributed, required servers to complete a tip allocation form that did not specifically identify the contribution as voluntary, and required servers to turn that form into management where it was reviewed for accuracy.  [Dkt. 98, 15-16].

### i.   There is no evidence Defendants suggested a formula for contributions.

As Plaintiffs point out, servers at Saltwater Cowboys and Creekside Dinery traditionally gave $.20 per dinner sold to the kitchen staff and 10% of their tips to the expediter.  Plaintiffs, however, have not identified any evidence suggesting that Defendants created this tradition.  Several Plaintiffs admit that this alleged "formula" is not written anywhere – not on the tip allocation form or the server reading – and most Plaintiffs concede that they were informed about the tradition by other servers.  See e.g., [Ex. E, at 65-67; Ex. F, at 77-78, 85; Ex. K, at 46-48; Ex. L, at 27-30; Ex. H., at 27-30; Ex. I, at 46-48; Ex. J, at 75-77].  In fact, the contribution practice relied upon by Plaintiffs arose as early as the server vote to create the kitchen pool in 1987 and has been passed along by servers training each other without direction from management.  See [Composite Ex. A].  No Plaintiff or server-witness has testified that any Defendant "suggested" the contribution and any such assertion is false.[3]

---

[3] Plaintiffs' assertion that Defendants "suggested" the formula is ostensibly based on page 66 of Saltwater Cowboys' corporate rep deposition in which Scott Singleton expressly testifies that the servers at Fiddler's Green created the formula. Ex. M, at 66.

### ii.       There is no evidence that the tip allocation form coerced servers.

Plaintiffs also assert that the absence of the word "voluntary" on the tip allocation form coerced servers into contributing to the kitchen pool.  Not only did the tip allocation form contain the word "voluntary" during relevant parts of the potential limitations period, there is no evidence that any server was coerced by the tip allocation form.

As Plaintiffs are well aware, Defendants first version of the form specifically included the word "voluntary" in reference to the kitchen pool contribution.  See [Ex. A-27, ¶7; Ex. A-28, ¶7; Ex. P, at 72-75].  At some point, due to a copying oversight, the word "voluntary" was cut off the allocation form that was reproduced for servers.  See [Ex. M, at 52; Ex. N, at 35-36, 44-45; Ex. P, at 72-75].  Defendants realized this oversight when Plaintiffs instituted this action and returned "voluntary" to the allocation form in January, 2013.  [Ex. O, at 22; Ex. P., at 72-75].  Moreover, Plaintiffs have yet to explain how the tip allocation form coerced them into contributing to the kitchen pool.

### iii.      Defendants' managers only confirmed accuracy of servers' declarations.

Finally, Plaintiffs uniformly allege that servers were required to turn in tip allocation forms to Defendants' managers each evening where they were "corrected."  There is no evidence in the record that Defendants' managers did anything other than double-check the tip allocation forms to confirm the total tips claimed by Plaintiffs was accurate in light of the contributions each server declared. [4]  See e.g., Ex. O, at p. 58.  This, of course, is well-within Defendants' obligation to accurately report all compensation earned by all employees. 29 CFR 531.54.

## II.       Plaintiffs have not even attempted to meet the burden for class certification.

Plaintiffs' request for class certification is based on the assumption that the mere

---

[4] Plaintiffs may argue, based on Michael Hoolahan's deposition, that one of Defendants' manager forced Alex Lawrence, a server, to contribute to the kitchen pool against his will.  Ex. H, at 59-61.  This testimony was refuted by Lawrence himself.  [Ex. A-42].

identification of the factors necessary for certification is sufficient to force Defendants' employees and former employees into a class they do not want to participate in. Plaintiffs' failure to offer a thoughtful explanation of the ways in which they meet the standard for class certification is grounds to deny their New Motion for Certification.

To establish that Rule 23 certification of a class is proper, Plaintiffs must show that the putative class meets each requirement set forth in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements in Rule 23(b). Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004) (abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)). Rule 23 "does not set forth a mere pleading standard." Id. at 2551. Instead, the rule requires Plaintiffs to "affirmatively demonstrate [their] compliance with the Rule," and show that there are *"in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis added). Thus, in deciding the issue of certification, "[t]he court must ensure, through rigorous analysis, that each and every element of Rule 23 is established at the time of certification." Bennett v. Hayes Robertson Group, Inc., 880 F. Supp. 2d 1270, 1277 (S.D. Fla. 2012) (internal citations and quotations omitted).

As set out above, the only relevant issue for adjudication, on an individual or class basis, is whether the server contribution to kitchen pool was voluntary. This question, without more, is insufficient to meet the requirements of Rule 23. Plaintiffs here, like the plaintiffs in Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---,131 S. Ct. 2541, 180 L. Ed. 374 (2011), merely claim to be employees of the same company that suffered the same type of injury. Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---,131 S. Ct. 2541, 2551, 180 L. Ed. 374 (2011). This commonality does not meet the Rule 23 standard for class certification because "any competently crafted class complaint literally raises common 'questions.'" Dukes, 131 S. Ct. at 2551. Properly understood,

Rule 23 requires the Court to focus not on "the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (emphasis in original) (internal quotations and citations omitted). By framing the purported class in terms of coercion, Plaintiffs have failed to raise a question with common answers.

### a. Plaintiffs cannot meet Rule 23(a)(1)'s numerosity requirement.

Plaintiffs' motion for certification attempts to establish that the proposed class is sufficiently numerous, as required by Rule 23(a)(1) by alleging that the class they wish to represent contains 205 potential members. [Dkt. 98, p. 23]. The mere existence of 205 servers, Plaintiffs conclude, meets the numerosity requirements of Rule 23(a)(1). This conclusion, of course, overlooks the stark reality that Plaintiffs have only found three named plaintiffs and six opt-in plaintiffs interested in participating in this matter.[5] Even if the three non-plaintiff declarants are included in a potential class, despite their unexplained decision not to opt in, the current class only contains 12 members.

This small group of 12 friends pales in comparison to the 42 affidavits of current and former employees of Defendants testifying by affidavit (and several others willing to testify) that they knew the contribution to the kitchen pool was voluntary. This testimony not only removes the declarants from the class as defined by Plaintiffs but also undermines Plaintiffs' ability to show that more than 12 class members exist. Plaintiffs define the putative class to include servers "who were required to share tips with employees who do not customarily and regularly

---

[5] Interestingly, opt-in Plaintiffs Harvey and Hoolahan signed their consents to join on August 25, 2013 and July 3, 2013 respectively but Plaintiffs failed to file those consents until October 25, 2013 and August 5, 2013 respectively. Neither Harvey nor Hoolahan had any real explanation for this delay. [Ex. G, at 16-17; Ex. H, at 29]. Defendants believe Plaintiffs waited to file the consents of opt-in Plaintiffs Harvey and Hoolahan to make it appear as though the members of the class were continually attempting to join as Plaintiffs in the hopes that the Court would see these subsequent consents as proof that unidentified class members were being continually identified.

receive tips." [Dkt. 98, p. 22]. Therefore, no server that testifies that he or she "voluntarily" contributed to pool is a member of that class.

Plaintiffs, like the plaintiff in Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009), have not offered a shred of evidence that a class with sufficient numerosity exists. During deposition, several Plaintiffs and opt-in Plaintiffs admitted that the paragraph of their cookie-cutter affidavit swearing that they are "aware of other servers who would like to join this lawsuit but are afraid of suffering retaliation" was not based on any personal knowledge because none could identify a single person interested in joining. See e.g., [Ex. D, at 28-34; Ex. I, at 80-84; Ex. J, at 115-119; Ex. H, at 57-59; Ex. G, at 51; Ex. F, at 102-110; Ex. K, at 77-78; Ex. E, at 82-85; Ex. L, at 54-55]. Therefore, the record evidence makes clear that 12 former servers believe they were required to share tips with kitchen employees through the kitchen pool. This, of course, is insufficient to meet Rule 23(a)(1)'s numerosity requirements. Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

### b. The question of coercion is unique to each server.

Plaintiffs' necessary reliance on the alleged coercive nature of the kitchen pool, like the characterization of Wal-Mart's decentralized decision-making apparatus in Dukes, puts the cart before the horse. Rather than starting with a unified policy and then arguing its merits based on the decisions made in accordance with that policy, Plaintiffs attempt (as did the plaintiffs in Dukes) to take a series of distinct decisions and claim that they were made in accordance with a central practice whose legality can be determined by the Court. The Supreme Court rejected this exact approach in Dukes because it would allow "respondents … to sue about literally millions of employment decisions at once." Dukes, 131 S. Ct. at 2552.

The dispute at issue in this case is very similar to the question addressed by the District

Court for the Southern District of Texas and the Fifth Circuit Court of Appeals in <u>Roussell v. Brinker Intern., Inc.</u>, No. H-05-3733, 2008 WL 2714079, *1 (S.D. Texas July 9, 2008) and <u>Roussell v. Brinker Intern., Inc.</u>, 441 Fed. App. 222 (5th Cir. 2011).   Plaintiffs in <u>Roussell</u> alleged that they were required share tips with non-tipped employees.   <u>Roussell</u>, No. H-05-3733, 2008 WL 2714079, at *1.   Like this case, plaintiffs in <u>Roussell</u> could not point to any express uniform policy requiring servers to contribute tips to the non-tipped employees.   <u>Id.</u> at *19.   So, plaintiffs in <u>Roussell</u>, like Plaintiffs here, argued that the structure of the allegedly voluntary tip contribution coerced them into sharing tips with the non-tipped employees.   <u>Id.</u> at *19-21.

Upon detailed analysis, the District Court for the Southern District of Texas ultimately decided that the plaintiffs' allegations of coercion could not be tried as a collective action using representative testimony because of the unique manner in which different groups of plaintiffs were allegedly coerced.   <u>Rousell</u>, 2008 WL 2714079, at *21-24.   On appeal after the trial, Brinker attempted to de-certify the class of servers the district court reduced to 55.[6]   <u>Roussell</u>, 441 Fed. App. at 226.   The Fifth Circuit upheld that reduced class because the members of that class offered consistent testimony about the ways in which they were allegedly "coerced" into sharing tips with the non-tipped employees.   <u>Id.</u>

Based on the evidence in the record in this matter, none of the servers in the potential class were "coerced" in the same way to contribute to the kitchen pool.   As the affidavits attached hereto make clear, a great percentage of the potential class were not coerced in any way because they are affirmatively aware that contribution to the kitchen pool was and remains voluntary.   Complicating matters further, the affidavits of Courtney Thompson and Madison

---

[6] Neither opinion makes clear exactly what transpired between the District Court opinion on de-certification and the appeal.   But, the facts suggest that after the "class" of plaintiffs was reduced to the 55 who offered identical testimony about coercion.   If that same approach were taken here, Plaintiffs' purported class would be reduced to nine which is not sufficient to meet the numerosity requirement as argued above.

Smith as well as the deposition of Ryan Marcum make clear that some of the current Plaintiffs informed them or were specifically trained that the kitchen contribution was voluntary. [Ex. A-35, ¶ 9; Ex. A-34, ¶9; Ex. Q, at 53-54].

Thus, to determine whether a particular contribution to the kitchen pool was coerced, the Court will have to evaluate how each claimant learned of the kitchen pool, how the alleged formula for contribution was described to each claimant, whether they used tip allocation forms that said "voluntary," whether the absence of "voluntary" misled them to assume the contribution was mandatory, whether they wanted to reduce the amount of money contributed to the kitchen pool, and whether submitting the form to the closing manager made them feel pressure to increase their contribution to the kitchen pool.

At best, Plaintiffs only evidence of a uniform policy or practice that could raise the question of coercion on behalf of an entire class of servers are the bare-bones conclusory allegations in their supporting declarations. Those declarations, though, are classic cookie-cutter statements that have no evidentiary value. In fact, during their depositions, Plaintiffs and opt-in Plaintiffs admitted on multiple occasions that the testimony in their declarations was not based on their personal knowledge. See e.g., [Ex. D, at 28; Ex. I, at 88, 96; Ex. E, at 81]. Moreover, during the deposition of Matt Dillon, counsel for Plaintiffs expressly coached Dillon to change his testimony during a break. See [Ex. E, at 90]. This behavior by Plaintiffs' counsel calls into question the remaining vague testimony in Plaintiffs' supporting declarations.

When Plaintiffs' self-serving recitation of conclusory statements is compared to the undisputed testimony regarding the creation and administration of the kitchen pool by the servers and the 42 affidavits submitted by Defendants setting out the unique experiences each server or person acting as a server had with the allegedly coercive acts, it is clear that Plaintiffs' theory of

coercion simply cannot be resolved on a class basis due to the individualized inquiry necessary to resolve Plaintiffs' claims.

### c. Neither Plaintiffs nor counsel have adequately represented the purported class.

Finally, Plaintiffs cannot meet the requirements of Rule 23(a) because neither the Plaintiffs nor their counsel can adequately represent the prospective class members. Plaintiffs assert that their counsel will adequately represent the potential class because "the Law Firm of Feldman, Morgado P.A. is experienced in Florida Minimum Wage claims and litigating hundreds of wage hour claims before the Middle District District." [Dkt. 98, pg. 27]. The record to date in this matter undermines this self-serving assertion.

To start with, as previously argued, Plaintiffs' counsel failed to comply with Rule 4.04(b). See [Dkt. 65]. This failure is per se grounds to find counsel is inadequate to protect the interests of the class. Jones v. Hartford Ins. Co., 243 F.R.D. 694, 696 (N.D. Fla. 2006). This was not the first instance where an alleged calendaring issue caused Feldman Morgado, P.A., to violate Rule 4.04(b). See Wilcox v. Taco Bell of Am., Inc., No. 8:10-cv-2383, 2011 WL 3444261 (M.D. Fla. Aug. 8, 2011). Moreover, Plaintiffs' Counsel's decision to amend the Complaint in this matter at the 11th hour mooted Plaintiffs' previous motion for class and collective certification.[7] [Dkt. 91]. This odd tactic re-set the limitations period for unrepresented servers and is a mistake Plaintiffs' counsel has made in other cases undermining their claim to be "experienced" wage hour litigators. Lytle v. Lowe's Home Ctrs., Inc., No. 8:12-cv-1848, 2014 WL 103463, *6 (M.D. Fla. Jan. 10, 2014).

Counsel for Plaintiffs has also committed a series of other errors that were set out in response to Plaintiffs' original motion for certification that, at the very least, call into question

---

[7] As raised in oral argument, the amendment itself was particularly odd because Plaintiffs raised allegations about Kitchen Manager participation in the tip pool and unequal distribution of kitchen tips before discovery even commenced. It is not clear why Plaintiffs did not previously include this allegation in their Complaint.

12

their attention to detail and their capacity to capably represent potential class members.

Finally, Plaintiffs cannot show they will adequately represent other class members.   As described in the affidavit of Timothy Rhoden, several of the current plaintiffs or opt-in plaintiffs made statements indicating they were aware the kitchen pool was voluntary.  See [Ex. A-32]. Any server that was coerced into making a contribution to the kitchen pool could be unfairly prejudiced by Plaintiffs' representation.  If the fact-finder determines the entire class's eligibility for relief on the details of Plaintiffs' representation, then the flaws in Plaintiffs' claims, as described in the enclosed affidavits, will undermine the legitimate claims of other class members, should they exist.

### d. Forcing Defendants' employees and former employees into a class they do not wish to participate in is neither a fair nor efficient way to adjudicate this dispute.

Even if Plaintiffs claims could meet the requirements of Rule 23(a), their New Motion for Certification should be denied because a class action is not superior to other available methods for fairly and efficiently adjudicating this controversy as required by Rule 23(b)(3).

Rule 23(b)(3) allows a matter to be certified as a class action when "the questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The test for predominance is whether, "after the adjudication of classwide issues, plaintiffs must still introduce a great deal of individualized proof."  Vega, 564 F.3d at 1270 (internal citations omitted).  In other words, "if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence that strongly suggests that individual issues … are important," the alleged class does not comply with the requirements of Rule 23(b)(3).  Vega, 564 F.3d at 1270.

Even if common questions exist, the individualized issues clearly predominate in

determining whether each server was coerced into contributing to the kitchen pool.  The crucial question relevant to Plaintiffs' theory of coercion asks the Court to determine each potential class member's specific knowledge.  More plaintiffs will, undoubtedly, bring in significant amounts of new evidence. In addition, as noted above, Defendants will be forced to proffer individualized and varying evidence against each individual class member to challenge new claims of coercion. Accordingly, the individual nature of these claims mandates an individualized approach.

In addition to showing that common questions of law or fact predominate, Rule 23(b)(3) also requires a finding "that a class action is superior to other available methods for adjudicating the controversy." Vega, 564 F.3d at 1265. Currently, there are 12 individuals who believed the tip pool to be mandatory.  Of those 12, only nine wish to participate as plaintiffs.  Based on Plaintiffs' calculations of the potential class, there are several individuals who are uncommitted. Plaintiffs have made no effort to inquire about whether those uncommitted class members felt coerced to contribute to the kitchen pool and now rely on their New Motion for Certification to excuse their failure to litigate the case themselves.

Plaintiffs faced no obstacle to interviewing these potential class members.  All current Plaintiffs reside in and around St. Augustine so there is no basis to conclude that geographic dispersion negatively affected Plaintiffs' ability to find these servers.[8]  Plaintiffs, based on their own testimony, were influential members of the workforce at Saltwater Cowboys and Creekside Dinery capable of contacting potential class member if they so desired.  See e.g., [Ex. F, at 11-16].  Their failure to do anything other than speculate whether more than nine servers were

---

[8] Plaintiffs dishonestly argue that the potential class is geographically dispersed because one of the opt-in Plaintiffs, Jeffrey Little, allegedly moved out of the state of Florida.  [Dkt. 98, pg. 5, 23].  Not only is Mr. Little's experience not representative of other witnesses testifying by deposition or affidavit who would be potential members of the putative class, all of whom still live in St. Augustine or within the Northern District of Florida, but Mr. Little himself **still lives in St. Augustine.**  As his deposition testimony makes clear, Mr. Little is a resident of St. Augustine who travels for work.  [Ex. K, at 5-7].  This occasional work-related travel is not sufficient reason for the Court to create a class action in this matter.

interested in joining this class action as plaintiffs confirms that it would be neither fair nor efficient to force all 196 servers that have not joined this class, some of whom have already affirmative disclaimed participation, into a class with Plaintiffs against their will.

**III.   Plaintiffs have not offered sufficient grounds to proceed as a collective action.**

Plaintiffs' New Motion for Certification also asks the Court to conditionally certify this matter as a collective action pursuant to the FLSA.  By this request, Plaintiffs ask the Court to do something they themselves were unwilling to undertake.  To show that collective certification is proper in this case Plaintiffs carry the burden of establishing that the employees they seek to represent are both "similarly situated" to Plaintiffs *and* desire to opt-in to the action.  29 U.S.C. § 216(b); Dybach v. Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Plaintiffs' New Motion for Certification should be denied because Plaintiffs have not identified any similarly situated employees and, even if they could, there is no evidence that any other servers employed by Defendants have a desire to opt-in.

**a.   Plaintiffs offer no evidence that other potential class members desire to join.**

To meet the standard for conditional certification of a collective action, Plaintiffs must identify members of the putative class likely to opt in after receiving court-directed notice of a collective action.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008). In identifying these potential members, Plaintiffs must show that there is a "reasonable basis" for their claim that there are other similarly situated employees interested in participating. Mackenzie v. Kindred Hosp. East, LLC, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003).

As described in detail above, nine servers that were employed by Defendants have joined this action as Plaintiffs or opt-in Plaintiffs.  While Plaintiffs may have intentionally spaced the filing of those consents to give the appearance of continued interest from potential opt-in

15

Plaintiffs, the consent forms make clear that no opt-in Plaintiffs have joined since August, 2013.[9]

Moreover, Plaintiffs were unable in their depositions to identify a single server, other than those already in the action, interested in opting into this matter as a plaintiff or that they had discussed this matter with.  Thus, to the extent Plaintiffs have offered cookie-cutter affidavits alleging the existence of other interested class members, they admit that allegation is not based on any personal knowledge and should be disregarded by the Court.  Such skin-deep allegations do little more than demonstrate an effort by Plaintiffs' counsel to reduce a detailed analysis by this court into a box-checking application for help.  Rodgers v. CVS Pharmacy, Inc., No. 8:05-cv-770T-27MSS, 2006 WL 752831, at *4 (M.D. Fla. Mar. 23, 2006); Hoffer v. Ocwen Loan Servicing, Inc., No. 08-81399-CIV, 2009 WL 1404696 (S.D. Fla. May 19, 2009); Mackenzie, 276 F. Supp. 2d at 1220.

Plaintiffs, of course, blame their failure to identify or persuade additional opt-in class members on a staff meeting Defendants held on January 17, 2013.  While this may have been a convenient excuse for purposes of initial certification, both the course of discovery and the absence of additional opt-in plaintiffs, belie any ability to show that meeting dissuaded any potential plaintiff from joining this action.  Not only have Plaintiffs failed to identify any former employee, who would have no reason to be "intimidated" by a company they no longer work for, interested in joining this action, neither Michael Weller nor Sean Biggs have attempted to opt in or been identified by Plaintiffs as potential opt-in plaintiffs despite the fact that they were not present on January 17, 2013.  [Dkt. 98-24, 98-25].

In fact, Ryan Marcum's affidavit is the only admissible evidence in the record that addresses this question.  Marcum was approached by Farinos about joining this matter. [Ex. A-22].  Both Farinos and Plaintiffs' counsel explained the process to Marcum and offered him

---

[9] Those August opt-in Plaintiffs were the first to join this action since December, 2012.

financial reward for his participation [Id., ¶ 8].  Yet, Marcum chose not to join the litigation after Plaintiffs' counsel explained the issue to be decided.  Specifically, Marcum chose not to join because he knew the kitchen pool was voluntary [Id., ¶ 9].  Marcum's specific explanation of his decision, combined with the 42 other affidavits confirming knowledge that the kitchen pool was voluntary and the absence of any explanation for the lack of interest leaves only one viable explanation: potential class members have decided not to join as opt-in members because they, too, knew the kitchen pool was voluntary.

Plaintiffs' total failure to offer anything more than their unexplained confidence that like-minded class members exist, which is not based on any personal knowledge, is not sufficient to demonstrate the existence of similarly situated employees interested in joining this action.  The issuance of notice is not intended to function as a Court-sponsored fishing expedition to determine whether there are other employees who desire to join as opt-in plaintiffs.  Vondriska v. Premier Mortgage Funding, Inc., 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007).

**b.  Plaintiffs' reliance on job titles and conclusory allegations are insufficient.**

Even if Plaintiffs had personal knowledge that other servers were interested in joining this action as opt-in plaintiffs, this matter is not ripe for collective adjudication because servers are not similarly situated.  The law is clear that Plaintiffs cannot establish similarity by alleging that Defendants violated the FLSA.  Cohen v. Allied Steel Bldgs., Inc., 554 F. Supp. 2d 1331 (S.D. Fla. 2008).  In determining whether potential class members are similarly situated, courts often consider "whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker."  Bedoya v. Aventura Limousine & Transp. Serv., Inc., No. 11-24432-CIV, 2012 WL 1933553, at *4 (S.D. Fla. Apr. 10, 2012) (internal citations omitted).  As set out in

detail above, simply claiming all servers were coerced into contributing to a facially voluntary kitchen tip pool is insufficient to show similarity among the potential class. "Simply claiming violation of the FLSA will not suffice to meet the similarly situated requirement." Ledbetter v. Pruitt Corp., No. 5:05-cv-329 (CAR), 2007 WL 496451, at *5 (M.D. Ga. Feb. 12, 2007). Instead, to establish they are similarly situated, Plaintiffs must make "*substantial and detailed allegations* of FLSA violations and *provide evidence to support*" that Plaintiffs, as well as other potential plaintiffs, experienced these alleged FLSA violations. Ledbetter, 2007 WL 496451, at *4 (emphasis in original) (internal citations omitted). Plaintiffs have failed to meet standard.

As Defendants argued above, Plaintiffs have framed their alleged collective action in such a way that requires the Court to consider the circumstances in which each plaintiff learned of the kitchen tip pool and the circumstances in which each plaintiff participated in the kitchen tip pool. Using Plaintiffs' formulation, the plaintiffs who were properly trained may need to show that some event subsequent to their training created coercion, which likely will vary from opt-in to opt-in. That entire group may be differentiated from opt-in plaintiffs that, as alleged by Plaintiffs, were not properly trained on the voluntary nature of the tip pool. Ultimately, the collective action framed by Plaintiffs is not appropriate for certification because disparate employment circumstances and various defenses separate potential plaintiffs. Morgan 551 F. 3d at 1261. This potential for divergent proof is bolstered by the evidence in the record including testimony of current and former servers employed by Defendants that they always knew the contribution to the kitchen pool was voluntary.

In ruling on a certification issue after the close of discovery, the court should base its ultimate determination on the evidence in the record. Morgan, 551 F.3d at 1263. At the very least, the 42 affidavits submitted in connection with this response undermine any showing that

servers at Defendants' restaurants were, as a group, similarly situated.  See, i.e., Cache Cache, Ltd., 2012 WL 6652856, at *3.  More to the point, Plaintiffs failure to undertake any efforts to identify whether potential opt-in plaintiffs exist during the nearly 15 months since filing this action should prove fatal.  In essence, Plaintiffs have filed a New Motion for Certification hoping that the Court will do what they refused to, contact potential opt-in plaintiffs to gauge their interest in participation.  The Court, of course, does not exist to work as an arm of the plaintiffs' bar.  In fact, "where a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised notice as a tool for drumming-up business." Robinson v. Dolgencorp, Inc., No. 5:06-cv-122-Oc-10GRJ, 2006 WL 3360944, at *6 (M.D. Fla. Nov. 13, 2006).

## IV.    Plaintiffs have not identified any reasonable grounds for equitable tolling.

Plaintiffs also seek equitable tolling of the statute of limitations for the opt-in Plaintiffs. Equitable tolling under the FLSA is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Lytle, 2014 WL 103463, at *6.  In the Eleventh Circuit, equitable tolling is only available when a litigant can show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  Lytle, 2014 WL 103463, at *6

Plaintiffs request for equitable tolling is based exclusively on the alleged intimidation caused at the January 17, 2013 meeting conducted by Defendants.[10]  This section of Plaintiffs' New Motion for Certification, of course, is based on nothing more than speculation.  As argued above, Plaintiffs are not aware of anyone, other than themselves, who were actually intimidated

---

[10] Interestingly, Plaintiffs' request for equitable tolling doesn't mention their own late filing of the original motion for certification or their amendment that made that motion moot and required this even later motion.  Presumably, that is because those are the exact grounds Judge Covington rejected when Plaintiffs' law firm made that exact request in Lytle, 2014 WL 103463, at *6-7.

by the presentation.  This alleged intimidation doesn't advance their cause because it did not dissuade them from joining this action.  Moreover, as set out in the preceding section, this meeting would have no bearing on former employees.  Yet, even those who were not aware of the presentation have not joined this action.  Thus, there is no evidence Defendants' presentation of their side of these allegations discouraged anyone from joining this action.  In the absence of any evidence, Plaintiffs' request for equitable tolling should be denied.

**V.      Plaintiffs' proposed notice is inadequate and must be modified.**

Plaintiffs' proposed notice generally describes the lawsuit in question, but includes a paragraph that overtly supports Plaintiffs' claims and does not adequately identify Defendants' defenses.  The second paragraph under the heading, "Description of Lawsuit" reads, "You are believed to be a current or former Server who was forced to share tips with kitchen staff (ie. [sic] chefs, cooks, dishwashers, kitchen managers) and expeditors; [sic] therefore entitling you to payment of the tip credit reduction."  [Dkt. 52-10, pg. 2].  This paragraph presumes the very questions the Court is charged with deciding and is too biased.  Defendants propose that this paragraph be deleted or modified in a manner to eliminate such a partisan tone.

**VI.     Conclusion**

WHEREFORE, Defendants respectfully request the Court deny Plaintiff's motion.

DATED:  February 18, 2014.

/s/Marquis W. Heilig
Kevin D. Johnson
Florida Bar No.: 0013749
Marquis W. Heilig
Florida Bar No. 0029007
THOMPSON, SIZEMORE, GONZALEZ
   & HEARING, P.A.
201 N. Franklin Street, Ste. 1600
Tampa, FL 33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
kjohnson@tsghlaw.com
mheilig@tsghlaw.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

electronic mail and U.S. Mail this 18th day of February, 2014, to the following:

Benjamin L. Williams, Esq.
Feldman Morgado, P.A.
10151 Deerwood Park Blvd.
Bldg 200, Suite 250
Jacksonville, FL 32256

/s/Marquis W. Heilig
Attorney