**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DAVID KUBIAK, JASON CROWLING and
JOSEPH KEATING, Individually, and on
Behalf of All Other Similarly Situated
Employees,

                    Plaintiffs,

vs.                                                        Case No. 3:12-cv-1306-J-34JRK

S.W. COWBOY, INC., A Florida Corporation
d/b/a Saltwater Cowboys, et al.,

                    Defendants.

_____

**<u>ORDER</u>**

        Plaintiffs in this case are seeking to recover unpaid minimum wages, pursuant to the

Fair Labor Standards Act, 29 U.S.C. § 201 et seq, ("FLSA"), the Florida Constitution, Article

X, Section 24, and Florida's Minimum Wage Act, Fla. Stat. § 448.110 ("FMWA").  The matter

is before the Court on Plaintiffs' Amended and Restated Motion for Declaration of a Class

Action as to Minimum Wage Claims Pursuant to Rule 23(B)(3); Motion to Conditionally Certify

a Collective Action Pursuant to 29 U.S.C. § 216(B) and Motion for Equitable Tolling of the

Statute of Limitations (Doc. 98; Motion).  Defendants have responded in opposition to the

Motion, (Doc. 100; Response), and both parties have submitted evidence in support of their

respective positions.  (See Docs. 98-1-98-27; 100-1-100-4; 101-115, 117, 120, 121, 122).

In the instant Motion, Plaintiffs request conditional class certification and authorization to

send notice to potential class members of the opportunity to "opt-in" to this case as a

collective action pursuant to the FLSA, as well as certification of a class under Rule 23, Federal Rules of Civil Procedure (Rule(s)), to pursue state law minimum wage claims.

## I.   **Background**[1]

This putative class and collective action is brought by three former restaurant servers ("Plaintiffs") against two St. Augustine, Florida restaurants, and six individuals, whom Plaintiffs allege are corporate owners of the two restaurants (collectively "Defendants"). (Doc. 79; 3d Am. Complaint ¶¶ 22-70).[2]  Plaintiffs allege that Defendants violated the FLSA and the Florida Constitution, Art. 10, § 24 as well as the FMWA, by not paying servers in their restaurants the required minimum wage.  See generally 3d Am. Complaint.  Plaintiffs contend

---

[1]   The Third Amended Complaint is the operative complaint in this action.  See e.g. Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982).

[2]   The named Plaintiffs, all of whom worked at the Saltwater Cowboys and Creekside Dinery restaurants, are: David Kubiak ("Kubiak"), who worked as a server from March 2008 through April 2012, 3d Am. Complaint ¶¶ 22-27; Joseph Keating ("Keating"), who worked as a server from February 2011 through January 2013, id. ¶¶ 28-36; and Jason Crowling ("Crowling"), who worked as a server from April 2008 through January 17, 2013, id. ¶¶ 37-45 (collectively "Plaintiffs").  The six FLSA "opt-in" plaintiffs are servers Steven Patterson, Matthew Dillon, William Jeffrey Little, Jose Farinos, Michael Hoolahan, and Richard Harvey.  (Docs. 3, 5, 6, 12, 16, 54, 57, 74).  Under the FLSA, plaintiffs who "opt-in," or consent to join an action, join the action as a whole.  Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003).  Additionally, although the opt-in Plaintiffs submitted their consents to join prior to the Plaintiffs' filing of the Third Amended Complaint, the consents are broad enough to cover claims subsequently added.  Id. at 1297-98.

The Defendants are: S.W. Cowboy, Inc. ("Saltwater Cowboys"), a Florida corporation operating under the trade name Saltwater Cowboys, 3d Am. Complaint ¶¶ 46, 47; (Doc. 86; Answer ¶¶ 46, 47); Creekside Dinery, Inc., ("Creekside Dinery") a Florida corporation, 3d Am. Complaint ¶ 50, Answer ¶ 50; ("Restaurant Defendants"); and owners  Peter Lawlor ("Lawlor"), Scott Singleton ("Singleton"), William White ("White"), Terry Richardson ("Richardson"), Rochelle Drovillard ("Drovillard"), and Judy Wegner ("Wegner")("Owner Defendants")(collectively "Defendants").  3d Am. Complaint ¶¶ 52, 55, 58, 61, 64, 67; Answer ¶¶ 52, 55, 58, 61, 64, 67; see generally Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986)(an employer includes "'any person acting directly or indirectly in the interest of an employer in relation to an employee'" (quoting 29 U.S.C. § 203(d)); "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" (citation omitted)).  Plaintiffs allege that "Defendants, by way of common ownership, unified operation and common employment practices, operate a common enterprise consisting mainly of Saltwater Cowboys and Creekside Dinery," and that servers worked shifts at both restaurants. 3d Am. Complaint ¶ 70.

that the Defendants had a policy and practice of taking a tip credit on servers' salaries while requiring them to contribute a portion of their tips to a "tip pool." Defendants then distributed a portion of the pooled tip money to non-tipped kitchen staff, expediters[3] and kitchen managers ("Kitchen Tip Pool") to carry out the restaurants' incentive and disciplinary goals. Plaintiffs contend that such actions violate the requirements of the FLSA and the FMWA. In response, Defendants argue that they distributed tips to non-tipped kitchen workers and managers in accordance with a voluntary tip-pool agreement among servers, and that the Kitchen Tip Pool was in compliance with the law. See Response 1-2. The Court will address Plaintiffs' request for certification of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA, before turning to the question of class certification under Rule 23(a) and (b)(3), with respect to the alleged violations of the FMWA.[4]

---

[3]     Plaintiffs define "expediters" as "employees who were paid less than minimum wage performing the job of plate inspection and garnishment." 3d Am. Complaint at 6 & ¶ 88. Plaintiffs allege that expediters at Saltwater Cowboys and Creekside Dinery were paid a reduced minimum wage, but perform(ed) no customer service interaction." Id. ¶ 87.

[4]     "Hybrid class action suits under Rule 23 (for state law minimum wages) and 29 U.S.C. § 216(b) . . . may proceed without conflict." Bennett v. Hayes Robertson Grp., Inc., 880 F. Supp.2d 1270, 1276 (S.D. Fla. 2012)(citations omitted); see also e.g. Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245-50 (2d Cir. 2011)(court had supplemental jurisdiction over Rule 23 class action regarding state minimum wage law invalid tip-pooling claims where state law and FLSA actions "clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices" of restaurant, and "the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction"). As such, "'claims subject to certification under § 216(b) may appropriately be brought in the same lawsuit as claims subject to certification under Rule 23 where, . . . , the essential facts and issues regarding each set of claims are likely to be the same and proceedings are not likely to be rendered unduly burdensome by inclusion of both sets of claims.'" Id. at 1277(citation omitted). Here, the same alleged facts form the basis of Plaintiffs' claims brought pursuant to both the FLSA and the FMWA. Defendants do not dispute that this is a permissible hybrid action.

A.   **FLSA and FMWA "Tip Credit" Overview**[5]

The FLSA requires employers to pay employees a minimum hourly wage of $7.25 per hour.   29 U.S.C. § 206(a).   In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA.   Fla. Const. art. X, ¶ 24.[6]   As such, an employee's wage under both the FLSA and the FMWA may include the employee's tips.   29 U.S.C. § 203(m), if an employee is a "tipped employee," the employer may factor the employee's tips into the employee's wages).[7]   Thus, "an employer may pay an employee a cash wage below the minimum wage, so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a 'tip credit.'"   Rubio v. Fuji Sushi & Teppani, Inc., No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013)(citing 29 U.S.C. § 203(m)).

---

[5]   The FMWA also allows for a "tip credit." "The 'tip credit' allowed by Florida law is the same as that allowed by the FLSA, $3.02." Perez v. Palermo Seafood, Inc., 548 F. Supp.2d 1340, 1347 (S.D. Fla. 2008)(citing Fla. Const. art. 10, § 24(c)), aff'd 302 F. App'x 905 (11th Cir. 2008). This "tip credit" is deducted from the Florida minimum wage, which varies by year, to determine that cash wage reduction which must be made up by tips, or if not, by the employer. Id. As such, the "Florida law on 'tip credit' is the same as that of the FLSA." Id. at 1348 (citing Fla. Const. art. 10, § 24(c) and Fla. Stat. § 448.110). Thus, the discussion of "tip credit" law is the same for Plaintiffs' FLSA and FMWA claims.

[6]   The Florida Constitution establishes and guarantees a minimum wage in Florida, and grants the Florida Legislature the authority to establish appropriate measures for its implementation.   Fla. Const. art.X, ¶ 24; see also Hanna v. CFL Pizza, LLC, No. 6:11-cv-1837-Orl-22DAB, 2012 WL 515875, at *3 (M.D. Fla. Jan. 30, 2012), adopted, 2012 WL 513017 (M.D. Fla. Feb. 16, 2012).   The FMWA "provide[s] measures appropriate for the implementation of" art. X, § 24., and incorporates exemptions and restrictions set for in sections 213 and 214 of the FLSA.   Fla. Stat. 448.110(2) and (3).   Relevant here, section 448.110(3) of the FMWA provides that "employers shall pay employees a minimum wage . . . [adjusted annually] for all hours worked in Florida."   See Fla. Stat. § 448.110(3) and (4).   While similar, the FLSA and the FMWA are not identical.   For example, the FMWA provides for a longer statute of limitations than the FLSA; five years for willful violations and 4 years for all other violations.   See Hanna, 2012 WL 515875, at *3-4.

[7]   Pursuant to the FLSA, a "'[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."   29 U.S.C. § 203(t); 29 C.F.R. § 531.50(b).

In order for an employer to qualify for a "tip credit" under 29 U.S.C. § 203(m), the employer must establish that (1) the tip credit is claimed for qualified tipped employees; (2) the employees received proper notice of Section 203(m);[8] and (3) all tips received by the employees were retained by them, except when the employee participates in a valid tip pool with other customarily tipped employees. Cumbie v. Woody Woo, Inc., 596 F.3d 577, 580 (9th Cir. 2010); Garcia v. Koning Rest. Int'l. L.C., No. 12-CV-23629-HUCK, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013); Bennett v. Hayes Robertson Group, Inc., 880 F. Supp.2d 1270, 1278 (S.D. Fla. 2012); Perez v. Palermo Seafood, Inc., 548 F. Supp.2d 1340, 1347-48 (S.D. Fla. 2008), aff'd 302 F. App'x 905 (11th Cir. 2008); Pellon v. Bus. Representation Int'l, Inc., 528 F. Supp.2d 1306, 1310 (S.D. Fla. 2007). If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result. Garcia, 2013 WL 8150984, at *4 (internal quotations and citations omitted); see also Chung v. New Silver Palace Rest., Inc., 246 F. Supp.2d 220, 229 (S.D.N.Y. 2002)(employer must satisfy prerequisites "even if the employee received tips at least equivalent to the minimum wage").

As a general rule, a tip pool may include only customarily tipped employees. Rubio 2013 WL 230216, at *2 (citing 29 U.S.C. § 203(m)); see also Perez, 548 F.Supp.2d at 1347-48. As such, a valid tip pool generally does not include employees who do not customarily and regularly received [sic] tips, such as dishwashers, cooks, chefs, and janitors." U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped Employees Under the Fair Labor

---

[8]   To provide sufficient notice, the employer "must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations." Vancamper v. Rental World, Inc., No. 6:10-cv-209-Orl-19KRS, 2011 WL 1230805, at *6 (M.D. Fla. March 31, 2011)(internal quotation and citation omitted).

Standards Act (FLSA))" (http://www.dol.gov/whd/regs/compliance.whdfs15.pdf) ; see also

Bennett, 880 F. Supp.2d at 1278; Ash v. Sambodromo, 676 F. Supp.2d 1360, 1369 (S.D. Fla.

2009).  However, a tipped employee may voluntarily choose to share tips with an otherwise

ineligible employee so long as that tip-sharing is done without coercion by the employer.

> [I]t does not appear that the Congress, even in requiring as a
> general principle that tipped employees retain all their tips,
> intended to prevent tipped employees from deciding, free from
> any coercion whatever and outside of any formalized
> arrangement or as a condition of employment, what to do with
> their tips, including sharing them with whichever co-workers they
> please.

Roussell v. Brinker Int'l, Inc., 441 F. App'x 222, 230 (5th Cir. 2011)(quoting Dep't of Labor

Field   Operations   Handbook   §   30d04(c)(Dec.   9,   1988),   available   at

http://www.dol.gov/whd/FOH/FOH_Ch 30.pdf)); see generally Kilgore v. Outback Steakhouse

of Fla., Inc., 160 F.3d 294, 303 (6th Cir. 1998)(defining "voluntary tip pooling" as being

"'whereby the employer redistributes the tips to the employees upon some basis to which

they have mutually agreed among themselves'" (quoting 29 C.F.R. § 531.54 (1996)).

Plaintiffs' allegations that Defendants required them to participate in tip pooling,[9] where they

had to share their tips with non-tipped kitchen staff employees and managers, "goes to the

issue of whether [Defendants were] entitled to take a tip credit when determining the amount

of wages that [they were] required to directly pay Plaintiffs."  Steiner-Out v. Lone Palm Golf

Club, LLC, No. 8:10-cv-2248-T-24TBM, 2010 WL 4366299, at *3 (M.D. Fla. Oct. 28, 2010).

---

[9]   Defendants acknowledge that the FLSA prohibits them from requiring servers to share tips with non-tipped kitchen employees.  Response at 2-3.

**B.**     **Allegations of the Third Amended Complaint and Defendants' Answer**

This litigation arises out of what Plaintiffs allege was a policy implemented "interchangeably" at Defendants' two restaurants, Saltwater Cowboys and Creekside Dinery, in which, for a five year period preceding the filing of this lawsuit, Defendants availed themselves of the FLSA's tip credit, paying Plaintiffs and similarly situated class members a wage that is less than the required Minimum Wage, and at the same time improperly required the employees to share a portion of their tips ("a.k.a. 'tip-out')" with Kitchen Staff, including cooks, dishwashers, food preparers, and expediters, as well as "back of house" managers ("BOH" managers), none of whom customarily or regularly receive tips.  3d Am. Complaint ¶¶ 24, 25, 30, 31, 39, 40, 72-75, 81, 84.  Plaintiffs allege that Defendants, collectively and individually, required servers to participate in this invalid tip pool

> (i) whereby servers must contribute a portion of their tips to employees who do not regularly and customarily receive tips; (ii) whereby back-of house managers participate in the tip pool; and (iii) whereby Defendants converted and misappropriated the tip pool funds and directed the funds to be used as incentive payments for the back of house staff.

Id. ¶ 9.  Plaintiffs further allege that "Without Servers' knowledge or consent, Defendants exercised control and dominion over the tip pool funds and directed the tip pool funds to be used as incentive payments (and to be withheld as disciplinary measures) to the Kitchen Staff."  Id. ¶¶ 26, 32, 41; see also id. ¶ 76.  According to Plaintiffs, "servers were required to complete tip-out forms (a.k.a. Tip Allocation Sheets) pursuant to formulas indicating the amount of tips they were required to share with Kitchen Staff and Expediters."  Id. ¶ 77.  The Defendants' front house managers "checked and corrected the Tip Allocation Sheets" each night, and "collected the tip pool money allocated to the Kitchen Staff."  Id. ¶ 78.  Defendants

distributed the tip pool money to the Kitchen Staff every two weeks.  Id. ¶ 79.  Plaintiffs also

allege that they "never received documentation or a proper explanation regarding tip pool and

tip credit disbursement."  Id. ¶ 83.  Plaintiffs contend that because they, and "other similarly

situated employees, have not been permitted to retain all of their tips and have been forced

to participate in an invalid tip pool arrangement, the Defendants have not been eligible to

claim the 'tip credit' against the minimum wage and thus is [sic] obligated to pay all

employees the full minimum wage."  Id. ¶ 90; see also id. ¶¶ 101, 106, 111, 117, 123, 129.

In their Third Amended Complaint, Plaintiffs assert eight claims. In Count I, Plaintiffs

allege that Defendants violated the FLSA by requiring servers to contribute to the Kitchen Tip

Pool, which included ineligible kitchen staff and expediters, taking a "tip credit," and failing

to pay Plaintiff servers minimum wage.  3d Am. Complaint ¶¶ 98-102.  In Count II, Plaintiffs

allege Defendants violated the FLSA by wrongfully retaining the servers' tips, by including

BOH managers in the Kitchen Tip Pool.  Id. ¶¶ 103-107.  In Count III, Plaintiffs allege

Defendants violated the FLSA by improperly exercising control over the Kitchen Tip Pool, and

by directing kitchen managers to distribute the tip pool funds to kitchen staff as incentive and

discipline.  Id. ¶¶ 108-112.  In Counts IV-VI, Plaintiffs bring the same claims, as violations of

the FMWA, and seek certification of a class pursuant to Rule 23, on behalf of

> All persons who have worked as a server at any Saltwater
> Cowboys and/or Creekside Dinery, locations between November
> 20, 2007 and the date of final judgment in this matter.

See id. ¶¶ 92-97, and Counts IV-VI. In Count IV, Plaintiffs allege that "Defendants' conduct

in failing to pay all of its employees the appropriate minimum wage and inappropriate

claiming of the 'tip credit,' . . . violates Article X, Section 24(c), Florida Constitution and FLSA,

29 U.S.C. § 201, et seq. and particularly § 206 and § 216 as incorporated pursuant to Art. X § 24(b)." Id. ¶¶ 113-118.[10]  In Count V, Plaintiffs allege that Defendants violated the FMWA because they "wrongfully retained tips by the inclusion of the BOH Managers in the tip pool." Id. ¶¶119-124.   And in Count VI, Plaintiffs allege Defendants violated the FMWA by "exercising dominion and control over the tip pool and directing the distribution of the tip pool funds in accord with its [sic] own incentive and disciplinary policies." Id. ¶¶ 125-130. Additionally, in Counts VII and VIII, individual Plaintiffs Jason Crowling and Joseph Keating allege that the Restaurant Defendants violated the Florida Private Whistleblower Protection Act, Fla. Stat. § 448.102(2), id. ¶¶ 131-138 (Count VII), and the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).  Id. ¶¶ 139-146. (Count VIII).

Defendants deny Plaintiffs' substantive allegations explaining that "[a]ll tipped employees . . . received full minimum wage for all hours worked as defined by 29 U.S.C. § 203(m)." (See generally Doc. 86; Answer).  However, Defendants do admit certain facts. Defendants confirm that the Individual Plaintiffs were employed as servers, and that they shared tips with kitchen staff, including the kitchen manager.  Answer ¶¶ 22, 24, 25, 28, 30, 31, 36, 37, 39, 41, 42, 48.  Additionally, Defendants admit that BOH managers "received distributions" from the Kitchen Tip Pool, see id. ¶ 81, and that "kitchen managers withheld tips from some kitchen employees for disciplinary reasons." See id. ¶¶ 26, 32, 41; see also id.

---

[10]  Plaintiffs allege that the "claim is brought on behalf of a class of similarly situated individuals, pursuant to Fla. R. Civ. P. Rule 1.220." 3d Am. Complaint ¶ 118; see also id., ¶ 124. Subsection (e) of Article 10, Section 24 of the Florida Constitution allows actions under Section 24 to be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.  Fla. Const. art. X, § 24(e). However, inasmuch as this case is proceeding in federal court, the Court will analyze the Motion under Rule 23, Federal Rules of Civil Procedure. See Shady Grove Orthopedic Assocs., 559 U.S. 393, 400, 406, 416 (2010); Bates v. Smuggler's Enter., Inc., No. 2:10-cv-136-FtM-29DNF, 2010 WL 3293347, at *4 (M.D. Fla. Aug. 19, 2010).

¶ 81.  Additionally, Defendants contend that the servers shared their tips "through a voluntary tip pool," id. ¶¶ 26, 32, 41; that "servers submitted their voluntary contributions to the kitchen tip pool to a closing manager," id. ¶ 78; and that "kitchen tips were distributed on a weekly or bi-weekly basis."  Id. ¶ 79.

### C.    Evidence Submitted

Plaintiffs have submitted the declarations of 10 servers;[11] deposition excerpts from the Saltwater Cowboys and Creekside Dinery's corporate representative, two BOH managers, two restaurant managers on duty, and two servers;[12] and the affidavit of William White, an Owner Defendant.[13]  Plaintiffs also have filed documentary evidence, including copies of tip pool records, tip allocation forms, and cumulative summaries.[14]

In the declarations submitted by Plaintiffs, the servers state that they were paid less than minimum wage, and that at both Saltwater Cowboys and Creekside Dinery restaurants, Defendants operated a tip-pooling policy requiring servers to pool tips with cooks, chefs, dishwashers and expediters.  The servers state that Defendants required them to participate in the "mandatory" Kitchen Tip Pool, and that they were "never informed that any part or

---

[11]  See  (Doc. 98-17; Crowling Decl.); (Doc. 98-18; Keating Decl.); (Doc. 98-19; Kubiak Decl.); (Doc. 98-20; Little Decl.); (Doc. 98-21; Farinos Decl.); (Doc. 98-22; Dillon Decl.); (Doc. 98-23; Patterson Decl.); (Doc. 98-24; Weller Decl.); (Doc. 98-25; Biggs Decl.); (Doc. 98-26; Ranck Decl.);

[12]  See (Doc. 98-5; Saltwater Cowboys Corporate Representative Dep. Excerpts); (Doc. 98-6; Creekside Dinery Corporate Representative Dep. Excerpts);(Doc. 98-10; Barnes Turner Dep. Excerpt); (Doc. 98-11; Jackson Dep. Excerpt); (Doc. 98-12; Pannone Dep. Excerpt); (Doc. 98-13; Bryant Dep. Excerpt); (Doc. 98-16; Hoolahan Dep. Excerpt); (Doc. 98-27; Wolfe Dep. Excerpt).

[13]  See (Doc. 98-9; White Aff.).

[14]  See (Doc. 98-7; Saltwater Cowboys Tip Allocation Form Samples); (Doc. 98-8; Creekside Dinery Tip Allocation Samples); (Doc. 98-14; Tip Pool Check-out Photo); (Doc. 98-15; Jan. 17, 2013 Meeting Note); (Docs. 98-1, 98-2; App. A, Composite Findings for Creekside Dinery); (Docs. 98-3, 98-4; App. B, Composite Findings for Saltwater Cowboys).

portion of the tip distribution was voluntary." They explain that at the end of each shift, they were required to print out a Summary of Sales Report and fill out a tip close-out sheet, requiring servers to share tips, pursuant to a formula enforced by the manager on duty, with the bartender, busser, kitchen staff, and expediter.[15]  The BOH managers occasionally withheld tips from kitchen staff as discipline for absences, without the permission of the servers.  The servers also state that they were trained on how to calculate the required tip distribution, and that Defendants' managers corrected a server's calculation if the server made a mistake.  The servers state that based on the fact that each restaurant has more than 20 servers at any given time, they believe that more than 150 employees were "required" or "forced" to participate in Defendants' Kitchen Tip Pool.[16]  Additionally, the servers assert that they "believe," "know," or are "aware" of other employees who would like to join the lawsuit if assured they would not be subjected to retaliation.  Crowling Decl. ¶ 58; Keating Decl ¶ 54; Kubiak Decl. ¶ 24; Little Decl. ¶ 23; Farinos Decl. ¶ 23; Dillon Decl. ¶ 20; Patterson Decl. ¶ 20; Weller Decl. ¶ 19; Biggs Decl. ¶ 19; Ranck Decl. ¶ 19.  But they identify none of these individuals by name.

---

[15]  Plaintiffs assert that the tip-pool distribution formula was as follows: bartenders and bussers received 2.65% of each Server's net sales; kitchen staff received $0.20 per entrée; and expediters were tipped-out 10% of each Server's tips.

[16]  Plaintiffs list 125 servers who contributed tips to kitchen staff on their Composite Findings for Creekside Dinery, (Doc. 98-1; App. A), and 80 on their Composite Findings for Saltwater Cowboys. (Doc. 98-3; App. B).  Plaintiffs did not break out how many servers' names appeared on both lists.

Defendants submit affidavits from 55 current and former servers which paint a different picture altogether.[17]   These servers uniformly state that they were trained by other servers, and that the tip pool created for the bussers and bartenders was mandatory, but that the Kitchen Tip Pool was voluntary, and that servers could contribute varying amounts or nothing at all to the Kitchen Tip Pool.  For example, one server states:

> 7.     Each server then completed a tip allocation form.  When completing the tip allocation form, I would handwrite my total cash sales, total credit card sales, total credit card tips, and required contribution to the tip pool for bussers and bartenders on the form.  Those numbers were copied off my summary sales report.  I could not modify these totals, including the contribution to the tip pool for bussers and bartenders.

> 8.     I also used the tip allocation form to report my total cash tips for the evening and to report the amount of money I wanted

---

[17]   The servers' affidavits are: (Doc 100-2 at 1; Alexander Aff.); (Doc. 100-2 at 4; Arnold Aff.); (Doc. 100-2 at 9; Barnes-Turner Aff. (former server and currently restaurant assistant manager)); (Doc.100-2 at 10; Bledsoe Aff.); (Doc. 100-2 at 12; B. Brown Aff.); (Doc 100-2 at 15; Burwell Aff.); (Doc. 100-2 at 17; A. Caracaba Aff.); (Doc. 100-2 at 19; Carey Caracaba Aff. (fomer server and manager)); (Doc. 100-2 at 23; Cucinella Aff.); (Doc. 100-2 at 26; Davis Aff.); (Doc. 100-2 at 29; Dixon Aff.); (Doc. 100-2 at 31; C. Downs Aff.); (Doc. 100-2 at 34; K. Downs Aff.); (Doc. 100-2 at 37; Hernandez Aff.); (Doc. 100-2 at 40; G. Hinkle Aff.); (Doc. 100-2 at 43; S. Hinkle Aff.); (Doc. 100-2 at 46; Hogan Aff.); (Doc. 100-2 at 49; Houston Aff.); (Doc. 100-2 at 52; Johnston Aff.); (Doc. 100-2 at 55 and 100-2 at 115; Lawrence Aff.); (Doc. 100-2 at 58; Madubuile Aff.); (Doc. 100-2 at 60; Marcum Aff.); (Doc. 100-2 at 63; McGraw Aff.); (Doc. 100-2 at 65; Miller Aff.); (Doc. 100-2 at 68; Moore Aff.); (Doc. 100-2 at 70; Norman Aff.); (Doc. 100-2 at 72; E. Olsson Aff.); (Doc. 100-2 at 75; H. Olsson Aff.); (Doc. 100-2 at 78; Oquendo Aff.); (Doc. 100-2 at 81; Pamer Aff.); (Doc. 100-2 at 84; Robertson Aff.); (Doc. 100-2 at 87; Rhoden Aff.); (Doc. 100-2 at 90; Rossback Aff.); (Doc. 100-2 at 93; Smith Aff.); (Doc. 100-2 at 96; Thompson Aff.); (Doc. 100-2 at 99; Thorne Aff.); (Doc. 100-2- at 101; Travis Aff.); (Doc. 100-2 at 104; Weilland Aff.); (Doc. 100-2 at 106; Williams Aff.); (Doc. 100-2 at 109; Austin Aff.); (Doc. 100-2 at 112; L. Millecan Aff.); (Doc. 100-2 at 117; K. Millecan Aff.); (Doc. 115-1; Tatman Aff.); (Doc. 115-2; Doucette Aff.); (Doc. 117-1; D. Brown Aff.); (Doc. 117-2; Landry Aff.); (Doc. 117-3; Reynolds Aff.); (Doc. 117-4; Solan Aff.); (Doc. 121-1; Goyette Aff.); (Doc. 121-2; Marlow Aff.); (Doc. 120-1; Casey Carcaba Aff. (former server and restaurant manager)); (Doc. 120-2 (J. Olsson Aff. (former server and restaurant manager)); (Doc. 122-1; Burkley Aff.); (Doc. 122-2; Bielman Aff.); (Doc. 122-3; Kale Aff.); see also (Doc. 117-5; Webster Aff. (former assistant restaurant manager)).

It appears that of these 55 servers, 24 are currently employed by Defendants; 10 were employed by Defendants prior to November 7, 2007, the start date for which Plaintiffs seek Rule 23 certification; 13 were employed before November 30, 2009, the Plaintiffs' requested start date for the FLSA collective action; and the employment dates of four servers are not clear from their affidavits.

> to contribute to the tip pool for the kitchen employees and expediters. I am required to report my cash tips.
>
> 9.      From the time I started, I was always aware that tips to the kitchen staff and expediters were voluntary. I specifically recall that [server Jonathan] Murphy told me that although it was customary to tip $0.20 per meal and the expediters 10% of my tips, it was completely up to me if I chose to tip them. I was also aware that I could give the kitchen and expediters more or less than the customary amount or nothing at all and recall times where I did tip more or less based on the performance of the kitchen or the expediters.

Pamer Aff. ¶¶ 7-9 (worked as a server from 2002-2012). Another server states that "During my training, my trainers including [server] Farinos indicated that $0.20 per dinner was the customary practice for tipping the kitchen. I learned from co-workers that I could tip more or less than this amount or nothing at all as tips to the kitchen pool, as well as the expediters, were voluntary." Thompson Aff. ¶ 9 (current server). Two servers state that they specifically declined Plaintiffs' request that they opt in to this lawsuit as Plaintiffs. Lawrence Aff. ¶ 12; Marcum Aff. ¶ 8.[18]

The six Defendant restaurant owners submitted identical affidavits. ("Owners' Affidavits").[19] The Owner Defendants state that:

---

[18]   The Defendants also submit the depositions of 10 servers, including Plaintiffs and opt-in plaintiffs: (Doc. 101; Crowling Dep. (plaintiff)); (Doc. 102; Dillon Dep. (opt-in plaintiff)); (Doc. 103; Farinos-Bell Dep. (opt-in plaintiff)); (Doc. 104; Harvey Dep. (opt-in plaintiff)); (Doc. 105; Hoolahan Dep. (opt-in plaintiff)); (Doc. 106; Keating Dep. (plaintiff)); (Doc. 107; Kubiak Dep. (plaintiff)); (Doc. 108; Little Dep. (opt-in plaintiff)); (Doc. 109; Patterson Dep. (opt-in plaintiff)); (Doc. 114; Marcum Dep. (server)).

[19]   The Owners' Affidavits are: (Doc. 100-3 at 1; Adams-Smith Aff.); (Doc. 100-3 at 4; Drouillard Aff.); (Doc. 100-3 at 7; Lawlor Aff.); (Doc. 100-3 at 10; Richardson Aff.); (Doc. 100-3 at 13; Singleton Aff.); (Doc. 100-3 at 26; White Aff.).

Defendants have filed the depositions of Owner Defendants Scott Singleton, as corporate representative of Saltwater Cowboys and Creekside Dinery (Docs. 110, 111; Saltwater or Creekside Corp. Rep. Deps.); as well as Singleton's individual deposition. (Doc. 112; Singleton Dep.). Additionally, Defendants submit the deposition of one restaurant manager. (Doc. 113; Bryant Dep.).

4.      In 1987, the wait staff at Fiddlers Green, a restaurant related to Saltwater Cowboys that has since closed, decided that they wanted to share tips with kitchen workers through a voluntary tip pool.  The wait staff informed the owners that they wanted to create this tip pool because they wanted to recognize the vital role the kitchen employees played . . . .

5.      While our servers are assigned to one particular restaurant, we often have servers move between restaurants. This included Fiddlers Green.  Because the same pool of servers worked at each restaurant, we instituted the voluntary kitchen tip pool at all locations.

6.      We agreed with the servers' decision to create a tip pool for the kitchen, but we informed the staff that contribution to this tip pool had to be on a voluntary basis. . . .

Owners' Affidavits ¶¶ 4, 5, 6.  They also state that the servers "can contribute any amount they want to the kitchen tip pool, . . . they are not required to contribute anything," and that the owners did "not place any pressure on employees to contribute to the kitchen tip pool." Id. ¶¶ 8, 10.  Several of the former servers remember the creation of the kitchen tip pool and refer to the ballots they signed in 1987.  See B. Brown Aff. ¶¶ 3, 4, 5; Hinkle Aff. ¶¶ 3, 4; Hogan Aff. ¶ 4; Thorne Aff. ¶ 3; J. Olsson Aff. ¶ 3, 4; see also (Doc. 100-4; (25 signed ballots)).  The record before the Court suggests that the Defendants' "tip-out system" was identical at both Saltwater Cowboys and Creekside Dinery during the relevant timeframe. Saltwater Corp. Rep. Dep. at 154.

## II.    **Discussion**

### A.    **FLSA Collective Action: Conditional Certification (Counts I, II, III)**

Plaintiffs seek a conditional certification pursuant to 29 U.S.C. § 216(b), and authorization to send notice of this lawsuit to other individuals who worked as servers at

Saltwater Cowboys and Creekside restaurants "within the last three (3) years," and who were participants in Defendants' Kitchen Tip Pool.  Motion at 27.

### 1.   <u>Applicable Law</u>

In order to support enforcement of the provisions of the FLSA, § 216(b) permits an employee to bring an action against his or her employer for FLSA violations on behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).  Section 216(b) contains an "opt-in" provision that requires all similarly situated employees to consent in writing before becoming party plaintiffs.  <u>Id.</u>; <u>see also</u> <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1258 (11th Cir. 2008).  The Court has the authority to issue an order requiring notice to similarly situated employees in order to facilitate the opt-in process.  <u>See</u> <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1095-97 (11th Cir. 1996).[20]  For notice to issue, the plaintiff must show that "there are other employees of the . . . employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  <u>Dybach v. State of Fla. Dep't of Corr.</u>, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Congress' purpose in authorizing § 216(b) collective actions "was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."  <u>Prickett v. DeKalb County</u>, 349 F.3d 1294, 1297 (11th Cir. 2003).[21]  The decision to conditionally certify a collective FLSA action lies within the

---

[20]     Although <u>Grayson</u> addressed collective actions under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 <u>et seq.</u>, "that statute incorporates the FLSA's collective action mechanism," and thus, the analysis in <u>Grayson</u> "'applies in both contexts.'" <u>See</u> <u>Morgan</u>, 551 F.3d at 1259 n.37; <u>see also</u> <u>Anderson v. Cagle's, Inc.</u>, 488 F.3d 945, 952-53 & n.5 (11th Cir. 2007).

[21]     A collective action under the FLSA is different from a class action under Rule 23.  <u>See</u> <u>Grayson</u>, 79 F.3d at 1096 n.12 ("[I]t is clear that the requirements for pursuing a § 216(b) class action

(continued...)

discretion of the Court.  See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217, 1219 (11th Cir. 2001).

The Eleventh Circuit Court of Appeals has "suggested that district courts deciding whether to certify a collective action [under § 216(b)] engage in a two-stage analysis . . . ." Anderson v. Cagle's, Inc., 488 F.3d 945, 952 (11th Cir. 2007)(citing Hipp, 252 F.3d at 1217-19); see also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).[22]

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to

_____

[21](...continued)
are independent of, and unrelated to, the requirements for class action under Rule 23 . . . ."). Unlike traditional class actions in federal court, potential FLSA class members must "opt-in" to the lawsuit by filing a "consent in writing to become such a party" with the court where the suit is pending. 29 U.S.C. § 216(b).

> In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out. . . .  By contrast, a putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action.

Hipp, 252 F.3d at 1216 (internal citations omitted).  It follows, then that a plaintiff's burden of establishing that other employees are "similarly situated" is less stringent than for Rule 20 joinder, or certification of a class action under Rule 23.  Grayson, 79 F.3d at 1096.  A plaintiff need only demonstrate that his or her position is "similar, not identical" to the positions held by the potential plaintiffs.  Id.

[22]   Although suggested, the two-stage approach is not required, and the district court has discretion in considering class certification.  See Hipp, 252 F.3d at 1219.

"opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Cameron-Grant, 347 F.3d 1240, 1243 n.2 (quoting Hipp, 252 F.3d at 1218).[23] In considering a motion to conditionally certify a class for notification purposes only in a wage and hour dispute, the Court does not review the underlying merits of the case. Pares v. Kendall Lakes Auto., LLC, No. 13-20317-CIV, 2013 WL 3279803, at *3 (S.D. Fla. June 27, 2013); Kerce v. W. Telemarketing Corp., 575 F. Supp.2d 1354, 1358 (S.D. Ga. 2008); see also Lemming v. Security Forces, Inc., No. 8:10-cv-1469-T-26AEP, 2010 WL 5058532, at *2 (M.D. Fla. Dec. 6, 2010)(court considers limited discovery submitted through affidavits and attachments, but in doing so, court does not weigh the evidence).

Plaintiffs propose that this matter is more appropriately determined at the second stage level, because significant discovery has taken place. Motion at 29. Defendants agree that "[i]n ruling on a certification issue after the close of discovery, the court should base its ultimate determination on the evidence in the record." Response at 18. Indeed, when

---

[23]   The two-stage approach endorsed in Hipp was borrowed from the Fifth Circuit's discussion in Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995). See Hipp, 252 F.3d at 1218; see also Anderson, 488 F.3d at 952-53.  As recognized in Anderson, Mooney has since been overruled in part on other grounds, but the two-stage approach to class certification under § 216(b) remains applicable. See Anderson, 488 F.3d at 952-53 & n. 6.

discovery has already occurred, a "more searching inquiry may be appropriate at the first stage because both sides have had a chance to develop the factual record," and the "first and second stages may be collapsed to some degree." Simpkins v. Pulte Home Corp., No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *5 (M.D. Fla. Aug. 21, 2008); see also Devries v. Morgan Stanley & Co. LLC, No. 12-81223-CIV, 2014 WL 505157, at *4 (S.D. Fla. Feb. 7, 2014)(court reviews pleadings, declarations, and deposition testimony in determining conditional certification).

## 2.   Discussion

In determining whether conditional certification is proper, the Court must ascertain 1) whether there are other employees who desire to "opt-in," and 2) whether these other employees are "similarly situated" with respect to their job requirements and pay provisions. Morgan, 551 F.3d at 1259. As such, Plaintiffs have the burden of demonstrating "a reasonable basis" for the assertion that there are other employees who desire to opt-in. Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983); Ramos v. Burger King Corp., No. 8:11-cv-642-T-30MAP, 2011 WL 4634024, at *1 (M.D. Fla. Oct. 6, 2011). This burden is not onerous, Alequin v. Darden Rest., Inc., No. 12-61742-CIV, 2013 WL 3939373, at *4 (S.D. Fla. July 12, 2013), and "[t]he number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four." Lemming, 2010 WL 5058532, at *1. "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. March 23, 2006)(citing Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp.2d 1272,

1277 (M.D. Ala. 2004)).  In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations.  Id.  Instead, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Grayson, 79 F.3d at 1097 (internal quotations and citation omitted).  Indeed, a "plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action].  The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself."  Guerra v. Big Johnson Concrete Pumping, Inc., No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006).  Moreover, "[c]ertification of a collective action and notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit."  Rodgers, 2006 WL 752831, at *3 (emphasis in original).

Plaintiffs argue that to date, three server Plaintiffs, plus six server opt-in Plaintiffs have joined this suit, and three additional servers have submitted declarations in support of the Plaintiffs (but who have not opted-in as plaintiffs).  Motion at 2.  They contend that they have identified more than 200 servers at Saltwater Cowboys and Creekside Dinery restaurants who have contributed to the Kitchen Tip Pool.  Id. at 3.  Defendants respond that Plaintiffs' opt-in consent forms "make clear that no opt-in Plaintiffs have joined since August 2013." Response at 15-16.  Defendants argue that Plaintiffs "were unable in their depositions to identify a single server, other than those already in the action, interested in opting into this matter as a plaintiff," id. at 16, and note that at least one server specifically chose not to join the action because his participation in the Kitchen Tip Pool was voluntary.  Id. at 17 (citing Marcum Dep. ¶¶ 8-9).  Defendants argue that Plaintiffs' unsupported assertion that "like-

minded class members exist" is not sufficient to justify collective certification and notice to prospective class members, and urge that notice cannot serve as a "Court-sponsored fishing expedition to determine whether there are other employees who desire to join as opt-in plaintiffs." Id.

A number of courts have found a plaintiff to have carried the burden based on the existence of only a few other workers. See Alequin, 2013 WL 3939373, at *4; Bennett, 880 F. Supp.2d at 1283.   Indeed, as stated by the court in Pares, supra, where the plaintiff submitted the affidavits of two other individuals who desired to join the FLSA collective action, "the affidavits from the two other employees shows that at least two other co-workers desire to join the suit, 'thereby raising [Plaintiffs'] contention beyond one of pure speculation.'" Pares, 2013 WL 3279803, at 5 (quoting Guerra, 2006 WL 2290512, at *4 (the affidavits of plaintiff and one additional employee raise plaintiff's contention that others desire to join "beyond speculation;" "it cannot be said that there is no direct evidence of any interest in the instant lawsuit")).   Examples of cases where a small number of opt-in plaintiffs satisfied the threshold of interest required for a collective action are numerous.[24]

---

[24]   See Gonzalez v. TZ Ins.Solutions, LLC, No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. March 26, 2014)("Although there is no magic number requirement for the notice stage, the presence of five opt-in plaintiffs, each having filed a declaration describing their working conditions and their desire to join in this suit, satisfies the Court that others desire to join in the action"); Rojas v. Garda CL SE, Inc., __F.R.D. __, 2013 WL 6834657, at *5 (S.D. Fla. Dec. 23, 2013)(where 14 employees indicated their desire to join the litigation by filing notices, and plaintiff asserted that he had personal knowledge that others were interested, plaintiff provided sufficient evidence to establish a reasonable basis for concluding that other drivers were interested in opting in)(collecting cases); Sutton v. Premium Car Wash, No. 6:12-cv-1254-Orl-28TBS, 2013 WL 2474416, at *2 (M.D. Fla. June 10, 2013)(approving conditional certification based on plaintiff and five consents to join); Stuven v. Texas de Brazil (Tampa) Corp., No. 8:12-CV-1283-T-24TGW, 2013 WL 610651, at *3 (M.D. Fla. Feb. 19, 2013)(declarations filed by two plaintiffs in which plaintiffs state they believe others will want to join the lawsuit, plus three opt-in plaintiffs, satisfy the sufficient-interest requirement); Bobbitt v. Broadband Interactive, Inc., No. 8:11-cv-2855-T-24MAP, 2012 WL 1898636, at *4 (M.D. Fla. May 23, 2012)(plaintiffs have shown actual interest by six other employees that filed notices of consent to join; court not persuaded by the 17 declarations
(continued...)

Conversely, "'[f]ederal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where . . . the plaintiff attempts to conditionally certify a broad group based only on the conclusory and unsupported allegations of a few employees.'" Alvarez v. Sun Commodities, Inc., No. 12-60398-CIV, 2012 WL 2344577, at *2 n.3 (S.D. Fla. June 20, 2012)(citation omitted); see also Simpkins, 2008 WL 3927275, at *2 (citing cases); Rappaport v. Embarq Mgmt. Co., No. 6:07-cv-468-Orl-19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)(citing cases). By way of example, in Manzi v. Hartman and Tyner, Inc., No. 11-60426, 2011 WL 2672343, at *2 (S.D. Fla. July 8, 2011), where the plaintiff sought certification of an FLSA collective action on behalf of himself and other poker dealers for whom the employer took a "tip credit" without complying with the "tip credit" requirements of the FLSA, the court held that the plaintiff failed to satisfy his burden of showing that other similarly situated employees wished to join the litigation. Id. at *2. There, the plaintiff submitted three affidavits of other employees who potentially would opt-in. Id. The court observed that

---

[24](...continued)

filed by defendant employer by employees who say they do not wish to join the litigation saying those affidavits are not sufficient "to overcome the interest by other [similarly situated employees] in joining this lawsuit"); Espanol v. Avis Budget Rental, LLC, No. 8:10-cv-944, 2011 WL 4947787, at *2 (M.D. Fla. Oct. 18, 2011)(granting certification where "[a]t least eight individuals have filed notices of consent to opt-in"); Reyes v. AT&T Corp., 801 F. Supp.2d 1350, 1353, 1356 (S.D. Fla. 2011)(affidavits from five named plaintiffs and consent forms from seven employees sufficient to conditionally certify a class); Mancuso v. Fla. Metro. Univ., Inc., No. 09-61984-CIV, 2010 WL 2572412, at *2 (S.D. Fla. June 24, 2010)(plaintiff's submission of own affidavit and affidavit of three other opt-in employees, plus an additional opt in plaintiff sufficient to demonstrate that others desire to join the action); Gonzalez v. Go Relax Travel, LLC, No. 6:09-cv-573-Orl-28KRS, 2009 WL 3817119, at *3-4 (M.D. Fla. Nov. 13, 2009)(affidavits by plaintiff and two other sales agents averring that agents were forced to work over forty hours per week and that there are more than 100 sales agents in defendant's office, and stating that they were aware of others who have complained and have confided they are interested in joining the lawsuit sufficient for conditional certification); Kerce v. W. Telemarketing Corp., 575 F. Supp.2d 1354, 1357, 1365 (S.D. Ga. 2008)(where plaintiff alleges that "thousands" of other home agents were mischaracterized affecting their hours, nineteen home agent opt-ins were sufficient to establish "sufficient interest" in the lawsuit, as compared to 16 declarations of home agents submitted by defendant indicating no interest in pursuing the litigation).

> neither Plaintiff nor his affiants have suggested that there are any additional employees, other than themselves, who desire to opt-in.  Plaintiff has not submitted any sworn testimony that he knows of any other poker dealers willing to join the suit, nor do any of the affidavits . . . declare knowledge of other potential plaintiffs.

Id. at *3.  The court concluded that "[e]ven after this case has been pending for almost five months, there is still no reason for the Court to believe that anyone else wishes to join this suit . . . ."  Id.  The case of David v. Associated Out-Door Clubs, Inc., No. 8:09-cv-1541-T-30MAP, 2010 WL 1730702 (M.D. Fla. April 27, 2010), is another poker dealer case in which the two named plaintiffs alleged that the defendant should not have been able to claim a tip credit because the poker dealers were required to share a portion of their tips with non-tipped employees.  2010 WL 1730702, at *1.  Two employees filed consents to join the lawsuit.  Id.  The court noted that all four individuals "filed identical affidavits, which claim that they know of others who 'expressed interest[ ] in the case, but they are too scared to join in the law suit [sic] because they still work for Defendant.'"  Id.  In denying conditional certification, the court observed that none of the four identified any other employee interested in joining, either in their affidavit or in deposition.  Id.[25]  Similarly, in Webber v. Coast Dental, P.A., No. 8:12-cv-1505-T-33AEP, 2013 WL 935772 (M.D. Fla. March 11, 2013), the court determined that Plaintiffs failed to make a sufficient showing that other dental hygienists in a potential class of 184 desired to opt into the class, based upon the submissions of the two plaintiffs and two additional hygienists.  The court observed that three of the hygienists had submitted affidavits representing that there were others who were interested in joining the lawsuit, but that none

---

[25]  Although denying conditional certification of a collective action, the court in David held that "to accommodate the two individuals who consented to join," the court would construe the motion to certify a collective action as a motion to join the two individuals as party plaintiffs, and grant that motion. 2010 WL 1730702, at *2.

have joined in more than six months when the latest hygienist joined the action.  Id. at *2.

"Months have transpired since the submission of these affidavits, and none of the individuals

mentioned, or anyone else for that matter, have filed a notice of consent to join."  Id.  The

court stated that "[c]onsidering the number of dental hygienists who would fall within the class

definition (184), the duration of this suit (8 months), and the paucity of individuals who have

joined in the litigation (4), the Court determines that Plaintiffs have failed to meet their burden

of providing sufficient evidence that other employees want to join this action."  Id. at *3.[26]

Plaintiffs' FLSA lawsuit has been pending since November 30, 2012, when Plaintiff

Kubiak filed the initial Complaint in this action.  The one-count Complaint alleged that the

Defendants' mandatory Kitchen Tip Pool, which required servers to share tips with kitchen

staff and expediters, violated the FLSA.  (Doc. 1; Complaint).  Kubiak brought the claim

---

[26]   There likewise exist a number of examples in addition to the cases cited above where courts declined to certify a collective FLSA action because of a lack of demonstrated interest by other employees. E.g. Chung v. Affordable Battery, Inc., No. 12-60612, 2012 WL 3759029, at *2 (S.D. Fla. Aug. 29, 2012)(plaintiff who offers no detail other than members of the class number "not less than fifteen" fails to provide sufficient evidence that other employees wish to opt-in);   Alvarez v. Sun Commodities, Inc., No. 12-60398-CIV, 2012 WL 2344577, at *2 (S.D. Fla. June 20, 2012)(plaintiff's conclusory allegation that 100 other laborers were affected by defendant's time clock irregularities, three consents-to-join (two of which were filed after the motion to certify was filed), and the conclusory assertion that "'other warehouse workers will join this case if they are told about it'" not sufficient to support conditional certification); Denson v. Architectural Coatings, Inc., No. 8:10-cv-1212-T-30TGW, 2011 WL 46122, at *2 (M.D. Fla. Jan. 6, 2011)(one named plaintiff and three "virtually identical" declarations of op-in plaintiffs which stated that they "believe," "expect," or "anticipate" that others would choose to join the lawsuit insufficient to establish that other similarly situated employees desire to opt in, and defendants filed declarations of four of plaintiff's co-workers indicating that they were not interested in joining the lawsuit); Robinson v. Dolgencorp, Inc., No. 5:06-cv-122-Oc-10GRJ, 2006 WL 3360944, at *5 (M.D. Fla. Nov. 13, 2006)(plaintiff's affidavit merely "suggesting" other customer service employees will join, plus the conclusory affidavit of two additional employees, compared to defendant's filing of 20 declarations of employees in various positions who state they have no desire to join the lawsuit, insufficient to demonstrate there are other similarly situated employees in the purported class of 58,000 nationwide (and 26,000 in Florida) who desire to opt-in to this litigation); White v. Kcpar, Inc., No. 6:05-cv-1317-Orl-22DAB, 2006 WL 1722348, at *2-3 (M.D. Fla. June 20, 2006)(plaintiff who filed three affidavits from fellow former cooks and was vague about the size of the putative collective class or the number of employees affected failed to show why case warrants "collective class" status as opposed to permitting additional individuals to join as plaintiffs).

individually and "on behalf of All Other Similarly Situated Who Consent to Their Inclusion in a Collective Action." Id. Since that time Plaintiffs have amended their Complaint three times to add claims, including FLSA claims alleging that BOH Managers participated in the Kitchen Tip Pool, and that Defendants used the proceeds from the Kitchen Tip Pool for management and disciplinary purposes, both in violation of the FLSA. See 3d Am. Complaint. In the past 18 months, eight additional servers have joined, either as individual plaintiffs or as opt-in plaintiffs. The last "consent to join" was signed by opt-in plaintiff Richard Harvey on August 5, 2013, nearly one year ago. (Doc. 74). Significantly, three additional servers submitted declarations stating that they were required to participate in the Kitchen Tip Pool, see Weller, Biggs, and Ranck Decls., but they did not express a desire to opt in, nor have they opted-in as plaintiffs in this action. Moreover, although the servers state in their declarations that they "believe," "know" or are "aware" of other servers who would like to join the lawsuit, see Crowling Decl. ¶ 58; Keating Decl ¶ 54; Kubiak Decl. ¶ 24; Little Decl. ¶ 23; Farinos Decl. ¶ 23; Dillon Decl. ¶ 20; Patterson Decl. ¶ 20; Weller Decl. ¶ 19; Biggs Decl. ¶ 19; Ranck Decl. ¶ 19, neither Plaintiffs nor the additional server declarants have identified any additional servers seeking to join a collective action regarding the Kitchen Tip Pool.

Plaintiffs must demonstrate a reasonable basis for concluding that there are other employees who desire to opt-in before the Court will conditionally certify a class. Haynes, 696 F.2d at 887. In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations, see Rodgers, 2006 WL 752831, at *3, but rather must set forth "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Grayson, 79 F.3d at 1097 (internal quotations and citation omitted). Here,

discovery is complete, and the parties have submitted multiple declarations, affidavits, and deposition transcripts, thus the Court must look beyond Plaintiffs' conclusory allegations that others desire to join the collective action.

On review of the extensive record, the Court notes that none of the servers deposed were able to provide additional details about others who desired to join, or specific names. In contrast, Defendants have submitted more than 50 declarations by current and former servers, most of whom were servers during the time frame contemplated by Plaintiffs for their collective action of between 150 and 200 servers, who state that their participation in the Kitchen Tip Pool was voluntary.  These servers would not be eligible to opt-in to Plaintiffs' collective action as to Counts I and II, and have expressed no desire to join Plaintiffs' collective action as to Count III, despite obvious knowledge of the action.  In the absence of any evidence of other specific employees and the weight of the evidence to the contrary, Plaintiffs' conclusory statements and "mere belief or unsupported expectations" that others desire to join, without providing any specific facts to support their belief that other employees are interested in opting in, do not provide a sufficient basis for certification.  See Webber, 2013 WL 935772, at *2; Denson, 2011 WL 46122, at *2; Manzi, 2011 WL 2672343, at *2-3. Indeed, Plaintiffs have not established that anyone other than the nine individual and opt-in Plaintiffs desire to be a part of this action.

Moreover, the fact that no additional server has sought to opt-in for nearly a year while this lawsuit has been pending, further casts doubt on Plaintiffs' assertion that other servers desire to join this action, and indeed supports the opposite inference "'that all those interested in joining this lawsuit have already done so.'"  Manzi, 2011 WL 2672343, at *3 (quoting

Barrera v. Oficina, Inc., No. 10-21382-CIV, 2010 WL 4384212, at *2 (S.D. Fla. Oct. 28, 2010)).  According to the Plaintiffs' declarations, the action which has been pending more than 16 months is well known to staff at both of the restaurants.  With each day that passes, servers who fail to opt-in to the Plaintiffs' proposed collective action may lose their putative FLSA claims against Defendants to the FLSA three-year statute of limitations applicable to willful violations, as alleged by Plaintiffs here.[27]  Thus, Plaintiffs have an interest in identifying additional servers and encouraging them to opt-in, or lose their claim forever.  Considering the number of potential class members (150-200), the duration of this lawsuit, the low number of servers who have joined thus far, the significant portion of the putative class that is aware of the action and elected not to opt in, and the ten months which have passed since any server expressed any interest in joining, the Court determines that Plaintiffs have not provided a reasonable basis for crediting their assertions that there are other employees who desire to opt-in.  See Haynes, 696 F.2d at 887.  Thus, Plaintiffs have failed to meet their burden of proving that others desire to opt in as required before certification and notice will be authorized by the Court.  See Webber, 2013 WL 935772, at *3.

Nevertheless, the Court determines that joinder of the individual and opt-in Plaintiffs would provide those Plaintiffs with an adequate judicial forum to pursue their claims.  See Kessler v. Lifesaver Serv. Providers, Inc., No. 6:06-CV-1442-ORL-19JGG, 2007 WL 1531395, at *3 (M.D. Fla. May 25, 2007)(potential class of ten employees not large enough

---

[27]   This is because "opt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action[,]" meaning that a "putative plaintiff must file his written consent to opt into the class action prior to the expiration of the statute of limitations on his [FLSA] claim."  See Grayson, 79 F.3d at 1106-07; see also Rojas, 2013 WL 6834657, at *9; 29 U.S.C. § 255.

to justify class treatment).[28] Thus, to accommodate the six individuals who consented to join, the Court will construe Plaintiffs' Motion pertaining to conditional certification under the FLSA, as a Motion to Join  opt-in servers Steven Patterson, Matthew Dillon, William Jeffrey Little, Jose Farino, Michael Hoolahan, and Richard Harvey, (see Docs. 3, 5, 6, 12, 16, 54, 57, 74), and grant that motion.

### B.    Rule 23 Class Certification (Counts IV, V, VI)

With respect to Counts IV-VI,  Plaintiffs seek certification of a single class pursuant to Rule 23(b) as to Plaintiffs' claims that Defendants violated the FMWA, Article X, Section 24 of the Florida Constitution, and Section 448.110, Florida Statutes.  Plaintiffs propose that the following class be certified:

> All current and former employees of the Defendants who work(ed) as a server, waiter or waitress (or any other job title performing essentially the same job function as a Server) at S.W. Cowboys or Creekside from November 30, 2007[,] through February 1, 2013, and who the Defendants purported to pay wages through the use of a "tip-credit", by paying a reduced minimum wage and taking a tip credit of $3.02 per hour and who were required to share tips with employees who do not customarily and regularly receive tips.

Motion at 19.

---

[28]    Inasmuch as Plaintiffs have failed to establish that they meet the first prong of the two-step conditional certification inquiry, the Court need not engage in the second inquiry as to whether the other employees who desire to opt-in are "similarly situated" to the named Plaintiffs with regard to their job requirements and pay provisions. See Dybach, 942 F.2d at 1567-68. Additionally, the Court need not address Plaintiffs' request to equitably toll the FLSA statute of limitations to the date of January 17, 2013. See Motion at 31-33.

The Court must first analyze the requirements of Rule 23.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).[29]  Pursuant to Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187-88 (11th Cir. 2003); Rule 23(a)(1)-(4).  These four requirements "are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." Piazza v. Ebsco Inds., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001)(quoting Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 156 (1982)).  The party seeking class certification must establish these four prerequisites to class certification, commonly referred to as the "numerosity, commonality, typicality, and adequacy of representation" requirements, as well as one of the alternative requirements set forth in Rule 23(b).  See Valley Drug, 350 F.3d at 1188.  "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." Id.

_____

[29]   A prerequisite to class certification is that "it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1287 (11th Cir. 2001).  Although neither party has addressed the standing of the proposed class representatives, the Court concludes, based on its review of the allegations of the 3d Am. Complaint, that Plaintiffs have standing to pursue the claims asserted.

1.    **Rule 23(a)**

a.    **Numerosity**

The first requirement Plaintiffs must satisfy is numerosity.  According to Plaintiffs, they have "identified at least 80 Servers from [Saltwater Cowboys] and 125 Servers from [Creekside Dinery] who have contributed to the kitchen tip pool - with more expected to be identified through further investigation and analysis into Defendants' payroll data."  Motion at 20.  In addition, Plaintiffs contend that the "expected geographic dispersion within the class favor class action."  Id. (citing to the fact that one out of the nine named and opt-in Plaintiffs has moved out of the state of Florida).  Defendants respond that only 12 servers have come forward on behalf of the Plaintiffs, including the three named Plaintiffs, six opt-in plaintiffs, and three additional servers who have submitted declarations on Plaintiffs' behalf.  Response at 8.  Defendants argue that "[t]his small group of 12 friends pales in comparison to the 42 affidavits of current and former employees of Defendants testifying by affidavit (and several others willing to testify) that they knew the contribution to the kitchen pool was voluntary." Id. at 8.[30]  Defendants argue that Plaintiffs "have not offered a shred of evidence that a class with sufficient numerosity exists."  Id. at 9.

The proper focus for the numerosity requirement is whether the joinder of all class members would be impracticable in view of their number and all other relevant factors. Phillips v. Joint Legis. Comm., 637 F.2d 1014, 1022 (5th Cir. 1981).[31]  "[T]he focus of the

---

[30]    Subsequent to the filing of their Response, Defendants filed 14 additional server and employee affidavits.  (See Docs. 115, 117, 120, 121, 122).

[31]    The decisions of the former Fifth Circuit Court of Appeals before October 1, 1981 have been adopted as binding precedent in this Circuit.  See Bonner v. City of Prichard, 661 F. 2d 1206, 1209

(continued...)

numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" Bacon v. Stiefel Lab., Inc., 275 F.R.D. 681, 690 (S.D. Fla. 2011)(quoting Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986)); Leszczynski v. Allianz Ins., 176 F.R.D. 659, 669 (S.D. Fla. 1997)(The numerosity requirement "does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient."). Factors to be considered are the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. Id. "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). Instead, a plaintiff is required to "show some evidence of or reasonably estimate the number of class members" beyond "[m]ere speculation, bare allegations, and unsupported conclusions." Barlow v. Marion County Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009)("a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement"). "In general terms, the Eleventh Circuit has found that 'less than twenty-one [prospective class members] is inadequate [while] more than forty [is] adequate.'" See Bacon, 275 F.R.D. at 690 (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)); Vega, 564 F.3d at 1267 (noting that the court has affirmed certification of a class

---

[31](...continued)
(11th Cir. 1981).

of "'at least thirty-one individual class members'" and has also affirmed a district court's finding that a class of 34 did not satisfy the numerosity requirement). "[W]here the question of numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1)." Leszczynski, 176 F.R.D. at 670 (citing Evans, 696 F.2d at 930).

In this case, although some uncertainty may exist as to the exact number of class members, Plaintiffs have made "some" showing of the size of the class, extrapolating the number of servers who have worked at Defendants' restaurants over the five year period, based on the number of servers currently employed by Defendants. See e.g. Crowling Decl. ¶¶ 55, 56 ("about" 42 servers work at Defendants two restaurants "at any given time"); Keating Decl. ¶ 56 ("both restaurants employ about 20+ servers each"); Kubiak Decl. ¶ 25 (same); Little Decl. ¶ 24 (each restaurant employs "about" 20 servers "at any given time"). To date, three named Plaintiffs, and six opt-in plaintiffs, all current or former servers at Defendants' restaurants, have chosen to participate in this action. Three additional servers have submitted declarations in support of Plaintiffs' arguments, for a total of 12 servers. These 12 servers all state that Defendants required all employees to participate in a tip pool for kitchen staff and expediters. Thus, Plaintiffs have provided a reasonable estimate of the proposed class at this stage of the proceeding.

While Plaintiffs do no more than speculate as to the geographic dispersion of the putative class, the number of putative class members, as well as the relatively small size of their individual claims, rendering the ability of the individual servers to institute their own lawsuit impracticable, makes joinder of the proposed class members impracticable.  See

Bennett, 880 F. Supp.2d at 1279-80 (finding sufficient numerosity of restaurant workers in wage and hour putative class action, based on fact that 21 have come forward to participate in lawsuit, and plaintiffs' affidavits "estimate the class to number at least fifty individuals"); see generally Agan v. Katzman & Koor, P.A., 222 F.R.D. 692, 696 (S.D. Fla. 2004)(in addition to size of the proposed class, court may consider such factors as the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits).  While there is no fixed class size that will satisfy the numerosity requirement, the Court is satisfied that joinder of more than 150 to 200 individuals would be impracticable.  Therefore, the Court concludes that the numerosity threshold is satisfied.  E.g. Bennett, 880 F. Supp.2d at 1280 (numerosity requirement satisfied in FLSA minimum wage case where estimated class size was 50 restaurant employees); Moreno-Espinosa v. J&J Ag Prod., Inc., 247 F.R.D. 686, 688 (S.D. Fla. 2007)(putative class of 38 employees satisfied the numerosity requirement of Rule 23(a)).

### b.    Commonality

The second requirement, commonality, demands that there be questions of law or fact common to the class.  See Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2553 (2011).  The "commonality requirement measures the extent to which all members of a putative class have similar claims." Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006).  Commonality exists if a class action involves "issues that are susceptible to class wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001).  The requirement is satisfied "where plaintiffs allege

common or standardized conduct by the defendant directed toward members of the proposed class." <u>Elkins v. Equitable Life Ins. of Iowa</u>, No. CivA96-296-Civ-T-17B, 1998 WL 133741, *11 (M.D. Fla. Jan. 27, 1998).   As such, the putative class plaintiffs' claims must depend upon a common contention of such a nature that it is capable of classwide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 131 S.Ct. at 2551.   Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" <u>Id.</u> (citation omitted); <u>see also</u> <u>Dukes</u>, 131 S.Ct. at 2553 (quoting <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 157-58 (1982)).

Plaintiffs argue that their claims "are identical to the claims alleged by the class," in that like the putative class, Plaintiffs claim that "Defendants failed to pay minimum wages to Servers by virtue of operated [sic] an unlawful tip pooling practice." Motion at 21.  Plaintiffs list the following issues which they contend are common for all members of the putative class:

    a.    Whether Defendants' tip-pool was unlawful due to the inclusion of employees who do not regularly and customarily receive tips (Kitchen Staff);

    b.    Whether Defendants' tip pooling arrangement between Servers and Kitchen Staff meets the objective threshold of a voluntary tip pool;

    c.    Whether Defendants operated the tip pool in a manner that might well influence an objective, reasonable Server to contribute to the Kitchen Staff;

    d.    Whether the Back of House Manager constitutes an "employer" under the FLSA such that the Back of House Manager's participation in the tip pool invalidates Defendants' tip pool and tip credits taken; AND

> e.  Whether Defendants' practice of withholding tips from Kitchen Staff on a performance basis invalidates the tip credit due to Defendants improperly participating in the tip pool.

Id. Plaintiffs argue that "[e]ven the question of the voluntary-coercive nature of the tip pool is objective and common to all class members." Id.

Defendants respond that the relevant question presented by Plaintiffs' claims is whether each server's contribution to the Kitchen Tip Pool was voluntary. Response at 7. They argue that because Plaintiffs' claims do not "'generate common answers apt to drive the resolution of the litigation,'" they can not be pursued as a class action. Id. at 8 (emphasis in original)(quoting Dukes, 131 S.Ct. at 2551).  Additionally, Defendants contend that Plaintiffs' claimed "coercion" is factually unique to each individual server, and that "none of the servers in the potential class were 'coerced' in the same way to contribute to the kitchen pool." Id. at 10. Rather, according to Defendants, Plaintiffs are attempting to "take a series of distinct decisions and claim that they were made in accordance with a central practice whose legality can be determined by the Court," an approach rejected by the Supreme Court in Dukes. Id. at 9 (citing Dukes, 131 S.Ct. at 2552).  As such, Defendants argue that Plaintiffs' claims require the Court to

> evaluate how each claimant learned of the kitchen pool, how the alleged formula for contribution was described to each claimant, whether they used tip allocation forms that said "voluntary," whether the absence of "voluntary" misled them to assume the contribution was mandatory, whether they wanted to reduce the amount of money contributed to the kitchen pool, and whether submitting the form to the closing manager made them feel pressure to increase their contribution to the kitchen pool.

Response at 11.

Plaintiffs' allegations in Counts IV and V of the Third Amended Complaint require that all members of the putative class participated involuntarily in the Kitchen Tip Pool.  Plaintiffs allege in Count IV that "Defendants violate the law by allowing non-tipped employees (chefs, cooks, dishwashers and expediters) to keep tips from the tip pools."  3d Am. Complaint ¶ 115.  In a similar vein, Plaintiffs allege in Count V that "Defendants have wrongfully retained tips by the inclusion of the BOH Managers in the tip pool."  Id. ¶ 121.  Because a tipped employee may voluntarily choose to share tips with an otherwise ineligible employee so long as that tip-sharing is done without coercion by the employer, see Roussell, 441 F. App'x at 230; see also, Kilgore, 160 F.3d at 303, both claims are contingent upon whether the putative class member voluntarily participated in the Kitchen Tip Pool.  Plaintiffs have established, either by named or opt-in Plaintiffs or by declaration, that 12 servers believe that they were required or coerced to participate in the Kitchen Tip Pool.  However, Defendants have submitted affidavits from 55 current or former servers who uniformly state that participation in the Kitchen Tip Pool was voluntary.  The commonality requirement falls apart here, because Plaintiffs have not established "common or standardized conduct" on the part of the Defendants, directed to the putative class of servers participating in the Kitchen Tip Pool.  See Elkins, 1998 WL 133741, at *11.  Based on this record, were the Court to certify the class as defined by Plaintiffs, it would have to conduct an initial inquiry as to each putative class member to determine whether their participation in the Kitchen Tip Poll was voluntary, required or coerced.  As such, the claims of Plaintiffs' putative class may not be resolved "in one stroke."  See Dukes, 131 U.S. at 2551.  Thus, class certification is not warranted as to Counts IV and V due to lack of commonality.  See Bennett, 880 F. Supp.2d at 1280-81.

Count VI, however, appears to rest on different footing.  In Count VI, Plaintiffs allege that "Defendants have wrongfully retained tips by exercising dominion and control over the tip pool and directing the distribution of the tip pool funds in accord with its [sic] own incentive and disciplinary policies." 3d Am. Complaint ¶ 127; see also id. ¶¶ 26, 32, 41, 76; see also Answer ¶¶ 26, 32, 41 ("Defendants further admit that the kitchen managers withheld tips from some kitchen employees for disciplinary reasons.").  The FLSA requires that all tips received by the employees must be retained by them.  29 U.S.C. § 203(m).  Thus, it is possible that an employer's retention of a portion of the proceeds of a tip pool may constitute impermissible participation in the pool.  See Williams-Green v. J. Alexander's Rest., Inc., 277 F.R.D. 374, 381 (N.D. Ill. 2011); see also Perez v. Prime Steak House Rest. Corp., 939 F. Supp.2d 132, 139-140 (D. P.R. 2013)(runners and servers at restaurant stated plausible claim that employer violated the FLSA by improperly retaining tips from tip pool, some of which were being retained for "operation" costs).  As such, Defendants' liability as to Count VI does not appear to be contingent upon whether the servers who participated in the Kitchen Tip Pool were required or coerced to do so.  Rather the common legal question is whether the employees retained tips, or whether any control that may have been exercised by the tip proceeds violated the requirements for use of the Tip Credit.  This presents questions of fact and law common to all putative class members, which may be resolved "in one stroke."  Accordingly, Plaintiffs have met the commonality requirement as to Count VI of the Third Amended Complaint.

### c.    **Typicality**

Next, the Court must determine whether Plaintiffs' claims or defenses are typical of the claims or defenses of the potential class.  The prerequisites of commonality and typicality both "focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  See Prado-Steiman v. Bush, 221 F. 3d 1266, 1278 (11th Cir. 2000).[32]  While commonality is concerned with group characteristics of a class as a whole, typicality "refers to the individual characteristics of the named plaintiff in relation to the class."  See id. at 1279.  Typicality is satisfied if the claims of the named plaintiffs and those of the class "arise from the same event or pattern or practice and are based on the same legal theory."  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).  "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary."  Mesa v. Ag-Mart Produce, Inc., No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224, at *6 (M.D. Fla. July 18, 2008).  The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests.  Agan v. Katzman & Koor, P.A., 222 F.R.D. 692, 698 (S.D. Fla. 2004).  Plaintiffs argue that their claims are "typical" because all of the class-based claims arise from the same conduct and are premised on the same legal theory, and the damages suffered by the Plaintiffs and the putative class members are identical for each hour worked.  Motion at 23.  In response, Defendants argue

---

[32]  Indeed, the commonality and typicality requirements of Rule 23 "tend to merge."  Dukes, 131 S.Ct. at 2551 n.5.

that each Plaintiff comes forward with an individualized claim necessitating individualized proof.  <u>See</u> Response at 9-12.

The three named Plaintiffs all contend that they were coerced or required to participate in the Kitchen Tip Pool.  As many as 50 former or current servers have stated that they voluntarily participated in the Kitchen Tip Pool.  As with the question of commonality as to Counts IV and V of the Third Amended Complaint, the Court would be required to ascertain whether each individual putative class member indeed participated voluntarily, or was required or coerced to do so, involving a factual inquiry as to each one.  "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of the other members of the class."  <u>Brown v. SCI Funeral Servs. of Fla., Inc.</u>, 212 F.R.D. 602, 604-605 (S.D. Fla. 2003)(quoting <u>Kornberg</u>, 741 F.2d at 1337).  Here, the servers' affidavits submitted by Defendants establish that the factual position of the named Plaintiffs on a critical issue differs markedly, and indeed, is diametrically opposite of the factual position of a significant portion of the putative class who state that they voluntarily participated in the Kitchen Tip Pool.  As such, Plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)(3) with regard to Counts IV and V.

Again, Count VI appears to present a different situation.  In Count VI, Plaintiffs allege that Defendants' use of the Kitchen Tip Pool for disciplinary purposes, in essence, wrested control of the employees' tips from them, in contravention of the FLSA's tip credit requirements.  <u>See</u> 29 U.S.C. 203(m).  Based upon the record before the Court, it does not appear that factual differences regarding the putative class servers' voluntariness would negate the question of all of the putative class servers who participated in the Kitchen Tip

Pool may have been subjected to the same alleged unlawful conduct.  See Mesa, 2008 WL 2790224, at *6;  Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 578 (M.D. Fla. 2006),  As such, the named Plaintiffs' Count VI claim is typical of the claims of all servers who participated in the Kitchen Tip Pool during the relevant time frame.

### d.     **Adequacy of Representation**

The fourth prerequisite to class certification set forth in Rule 23(a) requires "that the representative party in a class action must adequately protect the interests of those he purports to represent."  Valley Drug Co., 350 F.3d at 1189; Rule 23(a)(4)(internal quotation omitted); see also Piazza, 273 F.3d at 1346 ("'adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel").   The purpose of the "adequacy of representation" requirement is "to protect the legal rights of absent class members" who will be bound by the res judicata effect of a judgment.  Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  As such, the requirement applies to both the named plaintiffs and to their counsel.  London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).

The "'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  Valley Drug Co., 350 F.3d at 1189 (citation omitted).  Class certification is inappropriate where some class members benefit from the same acts alleged to be harmful by other members of the class, creating a conflict of interest.  Valley Drug Co., 350 F.3d at 1189.  However, "the existence

of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in the controversy." Id.

Plaintiffs argue that there are no conflicts of interest between the named Plaintiffs and the members of the putative class contending that: "[t]he named Plaintiffs will not benefit from any acts that are harmful to the class members, nor will the class adversely affect Plaintiffs." Motion at 24.  As to the second prong, Plaintiffs argue that Plaintiffs' counsel "is experienced in Florida Minimum Wage claims," having litigated "hundreds of wage and hour claims" in this District, "including cases involving alleged tip-pooling violations." Id.  Defendants object to the class representatives, arguing that the evidence will establish that "several of the current plaintiffs or opt-in plaintiffs have made statements indicating they were aware that the kitchen pool was voluntary," thus creating conflict with those Plaintiffs who believe that the Kitchen Tip Pool was mandatory.   Response at 13.   Additionally, Defendants argue that Plaintiffs' counsel's failure to file a timely Motion to certify the class under the local rules "is per se grounds to find counsel is inadequate to protect the interests of the class," and that Plaintiff's counsel has committed a "series of other errors" in this action which establish counsel's "inadequacy." Id. at 12.

With respect to Count VI, Plaintiffs have met their burden on both points.[33]  Plaintiffs have submitted 10 declarations by servers, who all state that they participated in the Kitchen Tip Pool.  Defendants admit that kitchen managers withheld tips from the Kitchen Tip Pool from some kitchen employees for disciplinary reasons.  See Answer ¶¶ 26, 32, 41.  As to

---

[33]  In light of the Court's findings with respect to Plaintiffs' failure to satisfy the commonality and typicality requirements for Rule 23 class certification of Counts IV and V, the Court need not address "adequacy of representation" as to these counts.

Count VI, it would seem that all class members, including the representative plaintiffs, could similarly benefit if the prospective class is successful.  As such, Defendants have not established a conflict of interest which would disqualify the class representatives from pursuing the claim set forth in Count VI.  Compare Bennett, 880 F. Supp.2d at 1281-82 (finding intra-class conflicts because "the evidence suggests that some of the individual Plaintiffs may have shared tips with non-tipped employees, while others did not").  Moreover, the Court has determined that the named Plaintiffs and the putative class share commonality and typicality as to this claim.  It follows, then, that "the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Dukes, 131 S.Ct. at 2551 n.5 (noting that commonality and typicality determinations tend to merge with the adequacy-or-representation requirement).  Finally, the Court has not been given sufficient reason to doubt class Plaintiffs' counsel's ability to "fairly and adequately represent the interests of the class."  See Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008).

### 2.   Rule 23(b)(3)

Finally, "[a] class action may be maintained if Rule 23(a) is satisfied," and the action falls within one of three types of class actions recognized in Rule 23(b).  See Rule 23(b).  Plaintiffs seek certification of this action pursuant to Rule 23(b)(3).  Motion at 25-27.  A Rule 23(b)(3) class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).  Having concluded that Plaintiffs have

satisfied the Rule 23(a) requirements with respect to Count VI of the Third Amended Complaint, the Court turns to an analysis of the Rule 23(b)(3) requirements as they relate to that claim.

### a.   <u>Predominance</u>

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." <u>Williams v. Mohawk Indus., Inc.</u>, 568 F.3d 1350, 1357 (11th Cir. 2009).   An inquiry into the predominance of common questions of law or fact "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>See</u> <u>Amchem Prods.</u>, 521 U.S. at 623.   "'[I]n determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account the claims, defenses, relevant facts, and applicable substantive law.'" <u>Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 458 F. App'x 793, 794 (11th Cir. 2012)(quoting <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1254 (11th Cir. 2004), <u>abrogated in part on other grounds by</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008)).   Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof.   <u>Veal</u>, 236 F.R.D. at 579.   On the other hand, "common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of legal and factual issues.'" <u>Bussey v. Macon Cnty. Greyhound Park, Inc.</u>, __F. App'x __, 2014 WL 1302658, at *5 (11th Cir. 2014)(quoting <u>Andrews v. Am. Tel. & Tel. Co.</u>, 95 F.3d 1014, 1023 (11th Cir. 1996)).

Unlike Plaintiffs' claims in Counts IV and V which necessitate individualized proof and examination of each servers' motivation for participating in the Kitchen Tip Pool, Count VI presents no such predominance issue.  The predominant issues presented by Count VI are 1) whether the server participated in the Kitchen Tip Pool during the relevant time frame, and 2) whether the employees, as opposed to Defendants, retained control over the tips.  These questions predominate over any individualized questions.  Moreover, "[i]ndividualized damages issues are of course least likely to defeat predominance 'where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.'" Id. at 1179 (quoting Klay, 382 F.3d at 1259-60).

The factual and legal questions of whether BOH Managers actually distributed or withheld tip proceeds from the Kitchen Tip Pool in furtherance of the Defendants' management or disciplinary goals, and if so, whether such action rendered the tip credit unavailable, are questions common to all putative class members, with no significant individualized factual questions.  As such, Plaintiffs have sufficiently demonstrated that there is a class-wide question of liability as to Count VI, and that that question predominates over individual questions of servers' motivations, and damages questions.

### b.  **Superiority**

Turning to the superiority requirement of Rule 23(b)(3), the Court considers "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269.  Rule 23(b)(3) contains a list of factors to consider when making a determination of superiority:

> (A) the class members' interest in individually controlling
> the prosecution or defense of separate actions; (B) the

> extent and nature of any litigation concerning the
> controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and (D) the
> likely difficulties in managing a class action.

Rule 23(b)(3). The relative advantages of a class action suit as to Count VI are apparent when considering that a successful plaintiff in an action for violations of the FMWA may be awarded fairly minimal damages. The Supreme Court in Amchem Products acknowledged that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Moreover, when a court determines that issues common to all class members predominate over individual issues, it follows that "a class action will likely be more manageable than and superior to individual actions." Mohawk Inds., 568 F.3d at 1358.

Plaintiffs assert that they anticipate no significant administrative difficulties in managing the class. Motion at 26. Plaintiffs argue that while damages must be calculated as to each class member, the damages "are readily determinable from a review of Defendants' time and payroll records." Id. They contend that the issues in this case are better resolved by a "single adjudication," eliminating the need for "duplicative suits to establish the same violation." Id. In response, Defendants argue that Plaintiffs have failed to establish any difficulty in communicating with and representing servers individually, and cite Plaintiffs' "failure to do anything other than speculate whether more than nine servers were interested in joining this class action." Response at 14-15. Defendants contend that it is neither "fair nor efficient to force all 196 servers that have not joined this class, some of

whom have already affirmative [sic] disclaimed participation, into a class with Plaintiffs against their will." Id. at 15.

This case appears to fall squarely within the category of cases where the individual members of the proposed class would lack incentive to pursue individual actions as the possible recovery would likely be far outweighed by the expense of such action.   Also, where, as here, common issues predominate, it would be far more efficient to have the common issues raised by Count VI litigated in a single action, as opposed to a hundred or more individual actions.   Therefore, the Court finds that a class action is superior to other methods of adjudicating Count VI, and that both the requirements of Rule 23(b)(3) are met in this case.

### 3.    Class Definition

The Court determines that the following class definition describes the putative class as to Count VI of the Third Amended Complaint:

> All current and former employees of Saltwater Cowboys and Creekside Dinery restaurants who work(ed) as a server, waiter or waitress (or any other job title performing essentially the same job function as a Server) at any time between November 30, 2007 and February 1, 2013, who participated in the Kitchen Tip Pool, and was paid a reduced minimum wage through the use of a tip credit of $3.02 per hour.

This definition removes the question of voluntariness, and provides objective criteria for ascertaining who is a member of the class.  Participation in the Kitchen Tip Pool, whether required or voluntarily, is the basis of the claim set forth in Count VI.   Additionally, the objective criteria may be analyzed in a manageable and administratively feasible way, and class membership can be confirmed by reference to Defendants' employment records during

the putative class period.  This putative class is not unlimited, overly broad, open-ended, or vague.  Compare Bennett, 880 F. Supp.2d at 1278-79 (finding plaintiff restaurant employees' proposed putative class definition that included "[a]ll hourly-paid employees" of the defendants to be vague, indefinite and over broad because it failed to distinguish between tipped and non-tipped employees).

**Conclusion**

In light of the foregoing, the Court determines that the Motion is due to be granted in part, and denied in part.  As to Counts I-III, the Motion is due to be denied because Plaintiffs have failed to establish that a sufficient number of servers desire to join this action to warrant conditional certification of a collective action under the FLSA.  The Opt-in Plaintiffs will be permitted to join the named Plaintiffs, and to pursue their individual claims.  Plaintiffs' Motion for class certification pursuant to Rule 23 is due to be granted in part as to Count VI of the Third Amended Complaint, and denied in part, as to Counts IV and V, for failing to meet the commonality, typicality and predominance requirements of Rule 23(a) and (b)(3).  The Plaintiffs' proposed Rule 23 class definition is modified as set forth above.

Accordingly, it is hereby

**ORDERED**:

1.      Plaintiffs' Amended and Restated Motion for Declaration of a Class Action as to Minimum Wage Claims Pursuant to Rule 23(B)(3); Motion to Conditionally Certify a Collective Action Pursuant to 29 U.S.C. § 216(B) and Motion for Equitable Tolling of the Statute of Limitations (Doc. 98; Motion) is **GRANTED IN PART and DENIED IN PART**, as follows:

A.      The Motion is **GRANTED IN PART** to the extent that Steven Patterson, Matthew Dillon, William Jeffrey Little, Jose Farino, Michael Hoolahan, and Richard Harvey are to be added as party Plaintiffs.

B.      In all other respects, as to Counts I, II, and III of Plaintiffs' Third Amended Complaint and Demand for Jury Trial (Doc. 79), the Motion is **DENIED**.  The case shall proceed on Counts I, II, and III, as to the individual party Plaintiffs.

C.      The Motion is **DENIED** with respect to Counts IV and V of Plaintiffs' Third Amended Complaint and Demand for Jury Trial (Doc. 79).  The case shall proceed on Counts IV and V, as to the individual party Plaintiffs.

D.      The Motion is **GRANTED** with respect to Count VI of Plaintiffs' Third Amended Complaint and Demand for Jury Trial (Doc. 79), to the extent that this action shall proceed as a class action pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure (Rule(s)) on Count VI only.

1.      The Court, having found that Plaintiffs have met the prerequisites for class certification set forth in Rule 23 for Count VI of Plaintiffs' Third Amended Complaint and Demand for Jury Trial (Doc. 79), certifies the following Class with respect to Count VI:

> All current and former employees of Saltwater Cowboys and Creekside Dinery restaurants who work(ed) as a server, waiter or waitress (or any other job title performing essentially the same job function as a Server) at any time between November 30, 2007 and February 1, 2013, who participated in the Kitchen Tip Pool, and was paid a reduced minimum wage through the use of a tip credit of $3.02 per hour.

-47-

2.      Plaintiffs, David Kubiak, Jason Crowling and Joseph Keating, shall serve as class representatives, with Benjamin L. Williams, Esq.; Kevin D. Johnson, Esq.; LaKisha M. Kinsey-Sallis, Esq.; Marquis W. Heilig, Esq.;and Amy Smith, Esq. serving as class counsel.

3.      Pursuant to Rule 23(c)(2)(B), the parties shall confer and submit to the Court, on or before **July 14, 2014**, a joint proposed class notice plan and form of notice.   If the parties are unable to agree on a form of notice, the parties shall each submit one on or before **July 14, 2014**, accompanied by a memorandum explaining that parties' position.   Each party shall respond to the other's proposed notice plan and form of notice no later than **July 29, 2014**.

E.      The Motion is **DENIED AS MOOT** to the extent that Plaintiffs seek equitable tolling of the FLSA statute of limitations.   29 U.S.C. § 255.

2.      The Clerk of the Court is directed to correct the style of the case to include the additional named Plaintiffs identified in Paragraph 1.A. above.

3.      The Amended Case Management and Scheduling Order (Doc. 92) is **VACATED**.   On or before **July 14, 2014**, the parties shall confer and provide the Court with a joint proposed schedule for the filing of dispositive motions and for trial.   The Court will

enter a separate Order scheduling dispositive motions, and setting this matter for trial, following the opt-in period.

**DONE AND ORDERED** in Jacksonville, Florida, this 12th day of June, 2014.

MARCIA MORALES HOWARD
United States District Judge

lc12

Copies to:

Counsel of Record