# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**DAVID KUBIAK** *et. al.*

    **Plaintiffs,**

vs.                                                        Case No.: 3:12-cv-1306-J-34JRK

**S.W. COWBOY, INC.,** *et al.*

    **Defendants,**

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT

Plaintiffs, DAVID KUBIAK; JASON CROWLING, JOSEPH KEATING, Matthew Dillon, William Jeffrey Little, Jose Farinos, Michael Hoolahan and Richard Harvey (collectively "Plaintiffs"), hereby move for summary judgment on behalf of the Class of Servers certified by this Court's Order (Doc. 123) pursuant to Rule 56, Fed. R. Civ. P. on Count VI of Plaintiffs' Third Amended Complaint (Doc. 79) because there is no genuine issue of material fact for trial.

## PROCEDURAL POSTURE

This is a Rule 23 class action whereby Plaintiffs were former restaurant servers alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), the Florida Constitution, Art. 10, §24 as well as the Florida Minimum Wage Act, Fla. Stat. §448.110 ("FMWA"). Plaintiffs claim that Defendants violated the tip credit provisions of the FLSA, 29 U.S.C. 203(m) by operation of an illegal tip pool and thus Plaintiffs are entitled to repayment of the tip credit claimed by Defendants, in addition to liquidated damages and other remedies provided by law. (Doc. 79) Defendants contend that the tip distributions at issue were part of a voluntary tip pool and thus Defendants did not violate the FLSA or the FMWA.

On June 14, 2014, this Court certified the claims contained in Count VI as a Class Action (Doc. 123). In so doing, this Court certified "the common legal question [of] whether employees retained tips, or whether any control that may have been exercised by the employers violated the requirements for use of the Tip Credit" (Doc. 143 p 4).

This Court authorized opt-out notice to members of the Server Class based upon the Claims contained in Count VI[1]. Defendants provided Plaintiffs' Counsel a listing of 243 current and former servers from Saltwater Cowboys and Creekside Dinery who worked as servers and against whom the Defendants claimed a Tip Credit. Also included in the class data was the record of all hours worked by each member of the Server Class during the 5-year Class Period.

As of the deadline to opt-out of this Class Action (July 11, 2015) only 18 servers exercised their right to opt-out of this action, and the current Server Class is 225 current and former servers.

Plaintiffs now respectfully request this Court enter summary judgment as to liability on Count VI of Plaintiffs' Third Amended Complaint on the basis that Defendants exercised control over the tip proceeds as to violate the retention requirement of 203(m) and disqualifying Defendants from taking advantage of the FLSA's tip credit. Specifically, Plaintiffs allege that Defendants violated the tip retention requirement of 203(m) by withholding tips from kitchen employees on the basis of disciplinary reasons. As a second basis, Plaintiffs allege that the Defendants exercised control over the Kitchen Tip Pool

---

[1] The Court defined the Server Class as "All current and former employees of Saltwater Cowboys and Creekside Dinery restaurants who work(ed) as a server, waiter or waitress (or any other job title performing essentially the same job function as a Server) at any time between November 30, 2007 and February 1, 2013, who participated in the Kitchen Tip Pool, and was paid a reduced minimum wage through the use of a tip credit

proceeds to such a degree that the tip pool proceeds became the property of Defendants, thus violating the tip retention requirements of 203(m).

## STATEMENT OF UNDISPUTED FACTS

Defendants own and operate two interrelated restaurants located in St. Augustine, Florida, Saltwater Cowboys and Creekside Dinery. The Plaintiffs and the Server Class are current and former servers for the restaurants who worked for Defendants within the Class Period. Because the Plaintiffs and members of the Server Class were 'tipped employees' within the purview of 29 U.S.C. §203(t), Defendants paid Plaintiffs and Server Class members minimum wage and applied the tip credit to the payment of their wages.

At both restaurants, Defendants operated identical tip pools, with nearly identical procedures during the entirety of the Class Period. At issue in this matter is the pooling of tips intended for distribution among the kitchen staff (the "Kitchen Tip Pool").

At the end of every shift, Servers were required to complete a tip allocation form prior to checking out with the Front of House Manager on duty. The Front of House Manager then calculated the total of each Server's credit card tips and cash tips, then deducted the tips allocated to the Bar/Bus Pool and the Kitchen Tip Pool resulting in the net tips earned by each Server during the shift. The Front of House Manager would then collect Kitchen Tip Pool proceeds from each Server and give the Servers cash for the remaining tips earned for the shift. The parties dispute whether the Servers' contribution to the Kitchen Tip Pool was mandatory or required.

The Front of House Manager collected and aggregated the Kitchen Tip Pool funds from all the Servers on a weekly or bi-weekly basis, then gave the aggregate Kitchen Tip Pool proceeds to the kitchen manager. The evidence reflects and the Defendants concede that Servers

and kitchen staff did not have a mutual agreement between themselves as to how Defendants should redistribute the Kitchen Pool Tip proceeds. {Doc. 124, p.14 Defendants' Motion to Amend Class Certification} In fact, Servers were generally unaware as to which kitchen staff employees took part in the Kitchen Tip Pool proceeds {Ex. 1 – Deposition of Jennifer Bryan p.94}(indicating that new servers were not told how the Defendants distributed the kitchen tip pool proceeds or that employees were aware that kitchen managers withheld tips) {Ex. 2 – Deposition of Ryan Marcum pp. 38-39}(indicating he was unaware that dishwashers were part of the Kitchen Tip Pool distribution}{Ex. 3 – Deposition of Sean Hernandez pp. 20, 36-37}(indicating he was unaware how the tip pool was distributed among the kitchen staff and that he was unaware that dishwashers were part of the Kitchen Tip Pool distribution} Accordingly, the kitchen manager would exercise his sole discretion in how the Kitchen Tip Pool proceeds were redistributed to the rest of the kitchen staff.

The kitchen manager chose to use the distribution of the Kitchen Tip Pool proceeds as part of Defendants' incentive and discipline policy. Kitchen managers conditioned the distribution of the Kitchen Tip Pool tips on the kitchen staffs' individual work performance. Kitchen managers threatened to withhold Kitchen Tip Pool tips from kitchen staff as a disciplinary measure. {See Ex. 4 – Deposition of SWC Kitchen Manager, Brian Pannone pp. 48-49}(Stating that the tips are a benefit to the kitchen staff and the docking of tips is used as discipline)

Kitchen managers did in fact withhold tips from kitchen staff members. {See Ex. 5 – Composite Sample of Records Showing the withholding of tips} The records reflect that kitchen managers withheld tips from kitchen staff members every year during the Class Period and

Defendants admit "that the kitchen managers withheld tips from some kitchen employees for disciplinary reasons." Answer ¶¶ 26, 32, 41; see also id. ¶ 81.

## ARGUMENT

The FLSA allows for employers to take a "tip credit" for certain tipped employees and pay these tipped employees a reduced minimum wage, provided that the employer strictly comply with the terms of 29 U.S.C. 203(m). *See Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir. Va. 1977).

In this case, Defendants' Kitchen Tip Pool violated the tip retention requirements of FLSA (29 U.S.C. 203(m)). Although Defendants attempt to classify the Kitchen Tip Pool as a "voluntary" tip pool in an attempt to escape liability, in reality the Kitchen Tip Pool was nothing more than an unlawful agreement giving Defendants ownership of a portion of the Servers' tip proceeds and depriving the Servers of their right to retain all of the tips they received.

"The language in Section 203(m) is clear that 'all tips' received by tipped employees must be retained by the tipped employees. Accordingly, an employer cannot keep the tips of a tipped employee as such constitutes a violation of the FLSA." *Whitehead v. Hidden Tavern, Inc.,* 765 F. Supp. 2d 878, 883 (W.D. Tex. 2011). "The defendant bears the burden of establishing that it is entitled to claim the 'tip credit.' . . . Unless the employer satisfies its burden of showing the applicability of the tip credit, the employee is 'entitled to the full minimum wage for every hour worked.'" *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) (quoting *Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 467 (5th Cir. 1979)).

The undisputed facts demonstrate that Defendants cannot prevail on proving their entitlement to take a tip credit on Plaintiffs' wages or the wages of the Server Class because

Defendants improperly exercised control over the Kitchen Tip Pool proceeds and as a result Servers were no permitted to retain all of their tips. The facts demonstrate that Defendants took ownership of the Kitchen Tip pool proceeds as part of their incentive and performance policies thus precluding their ability to claim a tip credit.

The facts demonstrate that the Defendants withheld Kitchen Tip Pool funds to discipline kitchen staff and violated the retention requirements of 203(m).

Similarly, the undisputed facts facts demonstrate that Defendants exercised improper control of the tip proceeds and therefore cannot prevail on proving their entitlement to take a tip credit against Servers' wages and summary judgment must be granted in Plaintiffs' favor.

## I. The Tip Credit

The FLSA requires employers to pay employees a minimum hourly wage. In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA. Fla. Const. Art. X, ¶ 24.6 As such, an employee's wage under both the FLSA and the FMWA may include the employee's tips. 29 U.S.C. § 203(m), if an employee is a "tipped employee," the employer may factor the employee's tips into the employee's wages). Thus, "an employer may pay an employee a cash wage below the minimum wage, so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a 'tip credit.'" *Rubio v. Fuji Sushi & Teppani, Inc.,* No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013)(citing 29 U.S.C. § 203(m)).

In order for an employer to qualify for a "tip credit" under 29 U.S.C. § 203(m), the employer must establish that (1) the tip credit is claimed for qualified tipped employees; (2) the employees received proper notice of Section 203(m); and (3) all tips received by the employees were retained by them, except when the employee participates in a valid tip pool with other customarily tipped employees. *Cumbie v. Woody Woo, Inc.,* 596 F.3d 577, 580 (9th Cir. 2010);

*Garcia v. Koning Rest. Int'l. L.C.,* No. 12-CV-23629-HUCK, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013); *Bennett v. Hayes Robertson Group, Inc.,* 880 F. Supp.2d 1270, 1278 (S.D. Fla. 2012); *Perez v. Palermo Seafood, Inc.,* 548 F. Supp.2d 1340, 1347-48 (S.D. Fla. 2008), aff'd 302 F. App'x 905 (11th Cir. 2008); *Pellon v. Bus. Representation Int'l, Inc.,* 528 F. Supp.2d 1306, 1310 (S.D. Fla. 2007). If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result. *Garcia*, 2013 WL 8150984, at *4 (internal quotations and citations omitted); *see also Chung v. New Silver Palace Rest., Inc.,* 246 F. Supp.2d 220, 229 (S.D.N.Y. 2002)(employer must satisfy prerequisites "even if the employee received tips at least equivalent to the minimum wage").

In the present case the undisputed record shows that Servers were denied the ability to retain their tips due to the control Defendants exercised over the Kitchen Tip Pool proceeds. The records show that Defendants withheld tips from kitchen staff, and that there was no agreement between Servers and kitchen staff about the basis for the redistribution of the Kitchen Tip pool – the Defendants simply imposed their own will, thus violating the retention requirement of 203(m).

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

"When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-

moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Cusumano v. Maquipan Int'l, Inc.,* 390 F. Supp. 2d 1216, 1219 (M.D. Fla. 2005) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

"Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits. Therefore, "[a]t the summary judgment stage, Plaintiffs must merely point out that the evidence in the record is insufficient to support Defendants' entitlements to tip credits. If Plaintiffs can satisfy this initial burden, Defendants must demonstrate that summary judgment is inappropriate. *Bernal v. Vankar Enters*., 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008).

Plaintiffs have met their burden. As discussed in greater detail below, the undisputed facts show that Defendants utilized the Kitchen Tip Pool proceeds as part of its incentive policies and withheld tips from kitchen staff which preclude Defendants' entitlement to a tip credit.

The undisputed facts also show that defendants exercised ownership, possession and control over the Kitchen Tip Pool Proceeds. Thereby any contribution to the Kitchen Tip Pool (voluntary or not) constitutes an improper arrangement whereby tips become the property of the employer and violation of 203(m)'s retention requirements.

## III. WITHHOLDING TIPS TO KITCHEN STAFF VIOLATES THE RETENTION REQUIRMENT OF 203(M)

It is undisputed that Defendants withheld tips from kitchen staff members for disciplinary reasons. Defendants admit to as much in their answer (Doc. 86), admitting "that the kitchen managers withheld tips from some kitchen employees for disciplinary reasons." Answer ¶¶ 26, 32, 41; see also id. ¶ 81.

Additionally a sampling of records shows that Defendants withheld tips from kitchen staff approximately 28-30 times per year. {See Ex. 5 – Composite Sample of Records Showing the withholding of tips}

By their admissions and the records, Defendant concede that Defendants engaged in a policy and practice of exercising control over a portion of the Kitchen Tip Pool proceeds by withholding tips from kitchen staff employees. This practice and policy of exercising control over tip pool proceeds has the effect of impermissibly retaining a portion of Servers' tips pursuant to 203(m).

By diverting the tips away from the kitchen staff subject to disciplinary action, Defendants have imposed their will over the portion of tips that Servers had previously directed toward the subject kitchen staffers. Accordingly this portion of the Servers' tips cannot then be deemed to have been retained by the Servers because they were not permitted to use or retain the tips in the manner in which they chose. This type of control imposed by Defendants over tip proceeds is precisely the type of improper control courts have previously found to violate 203(m)'s tip retention requirement.

In *Brennan v. Haulover Shark & Tarpon Club, Inc.,* No. 74-1276-Civ., 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1996) the Court found that an employer's practice of diverting a portion employees' tips to a "vacation fund" violated the FLSA because the employees were

not permitted to retain all of their tips as required by Section 203(m). In *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) The court found that "'[A]n employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips.' . . . As a result, '[t]o the extent Plaintiffs were not permitted to retain their tips to pay for shortages and unpaid tabs, Defendants disqualif[y] themselves from taking advantage of the FLSA tip credit provisions.'"

In fact, this Court has has already determined that Defendants' practice of withholding tips from kitchen staff members is a violation of 203(m)'s retention requirements. This Court stated "[t]hus, even assuming the Kitchen Tip Pool was voluntary, Defendants admit that they have retained employees' tips by virtue of the kitchen managers withholding tips from kitchen employees for disciplinary reasons."*citing Brennan Id.* and *Dorsey Id.* (Doc. 143 p.5).

Based upon the undisputed facts, Plaintiffs have satisfied their burden of showing that the undisputed record evidence precludes a finding that Defendants are entitled to taking a tip credit. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs summary judgment on the issue of liability with respect to the class claims contained in Count VI of the Third Amended Complaint.

## IV. DEFENDANTS' EXERCISE OF CONTROL OVER THE TIP DISTRIBUTION DISQUALIFIES THE KITCHEN TIP POOL AS A VALID TIP POOL

Pursuant to the FLSA, there are only two valid types of tip pools pursuant to Section 203(m) as codified pursuant to 29 C.F.R. §531.54. Mandatory tip pooling and voluntary tip pooling. "[V]alid mandatory tip pools ... can only include those employees who customarily and regularly receive tips") *Turner v. Millennium Park Joint Venture,* LLC, 767 F. Supp. 2d 951, 954 (N.D. Ill. 2011). Voluntary tip pooling is a situation "'whereby the employer redistributes the

tips to the employees upon some basis to which they have mutually agreed among themselves.'" *Kubiak v. S.W. Cowboy, Inc.,* 2014 U.S. Dist. LEXIS 80225 (M.D. Fla. June 12, 2014) (citing *Kilgore v. Outback Steakhouse of Fla., Inc.,* 160 F.3d 294, 303 (6th Cir. 1998) and 29 C.F.R. § 531.54 (1996)).

In the present matter, Defendants acknowledge that the FLSA prohibits them from requiring Servers to share tips with non-tipped kitchen employees, and thus do not claim the Kitchen Tip Pool was mandatory.[2] Rather Defendants maintain that the Kitchen Tip Pool was a voluntary tip pool.

### a. LACK OF AGREEMENT BETWEEN TIPPED EMPLOYEES AND NON-TIPPED EMPLOYEES PRECLUDES A FINDING THAT THE KITCHEN TIP POOL IS A VALID VOLUNTARY TIP POOL.

Defendants' tip pool cannot meet the requirements of a voluntary tip pool either. The undisputed facts show that there was no mutual agreement between Servers and kitchen staff as to the basis for Defendant to redistribute the Kitchen TIP Pool proceeds it collected. In fact, Defendants admit that Servers had no mutual agreement with kitchen staff as to the basis for sharing tips with back of house employees, and Servers provided no specific instructions on how the Kitchen Pool tips were to be distributed. (Doc. 124, p.14 Defendants' Motion to Amend Class Certification). {Ex. 1 – Deposition of Jennifer Bryan p.94}(indicating that new servers were not told how the Defendants distributed the kitchen tip pool proceeds or that employees were aware that kitchen managers withheld tips) {Ex. 2 – Deposition of Ryan Marcum pp. 38-39}(indicating he was unaware that dishwashers were part of the Kitchen Tip Pool

---

[2] See this Court's Class Certification Order (Doc. 123) "Defendants confirm that the Individual Plaintiffs were employed as servers, and that they shared tips with kitchen staff, including the kitchen manager. Answer ¶¶ 22, 24, 25, 28, 30, 31, 36, 37, 39, 41, 42, 48. Additionally, Defendants admit that BOH managers "received distributions" from the Kitchen Tip Pool."

distribution}{Ex. 3 – Deposition of Sean Hernandez pp. 20, 36-37}(indicating he was unaware how the tip pool was distributed among the kitchen staff and that he was unaware that dishwashers were part of the Kitchen Tip Pool distribution}

In the absence of a mutual agreement between Servers and kitchen staff, no valid voluntary tip pool can exist. "The tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid." *Reich v. Priba Corp.,* 890 F. Supp. 586, 596 (N.D. Tex. 1995)

The policy implications of the mutual agreement requirement are self-evident. If there is no underlying agreement between the tipped employees and the non-tipped employees, the employer will necessarily become involved in controlling the terms of the tip redistribution, and thus involved in controlling the tips such that the tipped employees are unable to retain of their tips in violation of the strict prohibitions of 203(m) – as seems to be the case in the present matter.

In the present case, the undisputed evidence shows that there was no independent mutual agreement between Servers and kitchen staff as to the basis upon which Defendants redistributed the tips to the kitchen staff therefore the Kitchen Tip Pool does not qualify as a voluntary tip pool pursuant to case law and regulation.

### b. THE KITCHEN TIP POOL IS PROPERLY CLASSIFIED AS AN IMPERMISSIBLE AGREEMENT BETWEEN SERVERS AND DEFENDANTS

Defendants contend that Servers voluntarily contributed to the Kitchen Tip Pool. Similarly, many current and former employees have testified (in deposition or by declaration) that they contributed to the Kitchen Tip Pool voluntarily. However as discussed supra, the voluntary contribution to a tip pool is not dispositive of whether the tip pool is a valid voluntary tip pool. The dispositive characteristic of a voluntary tip pool is whether the tipped employees

and the recipients have a mutual agreement concerning the basis for the tip redistribution. Because no such underlying agreement exists in this case, the Kitchen Tip Pool is not a valid voluntary tip pool.

For those Servers who claim to have contributed to the Kitchen Tip Pool voluntarily, the Kitchen Tip Pool is properly characterized as an agreement whereby the Servers agreed to allow a portion of their tips to become the property of Defendants. In essence, these Servers voluntarily gave their Kitchen Tip Pool contribution to the Defendant without guidelines, rules or limits upon how the proceeds were used. In turn, Defendants used the Kitchen Tip Pool proceeds and took ownership of the proceeds as part of Defendants' incentive and disciplinary policies.

## V. BY CONDITIONING THE DISTRIBUTION OF TIP POOL PROCEEDS UPON WORK PERFORMANCE DEFENDANTS TOOK POSSESSION, CONTROL AND OWNERSHIP OVER THE TIP POOL PROCEEDS.

In the present case, the kitchen managers exercised exclusive control over the distribution of the Kitchen Pool Tip proceeds. Rather than simply distribute the Kitchen Tip Pool proceeds, the kitchen managers chose to use the Kitchen Tip Pool proceeds as an incentive and disciplinary tool for the employer. As part of the Defendants practices and policies kitchen managers used the Kitchen Tip Pool proceeds as a carrot to incentivize workers, and threatened to withhold tip proceeds (and did withhold tip proceeds) in order to discipline kitchen staff. {See Ex. 4 – Deposition of SWC Kitchen Manager, Brian Pannone pp. 48-49}(Stating that the tips are a benefit to the kitchen staff and the docking of tips is used as discipline)

By conditioning the distribution and/or withholding of the Kitchen Tip Pool proceeds upon the kitchen staff's performance, Defendants improperly exercised control and ownership over the Kitchen Tip Pool proceeds and violated the retention requirements of 203(m). By imposing additional conditions upon the distribution of the Kitchen Tip Pool Proceeds,

Defendants diverted, kept and used the Kitchen Tip Pool proceeds for its own benefit thus precluding Servers from retaining all of their tips as required by 203(m).

## VI. DEFENDANTS' POSSESSION AND OWNERSHIP OF KITCHEN TIP POOL PROCEEDS IS A VIOLATION OF 203(M).

The FLSA prohibits **any arrangement** between the employer and the tipped employee whereby any part of the tip received becomes the property of the employer" (emphasis added) [*See* Ex. 9 - DOL Fact Sheet #15].

In the present case Servers' tip contributions to the Kitchen Tip Pool (whether voluntary or not) effectively became the property of Defendants by the Defendants use of the proceeds as part of their incentive and discipline policies and practices. The DOL FIELD OPERATIONS HANDBOOK § 30d01(a) states in pertinent part that:

*"[T]he effect of the language of Sec 3(m) precludes an agreement between and employer and a "tipped employee" that any part of tips received by such employee belongs to the employer…Further, the specific language added to Sec 3(m) reinforces the intent of Congress that…the employer and employee cannot agree to waive such employee's right to retain all tips received."*

"Courts have interpreted [FIELD OPERATIONS HANDBOOK §30d01(a)] requirement to mean that an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips." *Davis v. B & S, Inc.,* 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998).

Because Defendants improperly entered into an arrangement whereby the Servers' Kitchen Tip Pool proceeds effectively became the property of Defendants, Defendant have violated the retention requirements of 203(m). Thus Defendants are liable for reimbursing the Plaintiffs and the Server Class the full minimum wage the Server Class would have earned due to

Defendants improper control over the tip pool and violation of the retention requirements of 203(m).

Based upon the undisputed facts, Plaintiffs have satisfied their burden of showing that the undisputed record evidence precludes a finding that Defendants are entitled to taking a tip credit. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs summary judgment on the issue of liability with respect to the class claims contained in Count VI of the Third Amended Complaint.

## **CONCLUSION**

Plaintiffs and the Server Class thus requests that this Court grant summary judgment for the Plaintiffs with respect to liability on Count VI of Plaintiffs' Third Amended Complaint.

Respectfully submitted this 30th day of October, 2014

/s/ Benjamin L. Williams
BENJAMIN L. WILLIAMS, ESQ.
WILLIAMS LAW OFFICE
P.O. Box 3237
Ponte Vedra Beach, FL 32004
(t) (904) 515-7840
(f) (904) 671-9483
bwilliams@williamslawjax.com
www.williamslawjax.com
OFFICES: Jacksonville | Orlando | Tallahassee

Mitchell L. Feldman
Florida Bar No. 0080349
FELDMAN LAW GROUP P.A.
1715 N. Westshore Blvd., Suite 400
Tampa, FL 33607
(t) (813) 639-9366
(f) (813) 639-9376
Email: mfeldman@ffmlawgroup.com

Trial Counsel and Attorneys for the Representative Plaintiffs, and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of November 2013, a true and correct copy of the foregoing was furnished via transmission of Electronic Filing generated by CM/ECF to all necessary parties.

/s/ Benjamin L. Williams
BENJAMIN L. WILLIAMS, ESQ.
Florida Bar No. 0030657