**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID KUBIAK et al.,

        Plaintiffs,

v.                                          Case No. 3:12-cv-1306-J-34JRK

S.W. COWBOY, INC., a Florida
Corporation, d/b/a Saltwater
Cowboys, et al.,

        Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendants' Rule 59(a) Motion for New Trial (Doc. 255; "Motion"), filed on April 22, 2016. On May 13, 2016, Plaintiffs, David Kubiak, Jason Crowling, Joseph Keating, Steven Patterson, Matthew Dillon, William Jeffrey Little, Jose Farinos, and Richard Harvey, filed Plaintiffs' Opposition to Defendants' Rule 59(a) Motion for New Trial (Doc. 262; "Response"). Accordingly, this matter is ripe for review.

**I.     Background**

This Motion arises out of an action for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), and the Florida Minimum Wage Act, Florida Statutes section 448.110 ("FMWA"), brought by Plaintiffs against their former employer, Defendant Saltwater Cowboys,[1] and its owners, Defendants Peter Lawlor, Scott Singleton, William White, Terry Richardson, Rochelle Drouillard, and Judy Adams-

---

[1] "Saltwater Cowboys" is the trade name under which Defendant S.W. Cowboy, Inc. operates. See Deposition of Corporate Representative of S.W. Cowboy, Inc. (Doc. 110; "Saltwater Cowboys Depo.") at 11.

Smith. See generally Third Amended Complaint and Demand for Jury Trial (Doc. 79; "Third Amended Complaint"). Saltwater Cowboys is a restaurant in St. Augustine, Florida. Id. ¶ 46. Plaintiffs all worked as servers at that restaurant between 2006 and 2013. See Order on Motions for Summary Judgment dated February 18, 2016 (Doc. 206; "Summary Judgment Order") at 2 n.3. In compensating its servers, Saltwater Cowboys took a tip credit against its minimum-wage obligations based on a portion of the tips each server received. Saltwater Cowboys required servers to complete a tip-allocation form on which they would report cash and charge sales and tips, as well as their contributions to various tip pools. One of the tip pools included kitchen employees. It is undisputed that Saltwater Cowboys could not require servers to contribute to a tip pool including such employees. See Amended Pretrial Statement (Doc. 215) at 14. The central issue in the case was whether each server's kitchen tip pool contributions were voluntary or mandatory. If a server's contribution was mandatory, Saltwater Cowboys would have been precluded from taking the tip credit and would owe that Plaintiff the difference between the reduced wage he or she was paid and the full minimum wage. See Court's Final Jury Instructions (Doc. 236) at 18–19.

Following a four-day jury trial, the jury returned a verdict in Plaintiffs' favor. See Verdict (Doc. 238). In reaching a verdict, the jury answered several questions. First, as to each Plaintiff, the jury found that Saltwater Cowboys did not prove by a preponderance of the evidence that the Plaintiff contributed to the kitchen tip pool voluntarily—that is, free from force or coercion by or attributable to Saltwater Cowboys. Verdict at 1, 3, 5, 7, 9, 11, 13, 15. Next, the jury found by a preponderance of the evidence that Saltwater Cowboys either knew, or showed reckless disregard for whether, the FLSA and FMWA prohibited

its conduct. Id. at 2, 4, 6, 8, 10, 12, 14, 16. The jury then found by a preponderance of the evidence that all of the individual owners qualified as joint employers of all Plaintiffs. Id. at 3, 5, 7, 9, 11, 13, 15, 17. Based on those findings, the jury awarded Plaintiffs a combined total of $72,353.22 in unpaid wages. See id. at 2, 4, 6, 8, 10, 12, 14, 16. Plaintiffs orally moved for liquidated damages on March 21, 2016. Doc. 242. Based on the jury's verdict, the Court granted Plaintiffs' motion for liquidated damages, see Order (Doc. 244), and entered judgment in Plaintiffs' favor in the total amount of $144,706.44, see Judgment in a Civil Case (Doc. 246). Defendants now seek a new trial based on their contention that the jury's verdict is against the clear weight of the evidence. See generally Motion.

**II.    Applicable Law**

Rule 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." As a motion for a new trial is committed to the sound discretion of the trial court, a more lenient standard is applied than a motion for judgment as a matter of law. See United States ex rel. Weyerhaeuser Co. v. Bucon Constr. Co., 430 F.2d 420, 423 (5th Cir. 1970).[2] Indeed, the trial court may grant a motion for a new trial if in the court's opinion "'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Id. However, the court should give great deference to the jury's verdict and grant a new trial sparingly. See U.S. Philips

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Corp. v. Windmere Corp., No. 84-2508-CIV-MARCUS, 1991 WL 338258, at *2 (S.D. Fla. 1991).

## III. Discussion

Defendants contend that they are entitled to a new trial because the jury's verdict is against the clear weight of the evidence in two respects.[3] First, they argue that there is no evidence to support the jury's finding that Defendants acted willfully. Motion at 4–8. Second, they argue that there is no evidence that Defendants engaged in any affirmative act amounting to coercion. Id. at 8–11. Plaintiffs respond that sufficient evidence supports the jury's findings on both issues. Response at 4–12.

> When a motion for a new trial is based on the weight of the evidence, the
>
> court should grant [the motion] when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict…. Because it is critical that a judge does not merely substitute [her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence."

Ash v. Tyson Foods, Inc., 190 F. App'x 924, 926 (11th Cir. 2006) (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)); see also Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982). Unlike in considering a

---

[3] Defendants at times suggest that Plaintiffs' counsel erroneously stated the law or the evidence during his closing arguments and that the jury might have relied on those misstatements in reaching its verdict. See Motion at 3, 5, 7. However, Defendants stop short of arguing that Plaintiffs' counsel engaged in misconduct significant enough to warrant a new trial. "The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" See BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1474 (11th Cir. 1992). Defendants do not argue that Plaintiffs' counsel's statements meet that standard. Moreover, Defendants' counsel failed to object to any of the allegedly objectionable statements during trial. Absent an objection, the arguments are reviewed for "plain error, but a finding of plain error 'is seldom justified in reviewing argument of counsel in a civil case.'" Id. (citation omitted). Oxford Furniture Co., Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir. 1993). Because Defendants do not seem to separately base their Motion on alleged improper arguments of counsel, the Court will consider only Defendants' arguments concerning the sufficiency of the evidence.

-4-

motion for judgment as a matter of law, the Court is permitted to reweigh the evidence in determining whether to grant a new trial. Williams, 689 F.2d at 973; Popham v. City of Kennesaw, 820 F.2d 1570, 1575 (11th Cir. 1987). However, when "there is no great weight of the evidence in any direction," it would be improper to grant a new trial based on the sufficiency of the evidence. See Williams, 689 F.2d at 976; see also Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996) (finding that a new trial is warranted based on the weight of the evidence when "the verdict is 'clearly, decidedly, or overwhelmingly' against the weight of the evidence"). Additionally, "the district judge should not substitute [her] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." Walls v. Button Gwinnett Bancorp, Inc., 1 F.3d 1198, 1201 (11th Cir. 1993) (internal quotation marks omitted). Lastly, "when the trial involves simple issues, highly disputed facts, and there is an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict." See Williams, 689 F.2d at 974; Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995). Yet, the court has more freedom to scrutinize the verdict when the case involves "complex issues, facts not highly disputed, and events arguably marred by error." See Williams, 689 F.2d at 974.

Upon review of the evidence adduced at trial, which the Court does not view in the light most favorable to Defendants, the Court concludes that the jury's verdict is not against the clear weight of the evidence and does not result in a miscarriage of justice. Put simply, this case boiled down to credibility determinations; if the jury believed the testimony of the Plaintiffs, it had sufficient evidence to find in their favor. Defendants have failed to demonstrate that the jury clearly erred in evaluating the credibility of the various witnesses called to testify at trial.

As an initial matter, Defendants' arguments are based on an apparent misunderstanding of the parties' burdens in this case. Defendants appear to suggest that Plaintiffs were required to prove that the owners themselves coerced Plaintiffs' participation in the kitchen tip pool, and that the owners themselves acted willfully. Motion at 6–8, 10–11. However, Defendant Saltwater Cowboys is more than just its owners; Saltwater Cowboys acted through those owners as well as its employees, including its manager, Jennifer Bryant, and its senior servers.[4] As such, in addressing the Motion, the Court will consider the evidence concerning the actions of all relevant employees and representatives.

With respect to the jury's finding that Saltwater Cowboys failed to prove by a preponderance of the evidence that Plaintiffs contributed to the kitchen tip pool free of

---

[4] The Court informed the jury that the central issue in the case was "whether Saltwater Cowboys violated the FLSA and FMWA by not allowing the Plaintiffs to retain or keep all of their tips. … The parties … agree that if Saltwater Cowboys proves by a preponderance of the evidence that it did not require or coerce a Plaintiff to participate in the kitchen tip pool, Saltwater Cowboys would be entitled to use the tip credit." Court's Final Jury Instructions at 11–13 (emphasis omitted). The Court also instructed the jury that Plaintiffs bore "the burden of proving by a preponderance of the evidence that Saltwater Cowboys knew of, or showed reckless disregard for, the illegality of its conduct." Id. at 17.

As to the individual owners' liability, the Court instructed the jury that Plaintiffs bore "the burden of proving by a preponderance of the evidence that each individual owner qualifies as an employer of the Plaintiff." Id. at 14. Although the Court told the jury that it "should give special consideration to whether the owner had control over the alleged FLSA and FMWA violations," id. at 15, that was not the sole consideration before the jury in determining whether an individual owner qualified as a Plaintiff's employer under the law. In other words, the jury was instructed to determine whether Defendant Saltwater Cowboys, as Plaintiffs' actual employer, was liable for violations of the FLSA and FMWA and acted willfully; if the jury found Saltwater Cowboys liable, it then was instructed to determine whether each individual owner could be held jointly liable as a Plaintiff's employer. See id. at 14.

Likewise, on the Verdict form, the jury was first asked whether Saltwater Cowboys had proven by a preponderance of the evidence that each Plaintiff contributed to the kitchen tip pool "free from force or coercion by or attributable to" Saltwater Cowboys. Verdict at 1, 3, 5, 7, 9, 11, 13, 15. If the jury found that Saltwater Cowboys had failed to meet its burden, the jury was then asked to determine whether "any of the individual owners qualified under the applicable law as" each Plaintiff's employer. Verdict at 3, 5, 7, 9, 11, 13, 15, 17. Thus, the jury's findings that Defendants challenge did not depend on the actions of the owners alone. In any event, as discussed in this Order, the jury heard evidence that the owners as well as the employees of Saltwater Cowboys willfully coerced Plaintiffs to participate in the kitchen tip pool.

-6-

force or coercion by or attributable to Saltwater Cowboys,[5] Defendants argue that Plaintiffs presented no evidence that Defendants took any overt action to coerce Plaintiffs to contribute to the Kitchen Tip Pool. Motion at 8–10. In response, Plaintiffs argue that, following the Court's definition of "coercion," the jury properly found that the evidence supported a finding that Saltwater Cowboys engaged in "other pressure" to compel Plaintiffs to contribute to the kitchen tip pool. Response at 6–7.

At trial, the Court instructed the jury that, to be entitled to use the tip credit, Saltwater Cowboys was required to prove "by a preponderance of the evidence that it did not require or coerce a Plaintiff to participate in the kitchen tip pool." Court's Final Jury Instructions at 12–13. The Court further instructed the jury that it could "consider the employee's subjective belief" in determining whether Saltwater Cowboys required or coerced a Plaintiff to contribute to the kitchen tip pool, but that any such belief needed to be objectively reasonable, meaning "Saltwater Cowboys' conduct was such that a reasonable person in the Plaintiff's position would have been justified in reaching a similar conclusion." Id. at 13. During deliberations, the jury sent the following question to the Court: "Can we have a dictionary for definition of coercion? We would like to have more than just the attorneys['] definition. Or can you give us a legal definition[?]" The Court responded, "For purposes of this case you should assume that the word coerce means 'to compel to an act or choice by force, threat, or other pressure.'"

The Court concludes that the jury's finding that Saltwater Cowboys failed to prove by a preponderance of the evidence that it did not coerce Plaintiffs to participate in the

---

[5] Although Defendants address the jury's finding as to willfulness first, the Court addresses coercion first and willfulness second because that is the order in which the jury was asked to consider the issues.

kitchen tip pool is not against the clear weight of the evidence. At trial, each Plaintiff testified that, based on his training with one or more senior servers, he believed that participation in the kitchen tip pool was mandatory. Most Plaintiffs testified that at least one owner was present at the restaurant each night, and Singleton testified that while at the restaurant he saw servers completing tip allocation sheets and checking out with the manager. Most Plaintiffs also testified that Bryant or another manager completing the check-out process would correct erroneous calculations on their or others' tip allocation sheets, including incorrect kitchen tip contributions. Little and Kubiak testified that managers and other servers did not call payments to the kitchen "tips" but instead referred to them as the amount the servers "owed" the kitchen. Farinos and Patterson testified that, on busy nights, the manager would sometimes complete their tip allocation sheets for them and simply tell them what they owed, without asking how much they wished to contribute to the kitchen tip pool. Keating testified that he once gave nothing to the kitchen tip pool, but Bryant reacted negatively to his decision and thereafter scheduled him to host and prohibited him from watching the bar and training new servers.[6] Former assistant manager Jessica Barnes-Turner testified that she initially understood from her training that "Saltwater Cowboys' policy is everyone gives 20 cents per entrée to the kitchen," and she did not know that she could vary from that formula. Moreover, Farinos testified that he told Bryant and owner Judy Adams-Smith that he believed the kitchen tip pool was illegal, to which Adams-Smith responded, "If you don't like it, you can work somewhere

---

[6] To be sure, Defendants' counsel questioned Keating on cross-examination about his prior inconsistent testimony about the reason for those adverse actions. But the jury was entitled to credit Keating's testimony and his explanation for the discrepancy.

-8-

else."[7] Singleton similarly suggested during a speech to the servers about the instant litigation on January 20, 2013, that servers who were unhappy with Saltwater Cowboys' traditions or practices could work elsewhere.

Additionally, the jury could have concluded that Saltwater Cowboys' owners and managers allowed senior servers to train Plaintiffs that they were required to contribute to the kitchen tip pool. Although Plaintiffs presented no evidence that senior servers had direct supervisory authority over Plaintiffs, the jury could have inferred that the method of training at Saltwater Cowboys implied that senior servers who were training new servers spoke on Saltwater Cowboys' behalf and conveyed Saltwater Cowboys' policies. The jury could have concluded that Plaintiffs reasonably accepted the accuracy of the information they received from senior servers during training because, by Singleton's admission, the servers were solely responsible for training other servers. The jury was entitled to infer from all of the evidence that the owners and managers allowed a pervasive environment of pressure to develop and failed to intervene.

Put simply, the jury had significant evidence to conclude that Bryant, senior servers, and thus the owners applied "other pressure" to compel Plaintiffs to contribute to the kitchen tip pool when they otherwise would not have done so. Although Defendants presented significant evidence flatly contradicting Plaintiffs' testimony, including testimony from Bryant that she never required participation in the kitchen tip pool and from several other servers that they knew the kitchen tip pool was voluntary, the Court cannot conclude that the jury's verdict is against the clear weight of the evidence.

---

[7] Adams-Smith testified that that conversation was about employee parking, not the kitchen tip pool. Nevertheless, the jury was entitled to credit Farinos's testimony over Adams-Smith's.

With respect to the issue of willfulness, the Court instructed the jury that Plaintiffs bore "the burden of proving by a preponderance of the evidence that Saltwater Cowboys knew of, or showed reckless disregard for, the illegality of its conduct." Court's Final Jury Instructions at 17. Defendants assert that the Department of Labor suggested that "Defendants simply needed more documentation that the [kitchen] tip pool had been voluntarily created." Motion at 5–6. Defendants observe that the owners knew they could not coerce servers to contribute to the kitchen tip pool, so they attempted to remain as removed from the tip-pooling process as possible. Id. at 6. While acknowledging that the word "voluntary" had been removed from the tip allocation sheets at some point and that it did not appear on any allocation sheet during the relevant time frame for this civil action, Defendants assert that they were, at worst, negligent in failing to ensure that the form remained clear. Id. at 5–8. In response, Plaintiffs argue that the question of willfulness was properly left to the jury, and that Plaintiffs presented sufficient evidence for the jury to find that Saltwater Cowboys acted willfully. Response at 8–12.

"An employer knowingly violates the [FLSA] if he disregards the minimum wage laws deliberately or intentionally, such as by ignoring advice from a responsible official that the conduct in question is not lawful." Davila v. Menendez, 717 F.3d 1179, 1185 (11th Cir. 2013) (internal quotation marks, citations, and alterations omitted). "An employer acts with reckless disregard for the Act if the employer's conduct is more than merely negligent, and is blameworthy if the employer should have inquired further into whether his conduct was in compliance with the Act, and failed to make adequate further inquiry." Id. (internal quotation marks, citations, and alterations omitted). "In other words, an employer does not commit a willful violation if he acts unreasonably, but not recklessly,

-10-

in determining his legal obligation under the Act." Id. (internal quotation marks and alteration omitted).

The evidence the Court previously discussed precludes the Court from concluding that the jury's finding as to willfulness is against the clear weight of the evidence. That evidence supports a finding that Saltwater Cowboys' employees and owners sought to compel Plaintiffs to participate in the kitchen tip pool. Additionally, the jury was presented with evidence that the owners knew through a 1987 Department of Labor audit of a different restaurant that they needed to ensure that server contributions to the kitchen tip pool were voluntary. The jury also was presented with evidence that the servers thereafter voted to tip the kitchen, and the owners added the word "voluntary" on the kitchen tip field on tip allocation sheets. Nevertheless, Plaintiffs presented evidence that, for more than 20 years after that, the owners failed to ensure in any way that servers at Saltwater Cowboys understood that the kitchen tip pool was voluntary. Each Plaintiff testified that he did not participate in or learn of any vote on the tip pool, and each Plaintiff was trained that the 20-cent-per-entrée formula was required. And the jury was presented with evidence that the word "voluntary" did not appear on any tip allocation sheet at Saltwater Cowboys during the relevant time frame. The jury was permitted to conclude, based on that and other evidence, that the owners' complete failure to ensure the voluntariness of the kitchen tip pool despite a prior audit concerning the same issue amounted to reckless disregard for whether Saltwater Cowboys' practices violated the law. The jury reasonably could have concluded that, by relinquishing all control over server training, the owners ran an ever-growing risk that what might have started as a voluntary practice would evolve, over time, into a de facto rule which new servers, having been instructed by

longtime employees, would be afraid to question. The jury had sufficient evidence to conclude that the owners' attempts to comply with the Department of Labor's directive hinged entirely on a single word on a form that the owners did not check for more than 20 years, and the hope that senior servers would properly train new servers over that same time period despite having no guidance from the owners. In light of the owners' prior knowledge from the Department of Labor that a mandatory kitchen tip pool would be unlawful, the jury could have concluded that the owners acted recklessly.

In short, having presided over the trial and heard all of the evidence, the Court is satisfied that the jury's credibility determinations, inferences, and conclusions do not result in a miscarriage of justice and should not be disturbed.[8]

---

[8] The Court notes that Plaintiffs include in their Response a request for an award of "attorneys' fees and costs associated with responding to" the Motion. See Response at 13. They appear to assert that they are entitled to attorney's fees in responding to the Motion because they are prevailing parties for purposes of their FLSA and FMWA claims. Id. at 13 n.9. Aside from those brief statements, Plaintiffs provide the Court with no legal authority or argument in support of their request. Pursuant to the Local Rules of this Court, all claims for costs or attorney's fees must be raised in a separate motion or petition. See Rule 4.18, Local Rules, United States District Court for the Middle District of Florida. Accordingly, the Court will deny Plaintiffs' perfunctory request for fees and costs at this time. Moreover, the Court observes that Plaintiffs currently have a pending motion requesting attorney's fees and costs as prevailing parties in this case. See Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 248). As such, to the extent Plaintiffs wish to recover fees and costs incurred in responding to Defendants' Motion, Plaintiffs may request leave to supplement their motion for attorney's fees to include those fees and costs.

### IV. Conclusion

In light of the foregoing, Defendants' Motion is due to be denied. Accordingly, it is hereby **ORDERED:**

Defendants' Rule 59(a) Motion for New Trial (Doc. 255) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on October 12, 2016.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record